1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MANATT, PHELPS & PHILLIPS, LLP
JOHN M. GATTI (State Bar No. 138492)
E-mail: jgatti@manatt.com
LAUREN J. FRIED (State Bar No. 309005)
E-mail: lfried@manatt.com
NICHOLAS FRONTERA (State Bar No. 307479)
E-mail: nfrontera@manatt.com
2049 Century Park East, Suite 1700
Los Angeles, California 90067
Tel.:  (310) 312-4000; Fax:  (310) 312-4224

*Attorneys for Plaintiff*
TRACY CHAPMAN

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRACY CHAPMAN,<br><br>             Plaintiff,<br><br>    vs.<br><br>ONIKA TANYA MARAJ p/k/a NICKI MINAJ and DOES 1-10,<br><br>             Defendants. | No. 2:18-cv-09088-VAP-SS<br><br>Honorable Virginia A. Phillips<br><br>**[*REDACTED*] NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing Date:        September 14, 2020<br>Hearing Time:        2:00 p.m.<br><br>Final Pretrial Conf.:  October 5, 2020<br>Trial Date:            October 13, 2020<br><br>[Concurrently filed with: 1. Separate Statement; 2. Appendix of Evidence; and 3. [Proposed] Order] |

**TO DEFENDANTS AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on September 14, 2020 at 2:00 p.m., or as soon thereafter as this matter may be heard, in Courtroom No. 8A of the United States District Court for the Central District of California, located at 350 West 1st Street, Los Angeles, California 90012, Plaintiff Tracy Chapman ("Ms. Chapman"), by and through her undersigned attorneys, will and hereby does move under Rule 56 of the Federal Rules of Civil Procedure for partial summary judgment in her favor as to liability for her cause of action for copyright infringement in her Complaint against Defendant Onika Tanya Maraj p/k/a Nicki Minaj ("Ms. Maraj").

Ms. Chapman is entitled to partial summary judgment on her claim for copyright infringement liability because there are no genuine disputes as to any material facts with regard to Ms. Maraj's actions. It is undisputed that beginning in June 2018, Ms. Maraj and her representatives and/or agents made multiple requests to license Ms. Chapman's copyright in her well-known musical composition *Baby Can I Hold You* (the "Composition") for use in Ms. Maraj's recording (featuring Nas) *Sorry* (the "Infringing Work"), which Ms. Maraj created without Ms. Chapman's consent for inclusion on Ms. Maraj's then-forthcoming album, *Queen* (the "Album").

Ms. Chapman, through her agents and representatives, repeatedly denied Ms. Maraj's after-the-fact requests to use the Composition. Notwithstanding those denials, Ms. Maraj continued working on the Infringing Work and publicizing it on social media. Ultimately, while Ms. Maraj did not include the Infringing Work on the Album, she distributed the Infringing Work to a well-known disc jockey at the popular New York City radio station HOT 97, who promoted the Infringing Work on his social media accounts, stating that Ms. Maraj had given him something ████████████" that is "<span style="color:red">CONFIDENTIAL</span>████████████". The disc jockey then played the Infringing Work on HOT 97, and, possibly, through other outlets. None of Ms. Maraj's actions relating to her liability are debatable. The facts are undisputed. Ms.

Maraj violated Ms. Chapman's copyright by creating an illegal derivative work and distributing that work.  Moreover, these actions were indisputably willful.  Ms. Maraj had knowledge of the illegality of her actions and proceeded.  Thus, Ms. Chapman's copyright claim is appropriate for summary judgment.

This Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the concurrently filed Statement of Undisputed Material Facts and Conclusions of Law, the concurrently filed Declarations of Tracy Chapman and Nicholas Frontera, the concurrently lodged proposed Order, all other pleadings and papers on file in this action, and upon such argument and/ or evidence that the Court may consider at or before the hearing on this motion.

Pursuant to Local Rule 7-3, this Motion is made following the conference of counsel, which took place on July 29, 2020.  Due to the global pandemic, the parties were unable to meet in-person, but did meet and confer telephonically.  During the conference, counsel for the parties thoroughly discussed the substance of the arguments set forth herein, as well as potential resolution of the disagreements, in an attempt to eliminate the need for this Motion; the parties were unable to reach an agreement obviating the necessity for this motion.

Dated:  August 17, 2020

Respectfully submitted,

MANATT, PHELPS & PHILLIPS, LLP
John M. Gatti
Lauren J. Fried
Nicholas Frontera

By:  /s/ John M. Gatti
    John M. Gatti
    *Attorneys for Plaintiff*
    TRACY CHAPMAN

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

2

MOTION FOR PARTIAL SUMMARY JUDGMENT
OF PLAINTIFF TRACY CHAPMAN

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................ 1

II.  FACTUAL BACKGROUND ............................................................ 2

    A.  Plaintiff Tracy Chapman and the Composition ..................... 2

    B.  Defendant Onika Tanya Maraj and Infringing Work ............ 3

    C.  Ms. Chapman Denies Ms. Maraj's Various Requests for Authorization to Use the Composition in the Infringing Work ........... 4

    D.  Ms. Maraj Continues to Create and Distributes the Infringing Work Despite the Denials ................................................ 6

III.  LEGAL STANDARD ..................................................................... 10

IV.  MS. MARAJ'S INFRINGING WILLFUL CONDUCT IS NOT DISPUTED AND IS THEREFORE SUBJECT TO SUMMARY JUDGMENT ........................................................................... 10

    A.  Ms. Chapman Owns a Valid Copyright in the Composition ............. 11

    B.  Ms. Maraj Willfully Created an Unauthorized Derivative Work ....... 12

        1.  It is Undisputed That Ms. Maraj Created an Unauthorized Derivative Work, i.e., the Infringing Work .............................. 12

        2.  Ms. Maraj's Actions in Creating an Unauthorized Derivative Work Were Willful As a Matter of Law ................ 14

    C.  Ms. Maraj Willfully Distributed the Infringing Work ...................... 16

        1.  The  Undisputed Facts Establish that Ms. Maraj Distributed the Infringing Work ........................................ 16

        2.  The Undisputed Evidence Establishes that Ms. Maraj's Distribution was Willful ............................................ 19

V.  CONCLUSION ............................................................................. 21

# TABLE OF AUTHORITIES

**Page**

## CASES

*A&M Records, Inc. v. Napster, Inc.*,
239 F.3d 1004 (9th Cir. 2001) ...................................................... 11, 12

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ........................................................................ 10

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*,
874 F.3d 1064 (9th Cir. 2017) ........................................................ 14

*Basic Books, Inc. v. Kinko's Graphics Corp.*,
758 F. Supp. 1522 (S.D.N.Y. 1991) ................................................ 19

*Brave New Films 501(c)(4) v. Weiner*,
626 F.Supp.2d 1013 (N.D. Cal. 2009) ............................................ 16

*Broadcast Music, Inc. v. McDade & Sons, Inc.*,
928 F. Supp. 2d 1120 (D. Ariz. 2013) ........................................ 14, 15

*BWP Media USA, Inc. v. P3R, LLC*,
2014 WL 3191160 (C.D. Cal. Jul. 3, 2014) .................................... 19

*C.A.R. Transp. Brokerage Co., Inc. v. Darden Restaurants, Inc.*,
213 F.3d 474 (9th. Cir. 2000) ........................................................ 17

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ........................................................................ 10

*Columbia Pictures Television v. Krypton Bd. of Birmingham, Inc.*,
106 F.3d 284 (9th Cir. 1997) .......................................................... 19

*Edu. Testing Serv. v. Simon*,
95 F. Supp. 2d 1081 (C.D. Cal. 1999) ........................................ 11, 13

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
499 U.S. 340 (1991) ........................................................................ 11

*Fox Broad. Co., Inc. v. Dish Network L.L.C.*,
747 F.3d 1060 (9th Cir. 2013) ........................................................ 12

*Fox Film Corp. v. Doyal*,
286 U.S. 123 (1932) ........................................................................ 1

*Gilliam v. American Broadcasting Cos.*,
538 F.2d 14 (2nd Cir. 1976) .......................................................... 16

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

ii

MOTION FOR PARTIAL SUMMARY JUDGMENT
OF PLAINTIFF TRACY CHAPMAN

# TABLE OF AUTHORITIES
## (Continued)

Page

*Gregory v. United States*,
178 F.3d 1294 (6th Cir. 1999) ............................................................... 10

*Hearst Corp. v. Stark*,
639 F. Supp. 970 (N.D. Cal. 1986) ........................................................ 14

*Holley v. Crank*,
400 F.3d 667 (9th Cir. 2004) ................................................................. 16

*Marisa Christina, Inc. v. Bernard Chaus, Inc.*,
808 F. Supp. 356 (S.D.N.Y. 1992) ........................................................ 11

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986) ............................................................................... 10

*Miksad v. Dialog Info. Servs., Inc.*,
900 F.2d 263 (9th Cir. 1990) ................................................................. 10

*Peer Int'l Corp. v. Pausa Records, Inc.*,
909 F.2d 1332 (9th Cir. 1990) .......................................................... 14, 19

*Perfect 10, Inc. v. Giganews, Inc.*,
847 F.3d 657 (9th Cir. 2017) ................................................................. 13

*Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.*,
907 F. Supp. 1361 (N.D. Cal. 1995) ...................................................... 13

*Rentmeester v. Nike, Inc.*,
883 F.3d 1111 (9th Cir. 2018) ............................................................... 11

*S.O.S., Inc. v. Payday, Inc.*,
886 F.2d 1081 (9th Cir. 1989) .......................................................... 11, 16

*Sega Enters. Ltd. v. MAPHIA*,
948 F. Supp. 923 (N.D. Cal. 1996) ........................................................ 14

*Stewart v. Abend*,
495 U.S. 207 (1990) ................................................................................. 1

*UMG Recordings, Inc. v. Disco Azteca Distribs., Inc.*,
446 F. Supp. 2d 1164 (E.D. Cal. 2006) ............................................ 11, 13

*Warner Bros. Entm't Inc. v. Duhy*,
No. CV 09-5798-GHK, 2009 WL 5177956 (C.D. Cal. Nov. 30,
2009) ...................................................................................................... 19

*Washington Shoe Co. v. A-Z Sporting Goods Inc.*,
704 F.3d 668 (9th Cir. 2012) ................................................................. 14

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

iii

**TABLE OF AUTHORITIES**
(Continued)

Page

## STATUTES

17 U.S.C.A. § 504(c)(2) ............................................................................................ 11

17 U.S.C. § 106 ................................................................................................... 11, 12

17 U.S.C. §§ 106(1)-(3) ............................................................................................ 12

17 U.S.C. § 106(3) ..................................................................................................... 16

17 U.S.C. § 410(c) ..................................................................................................... 11

17 U.S.C. § 602(a) ..................................................................................................... 12

## OTHER AUTHORITIES

4 Melville B. Nimmer & David Nimmer, Nimmer on Copyright, §
13.08[C][1] (2016) ............................................................................................ 13

## RULES

Fed. R. Civ. P. 56 ...................................................................................................... 10

Fed. R. Civ. P. 56(a) ................................................................................................. 10

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

iv

MOTION FOR PARTIAL SUMMARY
JUDGMENT OF PLAINTIFF TRACY CHAPMAN

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

It is the bedrock principle of Copyright Law that an author of an original work has the right to control how her work is exploited.  "In fact, [the Supreme Court] has held that a copyright owner has the capacity arbitrarily to refuse to license one who seeks to exploit the work."  *Stewart v. Abend*, 495 U.S. 207, 229 (1990) (citing *Fox Film Corp. v. Doyal*, 286 U.S. 123, 127 (1932)).

This case presents a prototypical example of copyright infringement through violation of this basic principle.  Defendant Onika Tanya Maraj p/k/a Nicki Minaj ("Ms. Maraj") sought a license to interpolate Plaintiff Tracy Chapman's ("Ms. Chapman") hit song *Baby Can I Hold You* (the "Composition") in Ms. Maraj's song *Sorry* (the "Infringing Work") for her then-forthcoming album *Queen* (the "Album").  Ms. Chapman, who has a long-established and well-known practice of denying derivative uses of her works, clearly and unequivocally denied Ms. Maraj's request for use multiple times.  Unhappy with this result, the day after receiving the final denial from Ms. Chapman's attorney, Ms. Maraj continued working on the Infringing Work and devised a plan to promote her Album by distributing the Infringing Work on the radio through a prominent New York disc jockey, Aston George Taylor p/k/a Funkmaster Flex ("Mr. Taylor").  Specifically, Ms. Maraj personally reached out to Mr. Taylor and asked him to play the Infringing Work on his popular radio show the same week her album, *Queen,* debuted, and, that she would text him the Infringing Work.  Within 24 hours, Mr. Taylor received the Infringing Work, posted on social media that he had received the Infringing Work from Ms. Maraj, and, ultimately, played the Infringing Work on his radio show the night after Ms. Maraj's album release.  The Infringing Work went viral and was reposted all over the Internet, causing Ms. Chapman to incur significant expenses in connection with, among other things issuing takedown notices, and necessitating this lawsuit.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

1

MOTION FOR PARTIAL SUMMARY JUDGMENT
OF PLAINTIFF TRACY CHAPMAN

1    Each of these facts is indisputable based on the documentary evidence and
2    testimony in the record.  Ms. Maraj's actions constitute copyright infringement on
3    multiple fronts and lack any legal justification.

4    Based on the foregoing, Ms. Chapman respectfully requests this Court grant
5    her motion for partial summary judgment as to the issue of liability for copyright
6    infringement, and enter a judgment in favor of Ms. Chapman, and against Ms.
7    Maraj, concluding that: (1) Ms. Maraj infringed Ms. Chapman's Composition by
8    creating the Infringing Work without permission, (2) Ms. Maraj's conduct was
9    willful, (3) Ms. Maraj infringed Ms. Chapman's Composition by distributing the
10   Infringing Work, and (4) Ms. Maraj's conduct was willful.  Should the Court grant
11   this Motion, and, respectfully, it should, the only remaining issue will be the
12   amount of damages, including fees and costs, to which Ms. Chapman is entitled.

13   **II.    FACTUAL BACKGROUND**

14       **A.    Plaintiff Tracy Chapman and the Composition**

15   Ms. Chapman is an internationally known Grammy Award-winning singer,
16   songwriter, and musician who first gained popularity in the late 1980s.  Ms.
17   Chapman's self-titled debut album, which she released in 1988, features such hits as
18   the Composition and *Fast Car*.  The Composition was a huge success, and reached
19   the Top 50 on Billboard Magazine's Hot 100 chart.  Ms. Chapman's debut album
20   was a triumph, garnering Ms. Chapman a 1989 Grammy Award for Best
21   Contemporary Folk Album and a nomination for Album of the Year.  Ms. Chapman
22   won two more Grammy Awards in 1989 for Best New Artist and for Best Female
23   Pop Vocal Performance for *Fast Car*.  Ms. Chapman's achievements continued
24   throughout her career.  During the 1990s and 2000s, Ms. Chapman received several
25   more Grammy nominations, including for Best Rock Song for *Give Me One*
26   *Reason*, which she won, and many other awards.  At every turn, Ms. Chapman's
27   music has been critically acclaimed and respected.

28   Ms. Chapman wrote the Composition in 1982, and obtained a copyright

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

2                          MOTION FOR PARTIAL SUMMARY
                           JUDGMENT OF PLAINTIFF TRACY CHAPMAN

registration for the work (and other musical compositions)—PAu000556755—from the United States Copyright Office on October 20, 1983.  (Undisputed Fact ("UF") 1, 2, Declaration of Nicholas Frontera ("Frontera Decl."), ¶ 5, Ex. 4; *id.* at ¶ 27, Ex. 26; Declaration of Tracy Chapman ("Chapman Decl.") at ¶ 2.)[1]  Ms. Chapman later entered into a co-publishing agreement with, and granted a partial assignment of the copyright in the Composition to, SBK April Music, Inc. ("SBK").  (Chapman Decl. at ¶ 4.)   SBK later obtained a copyright registration for the Composition-- PA0000417830—on or about May 5, 1989, listing it and Purple Rabbit Music, Chapman's publishing designee, as the copyright claimants.  (Frontera Decl., ¶ 6, Ex. 5; Chapman Decl. at ¶ 3.)  On May 15, 2016, SBK's rights in the Composition transferred back to Ms. Chapman, making her the sole owner of the copyright in the Composition.  (UF 3, Chapman Decl., ¶ 4, Ex. 1.)

## B.  Defendant Onika Tanya Maraj and Infringing Work

Ms. Maraj is a well-known rapper and hip hop recording artist.  In 2017, Ms. Maraj began recording the Infringing Work.  (UF 4 Frontera Decl., ¶ 7, Ex. 6 (Deposition of Onika Tanya Maraj ("Maraj Dep.") at 50:25-51:3.)  The Infringing Work features fellow rapper and hip hop recording artist Nasir bin Olu Dara Jones p/k/a Nas ("Nas").  (UF 5, Frontera Decl., ¶ 7, Ex. 6 (Maraj Dep. at 50:25-51:3.))  Ms. Maraj hoped to include the Infringing Work on her upcoming album *Queen*.  (Frontera Decl., ¶ 8, Ex. 7 at p. 71, ¶ 19.)   Ms. Maraj acknowledged that the Infringing Work was a "musical interpolation . . . that incorporated music and lyrics from the Composition."  (UF 6-8, Frontera Decl., ¶ 8, Ex. 7 at p. 71, ¶¶ 19, 20.)  Specifically, Ms. Maraj admitted "that the Infringing Work uses a majority of the Composition's lyrics."  (UF 7 Frontera Decl., ¶ 9, Ex. 8 at p. 81 (Suppl. Resp. to RFA No. 8); *id.* at ¶ 10, Ex. 9 (containing side by side comparison of the

---

[1] The Declaration of Tracy Chapman and the Declaration of Nicholas Frontera are attached to Plaintiff's Appendix of Evidence in Support of Motion for Partial Summary Judgment.  All references to page numbers are to the consecutively numbered pages of the Appendix.  References to "UF" are to the undisputed facts contained in Plaintiff's Separate Statement of Undisputed Facts.

1  Composition and the Infringing Work); *id.* at ¶ 9, Ex. 8 at p. 81 (Suppl. Resp. to

2  RFA No. 10) (admitting lyrics were accurately listed in exhibit).)    Because of this,

3  Ms. Maraj "knew that [she] needed a License to use the Composition in the

4  Infringing Work in order to include the Infringing Work on [her] album Queen."

5  (UF 9, Frontera Decl., ¶ 9, Ex. 8 at p. 80 (Suppl. Resp. to RFA No. 5).)    Despite

6  this, Ms. Maraj began recording the Infringing Work, which interpolates the

7  Composition, without first seeking Ms. Chapman's authorization to do so.

8  (Frontera Decl., ¶ 8, Ex. 7 at p. 71, ¶ 20.)

9    **C.    Ms. Chapman Denies Ms. Maraj's Various Requests for**

10   **Authorization to Use the Composition in the Infringing Work**

11   On May 23, 2018, Joshua Berkman ("Mr. Berkman"), a representative from

12  Ms. Maraj's record label, Republic Records, e-mailed Deborah Mannis-Gardner

13  ("Ms. Mannis-Gardner") of DMG Clearances, Inc., the number one clearance

14  company in the world, to request that she obtain a clearance to use the Composition

15  in the Infringing Work.  (UF 11, Frontera Decl., ¶ 11, Ex. 10 at p. 99 ; *id.* at ¶ 12,

16  Ex. 11 (Deposition of Deborah Mannis-Gardner ("Mannis-Gardner Dep.") at

17  107:11-108:8, 132:11-108:8, 133:9-14.))   Shortly thereafter, Ms. Mannis-Gardner

18  notified Mr. Berkman that "if [the requested clearance song] is shelly thunder/foxy

19  brown (sic) reggae version of Sorry written by Tracy Chapman then its (sic) not

20  available for sampling."  (UF 12, Frontera Decl., ¶ 11, Ex. 10 at p. 99;  *id.* at ¶ 12,

21  Ex. 11 (Mannis-Gardner Dep. at 110:10-110:14.))   Indeed, Ms. Mannis-Gardner

22  knew that Ms. Chapman was on the "do not sample list"—an unwritten list of

23  artists that are well-known in the music industry for not allowing samples of their

24  works.  (Frontera Decl., ¶ 12, Ex. 11 (Mannis-Gardner Dep. at 111:9-23, 115:14-

25  116:4.))   Ms. Mannis-Gardner knew this based on her more than 30 years of

26  industry and clearance experience.  (*Id.*; *see also id.* at 132:11-108:8, 133:9-14,

27  134:21-135-3.)

28   Despite Ms. Mannis-Gardner notifying Mr. Berkman that Ms. Chapman did

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

4

MOTION FOR PARTIAL SUMMARY
JUDGMENT OF PLAINTIFF TRACY CHAPMAN

1   not allow for sampling, Mr. Berkman instructed Ms. Mannis-Gardner to attempt to

2   clear the Infringing Work anyway.  (UF 13, Frontera Decl., ¶ 13, Ex. 12; *id.* at ¶ 12,

3   Ex. 11 (Mannis-Gardner Dep. at 112:19-114:3.))   Accordingly, on June 26, 2018,

4   Ms. Mannis-Gardner contacted Gelfand, Rennert & Feldman, LLP ("Gelfand"), Ms.

5   Chapman's business managers, to attempt to clear the Infringing Work.  (Chapman

6   Decl. at ¶ 5, Ex. 2 at p. 27; Frontera Decl., ¶ 12, Ex. 11 (Mannis-Gardner Dep. at

7   117:2-119:17, 120:20-121:12.))   In her request, Ms. Mannis-Gardner stated that

8   "[w]hen . . . Tracy Chapman was with Sony/ATV her material was always denied",

9   and asked "[i]s she still on the do not sample or interpolate list? I have an A LIST

10   artist who wants to use the song Sorry."  (Chapman Decl. at ¶ 5, Ex. 2 at p. 27.)

11       After a lengthy exchange, Ms. Mannis-Gardner submitted an official request

12   for approval to license the Composition for use in the Infringing Work.  (Chapman

13   Decl. at ¶ 5, Ex. 2 at p. 26; Frontera Decl., ¶ 14, Ex. 13; *id.* at ¶ 12, Ex. 11 (Mannis-

14   Gardner Dep. at 122:5-15.))   That request was passed along to Ms. Chapman, who

15   instructed Gelfand to deny it.  (UF 14, Chapman Decl. at ¶ 5.)  As a result, on July

16   16, 2018, a Gelfand representative e-mailed Ms. Mannis-Gardner unequivocally

17   stating that "the request has not been approved."  (Chapman Decl. at ¶ 5, Ex. 2 at p.

18   25.)  That same day, Ms. Mannis-Gardner forwarded the denial to Mr. Berkman.

19   (UF 15, *Id.*; Frontera Decl., ¶ 12, Ex. 11 (Mannis-Gardner Dep. at 123:22-124:22.))

20       In spite of this denial, Ms. Maraj and her representatives continued to create

21   the Infringing Work, including its interpolation of the Composition, and seek

22   clearance from Ms. Chapman.   On July 18, 2018, Mr. Berkman e-mailed Ms.

23   Mannis-Gardner asking if they could "figure out a way to get to [Ms. Chapman]

24   direct" to clear the song.  (UF 16, Frontera Decl., ¶ 15, Ex. 14;  *id.* at ¶ 12, Ex. 11

25   (Mannis-Gardner Dep. at 126:7-131:18.))  Ms. Mannis-Gardner reiterated: "Tracy

26   doesn't approve samples or interpolations and the songs out there are not with

27   consent. I am unfamiliar with Tracy's Mmgt or legal counsel. Im (sic) sorry."  (*Id.*)

28       Nevertheless, Ms. Maraj and her representatives persisted.  On July 27, 2018,

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

5

MOTION FOR PARTIAL SUMMARY
JUDGMENT OF PLAINTIFF TRACY CHAPMAN

Gee Roberson, Ms. Maraj's personal manager, contacted Todd Gelfand of Gelfand requesting that he connect Ms. Chapman with Ms. Maraj to discuss an "idea [of Ms. Maraj's] that is one of the most personal for her that was inspired by [Ms. Chapman's] art that [Ms. Maraj] would like the opportunity to touchbase (sic) with [Ms. Chapman] about."  (UF 16, Chapman Decl., ¶ 6, Ex. 3 at pp. 31-32; Frontera Decl. at ¶ 4.)

Days after Mr. Roberson's email, on August 1, 2018, Ms. Maraj personally attempted to reach Ms. Chapman through Twitter, tweeting out to her more than 10 million followers: "Tracy Chapman, can you please hit me . . . omg for the love of #Queen."  (UF 17, Frontera Decl., ¶ 9, Ex. 8 at p. 83 (Suppl. Resp. to RFA No. 18).)

After being made aware of the fact that Ms. Maraj's representatives had once again sought her clearance approval despite her previous denial, Ms. Chapman instructed her attorney to inform Mr. Roberson that the use was denied.  (UF 18, 19, Chapman Decl. at ¶ 6.)  On August 2, 2018, Ms. Chapman's attorney wrote:

> I have spoken to Ms. Chapman and while she appreciates the positive feelings of your client, you should know that she carefully protects her copyrights and in the normal course of business does not approve these kinds of requests. We hope that with this confirmation, your client will move on with the project without the requested sample. Thank you and your client for understanding.

(UF 20, Chapman Decl., ¶ 6, Ex. 3 at p. 31.)  Mr. Roberson confirmed that he had been "made aware of the denied use via our email on Aug 2nd and the album is in stores without the requested sample."  (Frontera Decl., ¶ 26, Ex. 25 at p. 222.)

### D.   Ms. Maraj Continues to Create and Distributes the Infringing Work Despite the Denials

In the face of Ms. Chapman's repeated denials of authorization to use the Composition in the Infringing Work, Ms. Maraj developed a plan to release it to the public.  On August 3, 2018, Ms. Maraj, from her verified Instagram account, sent a private direct message to Mr. Taylor, a popular New York disc jockey for hit radio

station Hot 97 FM, confirming that she would not be releasing the Infringing Work on the Album, but asking him to premiere the Infringing Work on his radio show. Ms. Maraj wrote:

CONFIDENTIAL

(UF 25, Frontera Decl., ¶ 16, Ex. 15 at p. 147 (emphasis added); *id.* at ¶ 17, Ex. 16 (Deposition of Aston George Taylor ("Taylor Dep.") at 159:7-162:18.))   In response, the same day, Mr. Taylor stated, "I will make a movie!!!!!"   (UF 26, Frontera Decl., ¶ 16, Ex. 15 at p. 147.)   Mr. Taylor admitted his response meant he would play the song, say he liked it, and make it exciting.  (UF 26, Frontera Decl., ¶ 17, Ex. 16 ("Taylor Dep.") at 162:25-163:7.)

Having confirmed that Mr. Taylor would premiere the Infringing Work the week her Album released, Ms. Maraj continued to finalize the Infringing Work with Nas.  The same day Ms. Maraj coordinated the release of the Infringing Work with Mr. Taylor, she texted Nas: "CONFIDENTIAL" (Frontera Decl., ¶ 18, Ex. 17 at p. 182;  *id.* at ¶ 7, Ex. 6 (Maraj Dep. at 55:5-24; 56:15-19.))   After some additional discussion, Ms. Maraj sent Nas a link to download the CONFIDENTIAL of the Infringing Work.  (UF 22, Frontera Decl., ¶ 18, Ex. 17 at p. 182;  *id.* at ¶ 7, Ex. 6 (Maraj Dep. at 56:10-24.))   Ms. Maraj and Nas then exchanged a number of texts discussing changes to the verses of the Infringing Work, which still included the Composition.  (Frontera Decl., ¶ 18, Ex. 17 at p. 184-85.)   Ms. Maraj told Nas: "CONFIDENTIAL  (*Id.*)

On August 5, 2020, Ms. Maraj informed Nas that the Infringing Work was CONFIDENTIAL (UF 23, Frontera Decl., ¶ 18, Ex. 17 at p. 186;  *id.* at ¶ 7, Ex. 6 (Maraj Dep. at 59:12-60:2.))   On August 7, 2018, Nas asked Ms. Maraj if she was "CONFIDENTIAL (Frontera Decl., ¶

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

1   18, Ex. 17 at p. 187.)  Ms. Maraj responded, █████████████████████

2   ███████████████████████████████████████████████████████████

3   ████████████████████ (UF 24, *Id*.)  Nas responded, █████████████

4   (*Id*.)

5   　　　　On August 10, 2018, Ms. Maraj released the Album without the Infringing

6   Work.  (Frontera Decl., ¶ 8, Ex. 7 at p. 71, ¶ 19.)  The same day she released the

7   Album, Ms. Maraj followed up with Mr. Taylor via direct message on August 10,

8   2018 stating: ████████████████████████████████████████████████

9   (UF 27, Frontera Decl., ¶ 16, Ex. 15 at p. 148.)  Mr. Taylor then provided his phone

10  number and stated, ██████████████████████████████████████████

11  (UF 28, Frontera Decl., ¶ 16, Ex. 15 at p. 148.)  Ms. Maraj confirmed, ████████

12  ██████  (UF 29, Frontera Decl., ¶ 16, Ex. 15 at p. 148.)

13  　　　　That same day, Ms. Maraj's lead recording engineer, Aubry Delaine ("Mr.

14  Delaine") texted David Castro at Chris Athens Masters, Inc. ("Chris Athens"), the

15  company that mastered Ms. Maraj's songs for the Album.  (UF 30, Frontera Decl. ¶

16  28, at Ex. 27.)  Mr. Delaine informed Mr. Castro that he would send a version of the

17  Infringing Work and asked that Chris Athens master the song and return both clean

18  and explicit versions.  (Frontera Decl. ¶ 19, Ex. 27.)  Chris Athens mastered the

19  Infringing Work and sent Mr. Delaine links to download both a clean and an

20  explicit version of the Infringing Work the same day.  (UF 30, 31, 32, Frontera

21  Decl., ¶ 19, Ex. 18 pp. ; *id.* at ¶ 20, Ex. 19 (Deposition of Aubry Delaine ("Delaine

22  Dep.") at 206:16-208:4.))  The links only allowed for one download each.  (UF 33,

23  Frontera Decl., ¶ 19, Ex. 18 pp.;  *id.* at ¶ 20, Ex. 19 (Delaine Dep. at 206:16-

24  208:4.))  Mr. Delaine testified that he never "sen[t] out any [unreleased] recordings

25  of Ms. Maraj's to a third party without [] receiving an instruction from Ms. Maraj to

26  send out that recording[.]"  (UF 34, Frontera Decl., ¶ 20, Ex. 19 (Delaine Dep. at

27  203:16-23.))

28  　　　　On August 11, 2018, Mr. Taylor posted on his Instagram and Twitter

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

8

MOTION FOR PARTIAL SUMMARY
JUDGMENT OF PLAINTIFF TRACY CHAPMAN

accounts promoting the debut of the Infringing Work on his show that night:

- "Shhhhhhh!!!! TONIGHT 7PM!!! NICKY GAVE ME SOMETHING!!! @nickiminaj ft @nas !!! (NOT ON HER ALBUM!) GONNA STOP THE CITY TONIGHT!!!!!!!!!!!!!!"  (UF 35, Frontera Decl., ¶ 21, Ex. 20; *id.* at ¶ 17, Ex. 16 (Taylor Dep. at 167:18-168:23).)

- "Shhhhhhh!!!! TONIGHT 7PM!!! NICKI GAVE ME SOMETHING!!! @nickiminaj ft @nas !!! (NOT ON HER ALBUM!) GONNA STOP THE CITY TONIGHT!!!!!!!!!!!!!!"  (UF 35, Frontera Decl., ¶ 22, Ex. 21; *id.* at ¶ 17, Ex. 16 (Taylor Dep. at 170:1-171:12).)

Mr. Taylor received the Infringing Work via text sometime between (i) August 10, 2018 when Ms. Maraj told him she would text it to him and (ii) his first social media post promoting the show early afternoon the next day.  (UF 36, Frontera Decl., ¶ 17, Ex. 16, (Taylor Dep. at 164:22-165:14; *id.* at 169:5-18; *id.* at 158:11-22 (confirming that he received the Infringing Work via text).))  The name of the file that Mr. Taylor received, "01 Sorry - 72518 - master.mp3" indicates that he received a mastered version of the Infringing Work.  (UF 37, Frontera Decl., ¶ 23, Ex. 22 (Mr. Taylor emailing the file to one of his interns, DJ Heavy rotation); *id.* at ¶ 17, Ex. 16, (Taylor Dep. at 172:25, 174:22-176:21.))

On August 11, 2018 at 7 PM EST, Mr. Taylor broadcast his radio show on Hot 97 FM.  (UF 38, Frontera Decl., ¶ 17, Ex. 16, (Taylor Dep. at 166:9-13, 173:17-23.))  Mr. Taylor played the Infringing Work during the broadcast.  (UF 39, *Id.*)  Hot 97 also subsequently posted the broadcast on its website.  (Frontera Decl., ¶ 24, Ex. 23.)  Additionally, Hot 97 posted a link on its Instagram to listen to the Infringing Work with a caption stating "If you missed it…hear it again".  (Frontera Decl., ¶ 25, Ex. 24.)

In the following months, numerous copies of the Infringing Work were posted on the Internet.  (Frontera Decl., ¶ 29.)  As a result, Ms. Chapman was forced to incur significant expenses monitoring these improper postings and issuing DMCA takedown notices.  (*Id.*)  To this day, copies of the Infringing Work remain

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

9

MOTION FOR PARTIAL SUMMARY
JUDGMENT OF PLAINTIFF TRACY CHAPMAN

1   on the Internet despite various efforts by Ms. Chapman to have them taken down.

2   (*Id*.)

3   ## III.   LEGAL STANDARD

4   Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary

5   judgment is proper where "there is no genuine dispute as to any material fact and the

6   movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Celotex*

7   *Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "Where the record taken as a whole

8   could not lead a rational trier of fact to find for the nonmoving party, there is no

9   'genuine issue for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475

10  U.S. 574, 586-87 (1986) (citations omitted).  Put differently, "[t]he district court

11  should grant summary judgment where the only reasonable conclusion to be drawn

12  from the record supports the moving party."  *Gregory v. United States*, 178 F.3d

13  1294 (6th Cir. 1999); *Miksad v. Dialog Info. Servs., Inc.*, 900 F.2d 263 (9th Cir.

14  1990).  Once the moving party has met this standard, the burden shifts to the party

15  opposing summary judgment to demonstrate a genuine issue for trial.  *Anderson v.*

16  *Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  The opposing party must do so with

17  specific facts.  *Matsushita*, 475 U.S. at 586.

18  ## IV.   MS. MARAJ'S INFRINGING WILLFUL CONDUCT IS NOT
19  ## DISPUTED AND IS THEREFORE SUBJECT TO SUMMARY
    ## JUDGMENT

20  Ms. Chapman seeks partial summary judgment as to Ms. Maraj's liability for

21  copyright infringement.  Ms. Maraj committed copyright infringement when she

22  created a derivative work (*i.e.*, the Infringing Work) without authorization and

23  when she distributed it.  Moreover, Ms. Maraj's actions as to both creation and

24  distribution were willful.

25  Ms. Chapman is entitled to summary adjudication on the issue of liability for

26  copyright infringement because Ms. Maraj does not contest her use of the

27  Composition in the Infringing Work and the undisputed facts establish that Ms.

28  Maraj or one of her agents acting at her direction distributed the Infringing Work.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

10

MOTION FOR PARTIAL SUMMARY
JUDGMENT OF PLAINTIFF TRACY CHAPMAN

(*See, supra,* §§ II.B, II.D.)  Further, the Court should summarily adjudicate the fact that Ms. Maraj's infringement "was committed willfully" within the meaning of 17 U.S.C.A. § 504(c)(2) because Ms. Maraj knew she needed clearance, was affirmatively denied clearance numerous times, yet acted anyway.  This is the very definition of willful conduct.

To establish copyright infringement, a plaintiff must demonstrate: (1) that she owns a valid copyright; and (2) that defendant copied protected aspects of the work. *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1116-17 (9th Cir. 2018) (*citing Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 361, (1991)).  "The word 'copying' is shorthand for the infringing of any of the copyright owner's five exclusive rights" under 17 U.S.C. § 106.  *See A&M Records, Inc. v. Napster, Inc.,* 239 F.3d 1004, 1013 (9th Cir. 2001) (*quoting S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1085 n.3 (9th Cir. 1989)).  These exclusive rights include the right to reproduce, distribute, publicly display, perform, or create derivative works of the copyrighted work.  17 U.S.C. § 106.

A plaintiff need not demonstrate the defendant's intent to infringe the copyright in order to demonstrate copyright infringement.  *UMG Recordings, Inc. v. Disco Azteca Distribs., Inc.,* 446 F. Supp. 2d 1164, 1172 (E.D. Cal. 2006); *see also Edu. Testing Serv. v. Simon*, 95 F. Supp. 2d 1081, 1087 (C.D. Cal. 1999) (copyright infringement "is a strict liability tort").

Here, Ms. Chapman is able to meet her burden.

### A.   Ms. Chapman Owns a Valid Copyright in the Composition

A certificate of registration validly obtained from the Copyright Office within five years of first publication of a work constitutes *prima facie* evidence of the originality of the work and of the facts stated therein, including ownership.  *See* 17 U.S.C. § 410(c).  In this case, Ms. Chapman is entitled to this statutory presumption because she registered her copyright of the song with the Copyright Office within five years of publication. *Marisa Christina, Inc. v. Bernard Chaus, Inc.,* 808 F.

Supp. 356, 357 (S.D.N.Y. 1992).

It is undisputed that Ms. Chapman has always maintained rights to the Composition.  (UF 1-3.)  Ms. Chapman wrote the Composition in 1982, and obtained a copyright registration for the work (and other musical compositions) – PAu000556755 – from the United States Copyright Office on October 20, 1983. (UF 1-2, Frontera Decl., ¶ 6, Ex. 5; Chapman Decl. ¶ 2.)  Although Ms. Chapman entered into a co-publishing agreement with SBK through which SBK obtained a partial assignment of the copyright in the Composition, SBK's rights in the Composition transferred back to Ms. Chapman, on May 15, 2016.  (Chapman Decl., ¶ 4, Ex. 1.)  Accordingly, Ms. Chapman is  the sole owner of the copyright in the Composition.  (UF 3, Chapman Decl., ¶ 4, Ex. 1.)

Ms. Maraj does not—and cannot—dispute Ms. Chapman's ownership. Therefore, Ms. Chapman is entitled to summary adjudication as to ownership.

### B.  <u>Ms. Maraj Willfully Created an Unauthorized Derivative Work</u>

The Copyright Act bestows on the owner of a copyright certain exclusive rights, including the right to create and regulate derivative works. 17 U.S.C. §§ 106(1)-(3), 17 U.S.C. § 602(a).  Ms. Maraj violated this exclusive right by creating a derivative work of Ms. Chapman's copyrighted work without authorization. Moreover, Ms. Maraj's violation was willful under the law.

1.  <u>It is Undisputed That Ms. Maraj Created an Unauthorized Derivative Work, *i.e.*, the Infringing Work</u>

To prove direct copyright infringement, a plaintiff must demonstrate both ownership and "that the alleged infringers violated at least one exclusive right granted to copyright holders under 17 U.S.C. § 106." *A&M Records, Inc.*, 239 F.3d at 1013.  In addition, direct infringement requires the plaintiff to show causation, or "volitional conduct", by the defendant.  *See Fox Broad. Co., Inc. v. Dish Network L.L.C.,* 747 F.3d 1060, 1067 (9th Cir. 2013).  The word "volition" in this context does not mean an "act of willing or choosing" or an "act of deciding," but rather

1    "simply stands for the unremarkable proposition that proximate causation

2    historically underlines copyright infringement liability no less than other torts."

3    *Perfect 10, Inc. v. Giganews, Inc.,* 847 F.3d 657, 666 (9th Cir. 2017) (quoting

4    *Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.*, 907 F. Supp. 1361,

5    1370 (N.D. Cal. 1995)); *see also* 4 Melville B. Nimmer & David Nimmer, <u>Nimmer</u>

6    <u>on Copyright</u>, § 13.08[C][1] (2016).

7        Here, it is undisputed that Ms. Maraj created an unauthorized derivative work

8    of the Composition when she created the Infringing Work.  Indeed, Ms. Maraj

9    *admitted* in her responses to Ms. Chapman's requests for admissions ("RFA

10   Responses") and deposition that the Infringing Work uses a majority of the

11   Composition's lyrics and its vocal melody.  (UF 6-8, Frontera Decl., ¶ 9, Ex. 8 at p.

12   81 (Suppl. Resp. to RFA No. 8) ("Admit that the Infringing Work uses a majority of

13   the Composition's lyrics." "…ADMIT.").)  In other words, Ms. Maraj *admits* that

14   she created a derivative work of the Composition that is substantially similar, if not

15   strikingly similar, to the original.  (UF 6-8, Frontera Decl., ¶ 8, Ex. 7 at p. 71, ¶¶ 19,

16   20 (admitting that the Infringing Work was a "musical interpolation . . . that

17   incorporated music and lyrics from the Composition" ).)  Ms. Maraj further

18   admitted in her RFA Responses that she began recording the Infringing Work

19   *before* requesting a license from Ms. Chapman for use of the Composition.  (UF 10,

20   Frontera Decl., ¶ 8, Ex. 7 at p. 71, ¶ 20.)   These facts are undisputed.  This is

21   copyright infringement.

22       Based on prior discussions, Ms. Chapman anticipates that Ms. Maraj may

23   argue that although she created an unauthorized derivative work when she created

24   the Infringing Work, such creation (and infringement) was innocent.   But Ms.

25   Maraj's position is a red herring; intent is irrelevant to the issue of copyright

26   infringement.  *UMG Recordings, Inc.,* 446 F. Supp. 2d at 1172; *Educ. Testing Serv.,*

27   95 F. Supp. 2d at 1087 (copyright infringement "is a strict liability tort").   Ms.

28   Maraj's actions speak for themselves.   She directly infringed on Ms. Chapman's

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

13

MOTION FOR PARTIAL SUMMARY
JUDGMENT OF PLAINTIFF TRACY CHAPMAN

Composition.  For this reason, Ms. Chapman is entitled to summary adjudication on copyright infringement based on Ms. Maraj's creation of an unauthorized derivative work.

2.   Ms. Maraj's Actions in Creating an Unauthorized Derivative Work Were Willful As a Matter of Law

To prove willfulness, "the plaintiff must show (1) that the defendant was actually aware of the infringing activity, or (2) that the defendant's actions were the result of 'reckless disregard' for, or 'willful blindness' to, the copyright holder's rights." *Washington Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 674 (9th Cir. 2012), *abrogated on other grounds by Axiom Foods, Inc. v. Acerchem Int'l, Inc.,* 874 F.3d 1064, 1067 (9th Cir. 2017).  The determination of willfulness is ordinarily a question of fact for the jury.  *Hearst Corp. v. Stark*, 639 F. Supp. 970, 980 (N.D. Cal. Jun. 30, 1986).  However, where the relevant facts are admitted or otherwise undisputed, willfulness can be appropriately resolved on summary judgment.  *Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1335-36 (9th Cir. 1990); *Sega Enters. Ltd. v. MAPHIA*, 948 F. Supp. 923, 936 (N.D. Cal. 1996).

Ms. Maraj's actions are exactly the type of willful infringement that can be decided on summary judgment.  By definition "[i]nfringement is willful if a record reflects that a defendant was warned they needed a license or permission but declined to do so and went ahead anyway." *Broadcast Music, Inc. v. McDade & Sons, Inc.,* 928 F. Supp. 2d 1120, 1134 (D. Ariz. Mar. 6, 2013); *Sega Enters. Ltd.*, 948 F.Supp. at 936 (granting summary judgment as to willfulness and finding that there were knowing actions of infringement).   Under these conditions, it is appropriate to conclude that Ms. Maraj willfully infringed Ms. Chapman's copyright.

Here, the undisputed facts illustrate that Ms. Maraj's copyright infringement was willful.  *First*, Ms. Maraj admitted in her RFA Responses and deposition that her copying of the Composition was unauthorized, conceding that she (i) recorded

the Infringing Work before requesting a license from Ms. Chapman (UF 6-8, Frontera Decl., ¶ 8, Ex. 7 at p. 71, ¶ 20); (ii) intended to include the Infringing Work on the Album (Frontera Decl., ¶ 8, Ex. 7 at p. 71, ¶ 19); and (iii) knew she needed a license to use the Composition in the Infringing Work in order to include the Infringing Work on the Album (UF 9, Frontera Decl., ¶ 9, Ex. 8 at p. 80 (Suppl. Resp. to RFA No. 5).)  Ms. Maraj's actions in the face of her knowledge that she needed a license is precisely the type of willful conduct contemplated by *Broadcast Music, Inc.*, 928 F. Supp. 2d at 1134.

*Second*, it also is undisputed that Ms. Maraj never received the requested – and required – permission to use the Composition from Ms. Chapman.  Instead, Ms. Maraj and her representatives were ***unequivocally informed*** that the Composition was not available for sampling on multiple occasions, and that Ms. Chapman was not granting the requested permission.  (*See, supra*, § II.C; *see also* UF 12, 14-15, 19, Frontera Decl., ¶ 11, Ex. 10 at p. 99;  *id.* at ¶ 12, Ex. 11 (Mannis-Gardner Dep. at 111:9-24);  *id.* at ¶ 15, Ex. 14; Chapman Decl., ¶ 6, Ex. 3.)  Ms. Maraj's creation of the Infringing Work without Ms. Chapman's permission despite acknowledging that she knew she needed Ms. Chapman's authorization establishes willful infringement. *See Broadcast Music, Inc.*, 928 F. Supp. 2d at 1134.

*Third*, to the extent that Ms. Maraj argues that she did not willfully infringe Ms. Chapman's copyright because she allegedly created the Infringing Work *for the purpose of* obtaining permission from Ms. Chapman to use it on her Album, that argument is unsupported by the facts or law.  Indeed, the fact that Ms. Maraj and Nas continued working on the Infringing Work *after* Ms. Maraj knew that Ms. Chapman had not cleared—and would not clear—the license request and Ms. Maraj confirmed to Mr. Taylor that she would not be using the Infringing Work on her Album demonstrates that Ms. Maraj's post-hoc justification for the reason she created the Infringing Work (*i.e.*, to obtain Ms. Chapman's permission to use the Composition) is unsupportable.  (*See, supra*, § II.D; *see also* Frontera Decl., ¶ 18,

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

15

MOTION FOR PARTIAL SUMMARY
JUDGMENT OF PLAINTIFF TRACY CHAPMAN

Ex. 17;  *id.* at ¶ 16, Ex. 15 at p. 147.)  Further, not only did Ms. Maraj continue working on the Infringing Work after her requests to license the Composition were denied, but she went a step further by asking Mr. Taylor to premiere the Infringing Work on the radio the week her Album was released to the public.  (UF 25, Frontera Decl., ¶ 16, Ex. 15 at p. 147.)

Given these undisputed facts, no reasonable juror could conclude that Ms. Maraj did not act willfully.  Therefore, summary judgment is appropriate as to Ms. Maraj's willfulness in creating the unauthorized derivative work using the Composition.

## C.   Ms. Maraj Willfully Distributed the Infringing Work

In addition to violating Ms. Chapman's copyright by creating an infringing derivative work, Ms. Maraj committed a second act of infringement by willfully distributing the Infringing Work.

### 1.   The  Undisputed Facts Establish that Ms. Maraj Distributed the Infringing Work

As discussed above, 17 U.S.C. § 106(3) grants a copyright holder the exclusive right to distribute its copyrighted work.  Ms. Chapman is the undisputed copyright holder.  (UF 1-3.)  A common method of distribution is through licensing agreements, which permit the copyright holder to place restrictions upon the distribution of its products. "A licensee infringes the owner's copyright if its use exceeds the scope of its license." *S.O.S., Inc,* 886 F.2d at 1087 (*citing Gilliam v. American Broadcasting Cos.,* 538 F.2d 14, 20 (2nd Cir. 1976)).

Moreover, even if Ms. Maraj did not distribute the Infringing Work herself, she is still liable for distribution and considered the distributor if the distribution happened at her direction.  The law is clear, "[a]n agent acting within his apparent or ostensible authority binds the principal where the principal has intentionally or negligently allowed others to believe the agent has authority." *Brave New Films 501(c)(4) v. Weiner*, 626 F.Supp.2d 1013, 1016 (N.D. Cal. 2009); see also *Holley v.*

*Crank*, 400 F.3d 667, 673 (9th Cir. 2004) ("Principals are liable for the torts of their agents committed within the scope of their agency.").   Further, the existence of agency may be decided on summary judgment when there is only one conclusion that may be drawn.   *C.A.R. Transp. Brokerage Co., Inc. v. Darden Restaurants, Inc.*, 213 F.3d 474, 481 (9th. Cir. 2000) (affirming grant of summary judgment on agency).

Here, the undisputed evidence demonstrates that Ms. Maraj distributed the Infringing Work without a license or other form of consent.   After being told on numerous occasions she did not have permission to use the Composition in the Infringing Work, Ms. Maraj distributed the track anyway.   (*See, supra*, § II.D; *see also* UF 12, 14, 19, 25-36, Frontera Decl., ¶ 11, Ex. 10; *id.* at ¶ 12, Ex. 11 (Mannis-Gardner Dep. at 111:9-24);   *id.* at ¶ 15, Ex. 14; Chapman Decl., ¶ 6, Ex. 3.)   Just a week before her Album was set to release, Ms. Maraj privately messaged Mr. Taylor:



(UF 25, Frontera Decl., ¶ 16, Ex. 15 at p. 147 (emphasis added).)   Mr. Taylor responded indicating that he would play the track.   (Uf 26, Frontera Decl., ¶ 16, Ex. 15 at p. 147;   *id.* at ¶  17, Ex. 16 (Taylor Dep. at 162:25-163:7).)

Ms. Maraj followed up with Mr. Taylor several days later (the day her Album released) telling him that the track featured her and Nas, *i.e.* the Infringing Work, and asking him for his number so she could send it over for Mr. Taylor to publicly broadcast.   (UF 27, Frontera Decl., ¶ 16, Ex. 15 at p. 148.)[2]   Mr. Taylor provided his number and Ms. Maraj confirmed she would text the Infringing Work to him. (UF 28, 29,  Frontera Decl., ¶ 16, Ex. 15 at p. 148.)

---

[2] No other track that Maraj was working on for the Album featured Nas. (Delaine Dep. at 205:8-12.)

On August 11, 2018, Mr. Taylor posted to his Instagram and Twitter accounts promoting the Infringing Work and confirming he received it from Ms. Maraj:

- "Shhhhhhh!!!! TONIGHT 7PM!!! ***NICKY GAVE ME SOMETHING***!!! @nickiminaj ft @nas !!! (NOT ON HER ALBUM!) GONNA STOP THE CITY TONIGHT!!!!!!!!!!!!!!" (UF 35, Frontera Decl., ¶ 21, Ex. 20; *id.* at ¶ 17, Ex. 16 (Taylor Dep. at 167:18-168:23.) (emphasis added).)

Then, the same day at 7 PM EST, Mr. Taylor broadcast his radio show on Hot 97 FM and played the Infringing Work.  (UF 38, 39, Frontera Decl., ¶ 17, Ex. 16 (Taylor Dep. at 166:9-13).)

The chain of distribution is clear:

- Ms. Maraj asked Mr. Taylor to premiere the Infringing Work the week her Album released (UF 25, Frontera Decl., ¶ 16, Ex. 15 at p. 147);
- Ms. Maraj confirmed with Mr. Taylor the day her album released that Mr. Taylor was going to play the Infringing Work on his show (UF 27, *id.*);
- Ms. Maraj asked Taylor for his number to send the Infringing Work to him (UF 27, Frontera Decl., ¶ 16, Ex. 15 at p. 148);
- Ms. Maraj's recording engineer requested that the Infringing Work be mastered and a "clean" version be sent back to him (UF 30, Frontera Decl. Frontera Decl., ¶ 28, at Ex. 27);
- Chris Athens sent Mr. Delaine a clean version that day (UF 32, Frontera Decl., ¶ 19, Ex. 18 at pp. 189-90; Frontera Decl., ¶ 20, Ex. 19 (Delaine Dep. at 206:16-208:4)); and
- Between the time of Mr. Taylor's and Ms. Maraj's last message and the next afternoon, Mr. Taylor received the Infringing Work via text (UF 36, Frontera Decl., ¶ 17, Ex. 16 (Taylor Dep. at 164:22-165:8; *id,*

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

18

MOTION FOR PARTIAL SUMMARY
JUDGMENT OF PLAINTIFF TRACY CHAPMAN

at 169:5-18; *id.* at 158:11-22).)

Each of these facts is indisputable based on the documentary evidence.  And from these facts, the only reasonable conclusion is that Ms. Maraj or someone acting at her direction distributed the Infringing Work to Mr. Taylor.  Indeed, Ms. Maraj's recording engineer confirmed that unreleased recordings such as the Infringing Work are maintained in the strictest confidence and that he ***never*** sends any unreleased recordings out to anyone without instructions from Ms. Maraj directly.  (UF 34, Frontera Decl., ¶ 20, Ex. 19 (Delaine Dep. at 200:23-202:6, 203:16-23; *id.* at 204:17-21).)

Thus, the only possible conclusion based on the undisputed facts and evidence adduced in discovery is that Ms. Maraj, or someone acting at her direction, distributed the Infringing Work to Mr. Taylor for public consumption.

2.    The Undisputed Evidence Establishes that Ms. Maraj's Distribution was Willful

Ms. Maraj's conduct with regard to distribution exemplifies the type of willful conduct appropriately decided on summary judgment.  The law is clear. When an individual knows their conduct infringes on another's copyright and acts, that conduct is willful.  *Columbia Pictures Television v. Krypton Bd. of Birmingham, Inc.*, 106 F.3d 284, 293 (9th Cir. 1997); *BWP Media USA, Inc. v. P3R, LLC,* 2014 WL 3191160, at *4 (C.D. Cal. Jul. 3, 2014); *Basic Books, Inc. v. Kinko's Graphics Corp.,* 758 F. Supp. 1522, 1543 (S.D.N.Y. 1991)*; accord Peer Int'l Corp. v. Pausa Records, Inc.,* 909 F.2d 1332, 1335 (9th Cir. 1990);  *Warner Bros. Entm't Inc. v. Duhy*, No. CV 09-5798-GHK (FMOx), 2009 WL 5177956, at *1 (C.D. Cal. Nov. 30, 2009)(finding willfulness in a default judgment where plaintiff pled defendant's willfulness in its complaint and buttressed this assertion with evidence of defendant's knowledge of the unlawfulness of their actions).

*First*, as discussed above, it is undisputed that Ms. Maraj knew she was not permitted to distribute the Infringing Work without permission.  (UF 9, Frontera

Decl., ¶ 9, Ex. 8 at p. 80 (Supp. Resp. to RFA No. 5) (Ms. Maraj admitted "that [she] needed a License to use the Composition in the Infringing Work in order to include the Infringing Work on [her] album Queen."); *id.* at p. 82 (Suppl. Resp. to RFA No. 14).)

*Second*, the undisputed evidence establishes that Ms. Maraj intended to distribute the Infringing Work to Mr. Taylor and either Ms. Maraj or someone acting at her direction did in fact distribute the Infringing Work to Mr. Taylor. It cannot be disputed that Ms. Maraj told Mr. Taylor she wanted him to world premiere the Infringing Work the week her Album dropped. (UF 25, Frontera Decl., ¶ 16, Ex. 15 at p. 147.) It further cannot be disputed that Ms. Maraj told Mr. Taylor she would text him the Infringing Work less than 24 hours before he received it via text. (UF 27-29, Frontera Decl., ¶ 16, Ex. 15 at p. 148.) Nor can it be disputed that the day Ms. Maraj told Mr. Taylor that she would send him the Infringing Work, Ms. Maraj's sound engineer sent the song to Chris Athens to be mastered and received a "clean" mastered version of the Infringing Work in return. (UF 30-33, Frontera Decl., ¶ 28, Ex. 27; *id.* at ¶ 19, Ex. 18.) Mr. Taylor then posted on social media that he got something from Ms. Maraj and testified that he received the Infringing Work via text. (UF 35, Frontera Decl., ¶ 17, Ex. 16 (Taylor Dep. at 164:22-165:8; *id.* at 169:5-18; *id.* at 158:11-22) (confirming that Taylor received the Infringing Work via text).) Further, Mr. Delaine testified that he has never "sen[t] out any [unreleased] recordings of Ms. Maraj's to a third party without [] receiving an instruction from Ms. Maraj to send out that recording[.]" (UF 34, Frontera Decl., ¶ 20, Ex. 19 (Delaine Dep. at 203:16-23).)

As a result, any reasonable trier of fact would conclude that Ms. Maraj was aware of the unlawfulness of the Infringing Work, and nevertheless willfully distributed it. Ms. Chapman is entitled to summary judgment on this additional prong of copyright infringement.

## V.   __CONCLUSION__

For all of the foregoing reasons, Ms. Chapman respectfully requests that the Court grant her motion in its entirety and enter judgment in her favor as to the issue of liability for Copyright Infringement, holding that: (1) Ms. Maraj committed copyright infringement by creating the Infringing Work, (2) the creation of the Infringing Work was willful, (3) Ms. Maraj committed copyright infringement by distributing the Infringing Work, and (4) the distribution was willful.

Dated:  August 17, 2020

Respectfully submitted,

MANATT, PHELPS & PHILLIPS, LLP

By: /s/ John M. Gatti
    John M. Gatti
    *Attorney for Plaintiff*
    TRACY CHAPMAN

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

21

MOTION FOR PARTIAL SUMMARY
JUDGMENT OF PLAINTIFF TRACY CHAPMAN