1
2
3
4
5
6
7
8

MANATT, PHELPS & PHILLIPS, LLP
JOHN M. GATTI (State Bar No. 138492)
E-mail: jgatti@manatt.com
LAUREN J. FRIED (State Bar No. 309005)
E-mail: lfried@manatt.com
NICHOLAS FRONTERA (State Bar No. 307479)
E-mail: nfrontera@manatt.com
2049 Century Park East, Suite 1700
Los Angeles, California 90067
Tel.:  (310) 312-4000; Fax:  (310) 312-4224

*Attorneys for Plaintiff*
TRACY CHAPMAN

9
10
11

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| | |
|---|---|
| TRACY CHAPMAN, <br><br> Plaintiff, <br><br> vs. <br><br> ONIKA TANYA MARAJ p/k/a NICKI MINAJ and DOES 1-10, <br><br> Defendants. | No. 2:18-cv-09088-VAP <br><br> Honorable Virginia A. Phillips <br><br> **[*REDACTED*] APPENDIX OF EVIDENCE IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT** <br><br> Hearing Date:     September 14, 2020 <br> Hearing Time:     2:00 p.m. <br><br> Final Pretrial Conf.:  October 5, 2020 <br> Trial Date:        October 13, 2020 <br><br> [Concurrently filed with: 1. Notice of Motion and Motion For Partial Summary Judgment; 2. Separate Statement of Undisputed Facts; 3. [Proposed] Order] |

Plaintiff Tracy Chapman hereby submits the following Appendix of Evidence in support of its Motion for Summary Judgment.

**EXHIBITS**

| Exhibit | Description |
|---|---|
| **Declaration of Tracy Chapman** | |
| 1. | May 15, 2008 Agreement between Tracy Chapman d/b/a Purple Rabbit Music and EMI April Music. |
| 2. | June 26-July 16, 2018 email chain between Deborah Mannis-Gardner, Joshua Berkman and representatives at Gelfand Rennert and Feldman, LLP titled "Re: Tracy Chapman – Sorry". |
| 3. | July 27-August 2, 2018 email chain between Gee Roberson and Lee Phillips titled "Tracy Chapman". |
| **Declaration of Nicholas Frontera** | |
| 4. | Printout of the Public Catalog listing for the October 20, 1983 Copyright Registration - PAu000556755 for "Anthology of songs by Tracy Chapman, II" that includes Plaintiff's original work entitled "Baby Can I Hold You". |
| 5. | Printout of the Public Catalog listing for the May 5, 1989 Copyright Registration - PA0000417830 - for "Baby, Can I Hold You?". |
| 6. | Excerpts of the Transcript of the Deposition of Onika Tanya Maraj taken on September 23, 2019 in this Action |
| 7. | Defendant Onika Tanya Maraj's Answer to Plaintiff Tracy Chapman's Complaint, Dkt. No. 14, filed in this Action on February 22, 2019. |
| 8. | Defendant Onika Tanya Maraj's Supplemental Responses to Tracy Chapman's First Set of Requests for Admission served in |

| | this Action on September 3, 2019. |
|---|---|
| 9. | Comparison Chart of the lyrics of Baby Can I Hold You to those of Sorry that was filed as Exhibit 1 to the Complaint of Tracy Chapman filed this Action on October 22, 2018 (Dkt. 1). |
| 10. | May 23-24, 2018 email chain between Joshua Berkman and Deborah Mannis Gardner titled "Re: New Nicki Minaj Interpolation". |
| 11. | Excerpts of the Transcript of the Deposition of Deborah Mannis-Gardner taken on January 28, 2020 in this Action. |
| 12. | June 26, 2018 email chain between Joshua Berkman and Deborah Mannis-Gardner titled "Re: Nicki Minaj interpolation of Shelly Thunder  'Sorry'". |
| 13. | July 10, 2018 Official Request from DMG Clearances, Inc. entitled "RE: Nicki Minaj "D" contains interpolations from 'Sorry (Baby can I Hold You)" written by Tracy Chapman  and published by Purple Rabbit Music ASCAP)". |
| 14. | July 18, 2018 email chain between Joshua Berkman and Deborah Mannis-Gardner titled "Re: Tracy Chapman" |
| 15. | August 3 - August 11, 2018 Instagram direct messages between Defendant Onika Tanya Maraj and Aston George Taylor. |
| 16. | Excerpts of the Transcript of the deposition of Aston George Taylor taken on February 11, 2020. |
| 17. | August 3 - August 7, 2018 text messages between Onika Tanya Maraj and Nas. |
| 18. | August 10 - August 13, 2018 email chain between David Castro and Aubry Delaine titled "Nicki Minaj - Sorry - Chris Athens Masters". |

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

3                                        APPENDIX OF EVIDENCE

003

| 19. | Excerpts of the Transcript of the deposition of Aubry Delaine taken on July 27, 2020. |
| 20. | August 11, 2018, 1:55 PM Twitter post by Aston George Taylor. |
| 21. | August 11, 2018, 2:34 PM Twitter post by Aston George Taylor. |
| 22. | August 11, 2018 email chain from Aston Taylor to DJ Heavy Rotation titled "Re: 01 Sorry - 72518 - master.mp3". |
| 23. | Printout of the August 11, 2018 post on the Hot 97 Website titled "Funk Flex drops an exclusive Nicki Minaj track with Nas". |
| 24. | August 11, 2018 Hot 97 FM Instagram post Re: "Funk Flex Mix premier of Nicki Minaj and Nas". |
| 25. | August 8 – August 11, 2018 email chain between Gee Roberson, Lee Phillips and Peter Bittenbender. |
| 26. | October 20, 1983 Copyright Registration - PAu000556755 for "Anthology of songs by Tracy Chapman, II" with the United States Copyright Office that includes Plaintiff's original work entitled "Baby Can I Hold You". |
| 27. | August 10, 2018 email from David Castro to Chris Athens entitled "Nicki Minaj – 'Sorry' - song from Serban". |

Dated:  August 17, 2020

Respectfully submitted,

MANATT, PHELPS & PHILLIPS, LLP

By: _/s/ John M. Gatti_
    John M. Gatti
    *Attorney for Plaintiff*
    TRACY CHAPMAN

# DECLARATION OF TRACY CHAPMAN

1   MANATT, PHELPS & PHILLIPS, LLP
2   JOHN M. GATTI (State Bar No. 138492)
    E-mail: jgatti@manatt.com
3   LAUREN J. FRIED (State Bar No. 309005)
    E-mail: lfried@manatt.com
4   NICHOLAS FRONTERA (State Bar No. 307479)
    E-mail: nfrontera@manatt.com
5   2049 Century Park East, Suite 1700
    Los Angeles, California 90067
6   Tel.: (310) 312-4000; Fax: (310) 312-4224
7
    *Attorneys for Plaintiff*
8   TRACY CHAPMAN
9
10                  UNITED STATES DISTRICT COURT
11                  CENTRAL DISTRICT OF CALIFORNIA
12

| | |
|---|---|
| TRACY CHAPMAN, | No. 2:18-cv-09088-VAP |
| Plaintiff, | Honorable Virginia A. Phillips |
| vs. | **DECLARATION OF TRACY CHAPMAN IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| ONIKA TANYA MARAJ p/k/a NICKI MINAJ and DOES 1-10, | |
| Defendants. | Hearing Date: September 14, 2020 |
| | Hearing Time: 2:00 p.m. |
| | Final Pretrial Conf.: October 5, 2020 |
| | Trial Date: October 13, 2020 |

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

1     **DECLARATION OF TRACY CHAPMAN**

2     I, Tracy Chapman, hereby declare as follows:

3     1.     The following facts are within my personal knowledge, and if called

4 upon as a witness, I would and could testify competently thereto.

5     2.     I wrote the original composition "*Baby Can I Hold You*" (the

6 "Composition") in 1982 and obtained a copyright registration for the work (and

7 other musical compositions) – PAu000556755 – from the United States Copyright

8 Office on October 20, 1983.

9     3.     On October 15, 1986, I entered into a co-publishing agreement with

10 SBK April Music, Inc. ("SBK") pursuant to which I partially assigned the copyright

11 in the Composition to SBK. SBK subsequently obtained a copyright registration

12 for the Composition – PA0000417830 – on or about May 5, 1989, listing itself and

13 my publishing designee, Purple Rabbit Music as the copyright claimants in the

14 Composition.

15     4.     On May 15, 2016, SBK's rights in the Composition transferred back

16 to me pursuant to an agreement I had previously entered into with SBK on May 15,

17 2008. A true and correct copy of the May 15, 2008 Agreement is attached hereto as

18 **Exhibit 1**. Pursuant to that agreement, I became the sole owner of the copyright in

19 the Composition through my licensing designee Purple Rabbit Music.

20     5.     In July of 2018, my business manager Todd Gelfand at Gelfand

21 Rennert & Feldman, LLP ("Gelfand") informed me that a request had been made to

22 obtain a license to sample the Composition in a work by Onika Tanya Maraj ("Ms.

23 Maraj"). I instructed Gelfand to deny the request and a representative from Gelfand

24 did so on July 16, 2018. A true and correct copy of the July 16, 2018 email

25 denying the request that I instructed Gelfand to send is attached hereto as **Exhibit**

26 **2**.

27     6.     In late July of 2018, Gelfand informed me that Ms. Maraj's

28 representatives had made another request for my permission to sample the

1   Composition after my previous denial of Ms. Maraj's prior request.  I then

2   instructed my attorney Lee Phillips at Manatt, Phelps & Phillips, LLP to notify Ms.

3   Maraj's representatives again that the use was denied.  A true and correct copy of

4   the August 2, 2018 email confirming again that the request had been denied that I

5   instructed Mr. Phillips to send is attached hereto as **Exhibit 3**.

6        I declare under penalty of perjury under the laws of the United States of

7   America that the foregoing is true and correct.

8

9        Executed on August 17, 2020 in _____C_nliforni_____.

10

11   _____

12                    Tracy Chapman

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

2        DECLARATION OF TRACY CHAPMAN

008

# EXHIBIT 1

Attorney Work Product

## CO-ADMINISTRATION AGREEMENT

THIS AGREEMENT ("Agreement") made retroactively as of the 15th day of May, 2008 by and between TRACY CHAPMAN d/b/a PURPLE RABBIT MUSIC (hereinafter referred to as "Company") and EMI APRIL MUSIC, INC. (hereinafter referred to as "Publisher").

### *W I T N E S S E T H:*

WHEREAS, TRACY CHAPMAN ("Writer") is the writer of the musical compositions attached hereto as Schedule A, which comprise those certain musical compositions embodied on the Tracy Chapman albums entitled "Tracy Chapman", "Crossroads", "Matters of the Heart", and "New Beginning" (hereinafter collectively referred to as the "Compositions");

WHEREAS, in accordance with the terms of the agreement between Writer and Publisher dated May 15, 2000 (herein "Settlement Agreement") [Trade Secret], all administration rights in Writer's undivided fifty percent (50%) interest in the Compositions, including the interest attributable to Writer's "writer share", reverted to Company effective May 15, 2008;

WHEREAS, in accordance with the terms of the Settlement Agreement, as of the date hereof, the entire worldwide right, title and interest, including the copyrights, in and to the Compositions are owned in the percentages described below:

> Company: 50%
> Publisher: 50%

Notwithstanding the foregoing, however, Publisher's interest in the copyrights and all administration rights in the Compositions will terminate on May 15, 2016 when all of Publisher's interest in the copyrights and all administration rights in the Compositions will revert to Company in accordance with the terms of paragraph 5.01(c) of the Settlement Agreement. [Trade Secret]

WHEREAS, the division of songwriter royalties with respect to the Compositions is as follows:

> Writer: 100%

WHEREAS, the Compositions have heretofore been registered for copyright in the names of Company and Publisher in the Copyright Office of the United States of America;

WHEREAS, the parties hereto desire that each of them, during the term hereof, shall administer its respective interest in the Compositions upon all the terms and conditions contained herein;

1

CONFIDENTIAL



Trade Secret

2

SJD/G:/Chapman Co-Admin 2008/v.3

CONFIDENTIAL



Trade Secret

SJD/G:/Chapman Co-Admin 2008/v.3

3

CONFIDENTIAL



10.   The respective addresses of the parties hereto for all purposes of this agreement shall be as set forth below, until written notice of a new address shall be duly given:

PUBLISHER                                    COMPANY

Tracy Chapman d/b/a Purple Rabbit Music      EMI April Music Inc.
c/o Manatt, Phelps & Phillips                75 Ninth Avenue, 4th Floor
11355 West Olympic Boulevard                 New York, NY 10011
Los Angeles, CA  90064
Attn:  L. Lee Phillips, Esq.



4

SJD/G:/Chapman Co-Admin 2008/v.3

CONFIDENTIAL



Trade Secret

IN WITNESS WHEREOF, the parties have executed this Agreement the day and year above set forth.

TRACY CHAPMAN d/b/a PURPLE RABBIT MUSIC

By:_____
       An Authorized Signatory

EMI APRIL MUSIC INC.

By:_____
       An Authorized Signatory

5

SJD/G:/Chapman Co-Admin 2008/v.3

CONFIDENTIAL

TC00058014

## SCHEDULE A

to the Agreement dated as of May 15, 2008 by and between TRACY CHAPMAN d/b/a PURPLE RABBIT MUSIC and EMI APRIL MUSIC, INC.

| Title | Compositions Writer(s)/Share | Publisher(s)/Share (Prior to assignment to EMI) |
|---|---|---|

6

SJD/G:/Chapman Co-Admin 2008/v.3

CONFIDENTIAL

RC020P

SCHEDULE "A"                                    PAGE :   1

012436 - TRACY CHAPMAN - "TRACY CHAPMAN" 1ST LP

| CODE | SONG TITLE | WTR. % | WRITER/PUBLISHER | MECHANICALS/ OTHER NON-PERF % OWN   % COL. | PERFORMANCE % OWN   % COL. | ADMIN BY |
|------|-----------|--------|------------------|-------------|-------------|----------|

**Trade Secret**

| 037546 | BABY CAN I HOLD YOU | 100.000 | CHAPMAN, TRACY L | PURPLE RABBIT MUSIC | | | | |
| | | | EMI APRIL MUSIC INC. | | 50.000 | 25.000 | 50.000 | 50.000 APRIL |
| | | | PURPLE RABBIT MUSIC | | 50.000 | 75.000 | 50.000 | 50.000 ITSELF |
| | AKA - CI SONO PAROLE | | | | | | | |

**Trade Secret**

RC020P                                SCHEDULE "A"                          PAGE :    2

              012436 - TRACY CHAPMAN - "TRACY CHAPMAN" 1ST LP

CODE   SONG TITLE                          WTR.        WRITER/PUBLISHER           MECHANICALS/      PERFORMANCE
                                           %                                     OTHER NON-PERF
                                                                                 % OWN   % COL     % OWN   % COL   ADMIN BY



Trade Secret

CONFIDENTIAL

RC020P

SCHEDULE "A"

PAGE :   1

006565 - TRACY CHAPMAN/"NEW BEGINNING" LP

| CODE | SONG TITLE | WTR. % | WRITER/PUBLISHER | MECHANICALS/ OTHER NON-PERF % OWN | % COL. | PERFORMANCE % OWN | % COL. ADMIN BY |
|------|-----------|--------|------------------|-----|------|-----|------|

Trade Secret

CONFIDENTIAL

RC020P                          SCHEDULE "A"                          PAGE :    2

                        006565 - TRACY CHAPMAN/"NEW BEGINNING" LP

                                WTR.                                    MECHANICALS/    PERFORMANCE
CODE   SONG TITLE                %     WRITER/PUBLISHER                  OTHER NON-PERF
                                                                        % OWN  % COL.  % OWN  % COL. ADMIN BY



Trade Secret

CONFIDENTIAL

RC020P

SCHEDULE "A"

PAGE :   1

002660 - TRACY CHAPMAN -"MATTERS OF THE HEART" LP

| CODE | SONG TITLE | WTR. % | WRITER/PUBLISHER | MECHANICALS/ OTHER NON-PERF % OWN   % COL. | PERFORMANCE % OWN   % COL. ADMIN BY |
|------|------------|--------|------------------|-------------------------------------------|-------------------------------------|

Trade Secret

CONFIDENTIAL

RC020P                          SCHEDULE "A"                                PAGE :    2

                        002660 - TRACY CHAPMAN -"MATTERS OF THE HEART" LP

CODE   SONG TITLE                        WTR.                              MECHANICALS/     PERFORMANCE
                                          %      WRITER/PUBLISHER          OTHER NON-PERF
                                                                          % OWN   % COL.   % OWN   % COL. ADMIN BY



CONFIDENTIAL

RC020P

SCHEDULE "A"

PAGE :   1

003686 - TRACY CHAPMAN/"CROSSROADS" LP

| CODE | SONG TITLE | WTR. % | WRITER/PUBLISHER | MECHANICALS/ OTHER NON-PERF % OWN   % COL. | PERFORMANCE % OWN   % COL. | ADMIN BY |
|------|-----------|--------|------------------|-----|-----|----------|

Trade Secret

CONFIDENTIAL

RC020P                                SCHEDULE "A"                        PAGE :   2
                                003686 - TRACY CHAPMAN/"CROSSROADS" LP

                                        WTR.                              MECHANICALS/    PERFORMANCE
CODE   SONG TITLE                        %     WRITER/PUBLISHER           OTHER NON-PERF
                                                                         % OWN   % COL.   % OWN   % COL. ADMIN BY



CONFIDENTIAL

**EXHIBIT 2**



**From:** Deborah Mannis-Gardner <deborah@dmgclearances.com>
**Sent:** Monday, July 16, 2018 3:33 PM
**To:** Lauren Brockie
**Cc:** Rachel Maloney; Joshua Berkman
**Subject:** Re: FW: Tracy Chapman -Sorry

Thanks Lauren. I have my client on copy for visibility

best

Deborah

On Mon, Jul 16, 2018 at 3:24 PM, Lauren Brockie <lbrockie@grfllp.com> wrote:

Hi Deborah,

Thank you for the interest in this sample request. Unfortunately, the request has not been approved.

Kind regards,

Lauren

 **Lauren Brockie**

Senior Music Publishing Administrator

*Gelfand, Rennert & Feldman, LLC*

*1880 Century Park East, #1600*

*Los Angeles, CA 90067*

*lbrockie@grfllp.com*

*310-282-5961 (Direct Line)*

*310-229-0161 (Direct Fax)*

**From:** Deborah Mannis-Gardner <deborah@dmgclearances.com>
**Sent:** Tuesday, July 10, 2018 10:57 AM
**To:** Lauren Brockie <lbrockie@grfllp.com>

1

025

**Cc:** Rachel Maloney <rmaloney@grfllp.com>
**Subject:** Re: FW: Tracy Chapman -Sorry

Hi Lauren

Attached please find my formal letter of request along with my client on copy to arrange the listening of the music

Many thanks

Deborah

On Wed, Jun 27, 2018 at 2:05 PM, Lauren Brockie <lbrockie@grfllp.com> wrote:

Hi Deborah!

I handle the day to day on behalf of Purple Rabbit Music.

Do you mean the song, "Baby Can I Hold You"?

Can you also please provide more information or send over an official request?

Thanks!

Lauren

**Lauren Brockie**

Senior Music Publishing Administrator

*Gelfand, Rennert & Feldman, LLC*

*1880 Century Park East, #1600*

*Los Angeles, CA  90067*

2

026

*lbrockie@grfllp.com*

*310-282-5961 (Direct Line)*

*310-229-0161 (Direct Fax)*


**Rachel Maloney**

Manager, Music Publishing

*Gelfand, Rennert & Feldman, LLC*

*1880 Century Park East, #1600*

*Los Angeles, CA 90067*

*rmaloney@grfllp.com*

*310-556-6630 (Direct Line)*

*310-407-0630 (Direct Fax)*

**From:** Deborah Mannis-Gardner <deborah@dmgclearances.com>
**Sent:** Tuesday, June 26, 2018 1:38 PM
**To:** Rachel Maloney <rmaloney@grfllp.com>
**Subject:** Tracy Chapman -Sorry

Hi Rachel

When your client Tracy Chapman was with Sony/ATV her material was always denied

Is she still on the do not sample or interpolate list? I have an A LIST artist who wants to use the song Sorry

URGENT - please advise

027

Many thanks

Deborah

CONFIDENTIALITY: This e-mail and any attachments are confidential and also may be privileged. If you are not the named recipient, or have otherwise received this communication in error, please delete it from your inbox, notify the sender immediately, and do not disclose its contents to any other person, use them for any purpose, or store or copy them in any medium. Thank you for your cooperation.

--

## Deborah Mannis-Gardner

**DMG Clearances, Inc.**

**7209 Lancaster Pike, Suite 4-330**

**Hockessin, DE 19707**

**302.239.6337 x1 voice**

**302.239.6875 fax**

## deborah@dmgclearances.com

Visit our website at www.dmgclearances.com

Visit our partner company www.tracklib.com

http://www.imdb.com/name/nm0543434/

http://www.allmusic.com/artist/deborah-mannis-gardner-mn0001801015

4

028



The information contained in this e-mail, including any attachments, is confidential and may contain privileged information or work product.  If you have received this e-mail in error, please advise the sender immediately by reply e-mail, destroy all hard copies of the original message and any attachments thereto and delete same from your system. The unauthorized use, distribution, copying, or alteration of this e-mail is prohibited.  Because e-mail can be altered

electronically, the integrity in this communication cannot be guaranteed.

--

**Deborah Mannis-Gardner**
**DMG Clearances, Inc.**
**7209 Lancaster Pike, Suite 4-330**
**Hockessin, DE 19707**
**302.239.6337 x1 voice**
**302.239.6875 fax**
**deborah@dmgclearances.com**
**Visit our website at www.dmgclearances.com**
**Visit our partner company www.tracklib.com**
http://www.imdb.com/name/nm0543434/
http://www.allmusic.com/artist/deborah-mannis-gardner-mn0001801015



The information contained in this e-mail, including any attachments, is confidential and may contain privileged information or work product.  If you have received this e-mail in error, please advise the sender immediately by reply e-mail, destroy all hard copies of the original message and any attachments thereto and delete same from your system. The unauthorized use, distribution, copying, or alteration of this e-mail is prohibited.  Because e-mail can be altered electronically, the

integrity in this communication cannot be guaranteed.

029

# EXHIBIT 3

Message

| | |
|---|---|
| **From:** | Crawshaw-Sparks, Sandra A. [/O=PROSKAUER/OU=FIRST ADMINISTRATIVE GROUP/CN=RECIPIENTS/CN=SCRAWSHAW29776577] |
| **Sent:** | 11/18/2019 7:10:16 PM |
| **To:** | Weil, Simona [/o=Proskauer/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=Weil, Simona97c] |
| **Subject:** | Fwd: Tracy Chapman |

Sent from my T-Mobile 4G LTE Device

-------- Original message --------
From: G Roberson <geemaverick@gmail.com>
Date: 11/18/19 5:54 PM (GMT-05:00)
To: "Crawshaw-Sparks, Sandra A." <SCrawshaw@proskauer.com>
Subject: Fwd: Tracy Chapman

Begin forwarded message:

> **From:** "Phillips, Lee" <lphillips@manatt.com>
> **Date:** August 2, 2018 at 9:39:52 PM GMT+2
> **To:** "geemaverick@gmail.com" <geemaverick@gmail.com>
> **Cc:** "tgelfand@grfllp.com" <tgelfand@grfllp.com>
> **Subject: Tracy Chapman**

Ms (Mr) Roberson.  I am the attorney for Tracy Chapman and your e mail below was forwarded to me as Mr Gelfand is not available.  As matter of courtesy, Ms Chapman asked me to respond to your e mail.  I assume you are aware of the previous denial by our client of the sample request made by your client for a license to include "Baby Can I Hold You" in a recording by Nicki Minaj.  I have spoken to Ms Chapman and while she appreciates the positive feelings of your client, you should know that she carefully protects her copyrights and in the normal course of business does not approve these kinds of requests.  We hope that with this confirmation, your client will move on with the project without the requested sample.  Thank you and your client for  understasnding.

From: G Roberson <geemaverick@gmail.com<mailto:geemaverick@gmail.com>>
Date: Friday, Jul 27, 2018, 3:27 PM
To: Todd Gelfand <TGELFAND@grfllp.com<mailto:TGELFAND@grfllp.com>>
Subject: Nicki Minaj

Hello Todd. This is Gee Roberson (Nicki Minaj manager). I was reaching out because Nicki

Exhibit146
G. Roberson
February 25, 2020
Rptr: D. Paholski

Blueprint000004

would like to touchbase with Tracy Chapman. She has been personally inspired throughout her life by Tracy as an artist and a deep appreciation for her work. Nicki as you may know is a very private person that has keep details on her private life separate from her work life. She has created an idea that is one of the most personal for her that was inspired by Tracy's art  that she would like the opportunity to touchbase with Tracy about.  Please let me know if you can connect them together. Thanks and blessings.

CONFIDENTIALITY: This e-mail and any attachments are confidential and also may be privileged.

**Lee Phillips**
Partner

**Manatt, Phelps & Phillips, LLP**
11355 W. Olympic Blvd
Los Angeles, CA  90064
**D** (310) 312-4111  **F** (310) 914-5850

lphillips@manatt.com
**manatt.com**

CONFIDENTIALITY NOTICE: This e-mail transmission, and any documents, files or previous e-mail messages attached to it, may contain confidential information that is legally privileged. If you are not the intended recipient, or a person responsible for delivering it to the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of any of the information contained in or attached to this message is STRICTLY PROHIBITED. If you have received this transmission in error, please immediately notify us by reply email and destroy the original transmission and its attachments without reading them or saving them to disk. Thank you.

# DECLARATION OF NICHOLAS FRONTERA

1   MANATT, PHELPS & PHILLIPS, LLP
    JOHN M. GATTI (State Bar No. 138492)
2   E-mail: jgatti@manatt.com
    LAUREN J. FRIED (State Bar No. 309005)
3   E-mail: lfried@manatt.com
    NICHOLAS FRONTERA (State Bar No. 307479)
4   E-mail: nfrontera@manatt.com
    2049 Century Park East, Suite 1700
5   Los Angeles, California 90067
    Tel.:  (310) 312-4000; Fax:  (310) 312-4224
6
7
    *Attorneys for Plaintiff*
8   TRACY CHAPMAN

9

10              UNITED STATES DISTRICT COURT

11           CENTRAL DISTRICT OF CALIFORNIA

12

| 13  TRACY CHAPMAN, | No. 2:18-cv-09088-VAP |
|---|---|
| 14            Plaintiff, | Honorable Virginia A. Phillips |
| 15        vs. | **DECLARATION OF NICHOLAS FRONTERA IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| 16  ONIKA TANYA MARAJ p/k/a NICKI MINAJ and DOES 1-10, | |
| 17 | |
| 18            Defendants. | |
| 19 | Hearing Date:      September 14, 2020 |
| 20 | Hearing Time:      2:00 p.m. |
| 21 | Final Pretrial Conf.:   October 5, 2020 |
| 22 | Trial Date:           October 13, 2020 |

23

24

25

26

27

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

326696400.5

DECLARATION OF NICHOLAS FRONTERA IN
SUPPORT OF MOTION FOR SUMM. JDG.

034

## **DECLARATION OF NICHOLAS FRONTERA**

I, Nicholas Frontera, declare as follows:

1.      I am an attorney at law, duly authorized and licensed to practice before all of the courts of the state of California, and before this Court, and I am an associate of Manatt, Phelps & Phillips, LLP, attorneys for Plaintiff Tracy Chapman ("Plaintiff").  I have personal knowledge of the facts set forth in this declaration, and, if called as a witness, I could testify competently thereto.

2.      Pursuant to Local Rule 7-3, I met and conferred with counsel for Defendant Onika Tanya Maraj p/k/a Nicki Minaj ("Defendant") on July 29, 2020.  Due to the global pandemic, we were unable to meet in-person, but did meet and confer telephonically.  During the conference, we thoroughly discussed the substance of the arguments set forth in Plaintiff's Motion for Partial Summary Judgment, as well as potential resolution of the disagreements, in an attempt to eliminate the need for this Motion.  However, the parties were unable to reach an agreement obviating the necessity for this Motion.

3.      A true and correct copy of the June 26-July 16, 2018 email chain between Deborah Mannis-Gardner, Joshua Berkman and representatives at Gelfand Rennert and Feldman, LLP titled "Re: Tracy Chapman – Sorry" produced by Joshua Berkman in this Action in response to Plaintiff's subpoena directed to Joshua Berkman is attached to the Declaration of Tracy Chapman in Support of Plaintiff's Motion to Dismiss as **Exhibit 2**.

4.      A true and correct copy of the July 27-August 2, 2018 email chain between Gee Roberson and Lee Phillips titled "Tracy Chapman" that was produced by the Blueprint Group in this Action in response to Plaintiff's subpoena directed to Blueprint Group is attached to the Declaration of Tracy Chapman in Support of Plaintiff's Motion to Dismiss as **Exhibit 3**.

5.      Attached hereto as **Exhibit 4**, is a true and correct copy of a printout of the Public Catalog listing for the October 20, 1983 Copyright Registration -

Manatt, Phelps & Phillips, LLP
Attorneys At Law
Los Angeles

1

DECLARATION OF NICHOLAS FRONTERA IN SUPPORT OF MOTION FOR SUMM. JDG.

326696400.5

035

1  PAu000556755 for "Anthology of songs by Tracy Chapman, II" that includes

2  Plaintiff's original work entitled "Baby Can I Hold You" that was obtained by my

3  office from the United States Copyright Office's Official Website at:

4  https://cocatalog.loc.gov/cgi-

5  bin/Pwebrecon.cgi?v1=2&ti=1,2&Search%5FArg=anthology%20of%20songs%20

6  by%20tracy%20chapman&Search%5FCode=TALL&CNT=25&PID=_ypEH2ER9

7  xBwIMXH4Pc5yWWR5DjMX&SEQ=20200815170909&SID=2.

8      6.      Attached hereto as **Exhibit 5**, is a true and correct copy of a printout of

9  the Public Catalog listing for the May 5, 1989 Copyright Registration -

10  PA0000417830 - for "Baby, Can I Hold You?" that was obtained by my office

11  from the United States Copyright Office's Official Website at

12  https://cocatalog.loc.gov/cgi-

13  bin/Pwebrecon.cgi?v1=2&ti=1,2&Search%5FArg=baby%20can%20i%20hold%20

14  you&Search%5FCode=TALL&CNT=25&PID=skSrYMDbh-

15  juoYjFln6Y3mmU7gUUo&SEQ=20200815171222&SID=3.

16      7.      Attached hereto as **Exhibit 6,** is a true and correct copy of Excerpts of

17  the Transcript of the Deposition of Onika Tanya Maraj taken on September 23,

18  2019 in this Action.

19      8.      Attached hereto as **Exhibit 7**, is a true and correct copy of Defendant

20  Onika Tanya Maraj's Answer to Plaintiff Tracy Chapman's Complaint, Dkt. No.

21  14, filed in this Action on February 22, 2019.

22      9.      Attached hereto as **Exhibit 8**, is a true and correct copy of Defendant

23  Onika Tanya Maraj's Supplemental Responses to Tracy Chapman's First Set of

24  Requests for Admission served in this Action on September 3, 2019.

25      10.      Attached hereto as **Exhibit 9**, is a true and correct copy of a

26  Comparison Chart of the lyrics of Ms. Chapman's song "Baby Can I Hold You" to

27  those of "Sorry" by Ms. Maraj that was filed as Exhibit 1 to the Complaint of Tracy

28  Chapman filed this Action on October 22, 2018 (Dkt. 1). This chart was prepared

Manatt, Phelps & Phillips, LLP
Attorneys At Law
Los Angeles

2

DECLARATION OF NICHOLAS FRONTERA IN SUPPORT OF MOTION FOR SUMM. JDG.

326696400.5

036

by my office to evidence how Ms. Maraj used Ms. Chapman's copyrighted work in "Sorry".

11.    Attached hereto as **Exhibit 10**, is a true and correct copy of the May 23-24, 2018 email chain between Joshua Berkman and Deborah Mannis-Gardner titled "Re: New Nicki Minaj Interpolation" produced by Joshua Berkman in this Action in response to Plaintiff's subpoena directed to Joshua Berkman.

12.    Attached hereto as **Exhibit 11**, is a true and correct copy of Excerpts of the Transcript of the Deposition of Deborah Mannis-Gardner taken on January 28, 2020 in this Action.

13.    Attached hereto as **Exhibit 12**, is a true and correct copy of the June 26, 2018 email chain between Joshua Berkman and Deborah Mannis-Gardner titled "Re: Nicki Minaj interpolation of Shelly Thunder 'Sorry'" produced by Joshua Berkman in this Action in response to Plaintiff's subpoena directed to Joshua Berkman.

14.    Attached hereto as **Exhibit 13**, is a true and correct copy of the July 10, 2018 Official Request from DMG Clearances, Inc. entitled "RE: Nicki Minaj "D" contains interpolations from 'Sorry (Baby can I Hold You)" written by Tracy Chapman  and published by Purple Rabbit Music ASCAP)" produced by Deborah Mannis-Gardner in this Action in response to Plaintiff's subpoena directed to Deborah Mannis-Gardner.

15.    Attached hereto as **Exhibit 14**, is a true and correct copy of the July 18, 2018 email chain between Joshua Berkman and Deborah Mannis-Gardner titled "Re: Tracy Chapman" produced by Joshua Berkman in this Action in response to Plaintiff's subpoena directed to Joshua Berkman.

16.    Attached hereto as **Exhibit 15**, is a true and correct copy of the August 3 - August 11, 2018 Instagram direct messages between Defendant Onika Tanya Maraj and Aston George Taylor produced by Aston George Taylor in this Action in response to Plaintiff's subpoena directed to Aston George Taylor.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

326696400.5

3

DECLARATION OF NICHOLAS FRONTERA IN
SUPPORT OF MOTION FOR SUMM. JDG.

037

17. Attached hereto as **Exhibit 16**, is a true and correct copy of Excerpts of the Transcript of the deposition of Aston George Taylor taken on February 11, 2020.

18. Attached hereto as **Exhibit 17**, is a true and correct copy of the August 3 - August 7, 2018 text messages between Onika Tanya Maraj and Nas produced in this Action in response to Plaintiff's Requests for Production of Documents – Set 1.

19. Attached hereto as **Exhibit 18**, is a true and correct copy of the August 10 - August 13, 2018 email chain between David Castro and Aubry Delaine titled "Nicki Minaj - Sorry - Chris Athens Masters" produced in this Action in response to Plaintiff's Requests for Production of Documents – Set 1.

20. Attached hereto as **Exhibit 19**, is a true and correct copy of the Excerpts of the Transcript of the deposition of Aubry Delaine taken on July 27, 2020.

21. Attached hereto as **Exhibit 20**, is a true and correct copy of the August 11, 2018, 1:55 PM Twitter post by Aston George Taylor produced by Aston George Taylor in this Action in response to Plaintiff's subpoena directed to Aston George Taylor.

22. Attached hereto as **Exhibit 21**, is a true and correct copy of the August 11, 2018, 2:34 PM Twitter post by Aston George Taylor produced by Aston George Taylor in this Action in response to Plaintiff's subpoena directed to Aston George Taylor.

23. Attached hereto as **Exhibit 22**, is a true and correct copy of the August 11, 2018 email chain from Aston Taylor to DJ Heavy Rotation titled "Re: 01 Sorry - 72518 - master.mp3" produced by Aston George Taylor in this Action in response to Plaintiff's subpoena directed to Aston George Taylor.

24. Attached hereto as **Exhibit 23**, is a true and correct copy of a printout of the August 11, 2018 post on the Hot 97 Website titled "Funk Flex drops an exclusive Nicki Minaj track with Nas" produced by Emmis Communication

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

4

DECLARATION OF NICHOLAS FRONTERA IN SUPPORT OF MOTION FOR SUMM. JDG.

326696400.5

038

Corporation in this Action in response to Plaintiff's subpoena directed to Emmis Communication Corporation.

25. Attached hereto as **Exhibit 24**, is a true and correct copy of the August 11, 2018 Hot 97 FM Instagram post Re: "Funk Flex Mix premier of Nicki Minaj and Nas" produced by Emmis Communication Corporation in this Action in response to Plaintiff's subpoena directed to Emmis Communication Corporation.

26. Attached hereto as **Exhibit 25**, is a true and correct copy of the August 8 – August 11, 2018 email chain between Gee Roberson, Lee Phillips and Peter Bittenbender produced by the Blueprint Group in this Action in response to Plaintiff's subpoena directed to the Blueprint Group.

27. Attached hereto as **Exhibit 26**, is a true and correct copy of the October 20, 1983 Copyright Registration - PAu000556755 for "Anthology of songs by Tracy Chapman, II" with the United States Copyright Office that includes Plaintiff's original work entitled "Baby Can I Hold You".

28. Attached hereto as **Exhibit 27**, is a true and correct copy of the August 10, 2018 email from David Castro to Chris Athens entitled "Nicki Minaj – 'Sorry' - song from Serban" produced by Chris Athens Masters, Inc. in this Action in response to Plaintiff's subpoena directed to Chris Athens Masters, Inc.

29. After the Infringing Work was released on the radio, numerous copies were posted on the Internet. As a result, Ms. Chapman was forced to incur significant expenses monitoring these improper postings and issuing DMCA takedown notices. Copies of the Infringing Work remain on the Internet.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on August 17, 2020 at Los Angeles, California.

/s/ Nicholas Frontera
Nicholas Frontera

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

5

DECLARATION OF NICHOLAS FRONTERA IN SUPPORT OF MOTION FOR SUMM. JDG.

326696400.5

039

# EXHIBIT 4

4/15/2019 WebVoyage Record View 1



The Library's catalogs are currently affected by performance issues. Staff are investigating the problem. We apologize for any inconvenience to our users.

Help    Search    History    Titles    Start Over

## Public Catalog

Copyright Catalog (1978 to present)
Search Request: Left Anchored Copyright Number = PAu000556755
Search Results: Displaying 1 of 1 entries



Labeled View

*Anthology of songs by Tracy Chapman, II.*

**Type of Work:** Music
**Registration Number / Date:** PAu000556755 / 1983-10-20
**Title:** Anthology of songs by Tracy Chapman, II.
**Description:** 1 sound cassette.
**Copyright Claimant:** Tracy Chapman
**Date of Creation:** 1983
**Authorship on Application:** words & music: Tracy Lenett Chapman.
**Names:** Chapman, Tracy Lenett, 1964-



| Save, Print and Email (Help Page) |
| Select Download Format  Full Record ▼   Format for Print/Save |
| Enter your email address:                              Email |

Help   Search   History   Titles   Start Over

Contact Us  |  Request Copies  |  Get a Search Estimate  |  Frequently Asked Questions (FAQs) about Copyright  |  Copyright Office Home Page  |  Library of Congress Home Page

TC00047
041

# EXHIBIT 5

4/15/2019                                    WebVoyage Record View 1



The Library's catalogs are currently affected by performance issues. Staff are investigating the problem. We apologize for any inconvenience to our users.

Help | Search | History | Titles | Start Over

## Public Catalog

Copyright Catalog (1978 to present)
Search Request: Left Anchored Copyright Number = PA0000417830
Search Results: Displaying 1 of 1 entries



Labeled View

*Baby, can I hold you?*

**Type of Work:** Music
**Registration Number / Date:** PA0000417830 / 1989-05-05
**Title:** Baby, can I hold you?
**Appears in:** Tracy Chapman. Elektra 60774-1, c1988. 1 sound disc : 33 1/3 rpm, stereo. ; 12 in. side 1, band 5
**Publisher Number:** Elektra 60774-1
**Performer:** Performed by Tracy Chapman.
**Copyright Claimant:** S B K April Music, Inc., Purple Rabbit Music
**Date of Creation:** 1983
**Date of Publication:** 1988-03-01
**Date in Notice:** notice on lyrics: 1983
**Authorship on Application:** words & music: Tracy Chapman.
**Previous Registration:** Prev. reg. 1983, PAu 556-755.
**Names:** Chapman, Tracy
SBK April Music, Inc.
Purple Rabbit Music



| Save, Print and Email (Help Page) | | |
|---|---|---|
| Select Download Format | Full Record ▾ | Format for Print/Save |
| Enter your email address: | | Email |

Help   Search   History   Titles   Start Over

Contact Us | Request Copies | Get a Search Estimate | Frequently Asked Questions (FAQs) about Copyright | Copyright Office Home Page | Library of Congress Home Page

TC00048
043

# EXHIBIT 6

CERTIFIED COPY

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| TRACY CHAPMAN, | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| vs. | ) | CASE NO. 2:18-CV-09088-VAP-SS |
| | ) | |
| ONIKA TANYA MARAJ P/K/A | ) | |
| NICKI MINAJ AND DOES 1-10, | ) | |
| | ) | |
| DEFENDANTS. | ) | |
| | ) | |

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**

**VIDEOTAPED DEPOSITION OF ONIKA TANYA MARAJ**

**Taken on September 23, 2019**



**Court Reporting • Video • Trial Presentation**

LA 310.230.9700 • SF 415.445.0105

els@elitigationservices.com • www.elitigationservices.com

045

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
Onika Tanya Maraj

Page 9

1   Maura Gierl, for the plaintiff.                      10:27:01

2            MR. ROSS:  Pete Ross, for Onika Maraj.      10:27:04

3            MR. LAURITSEN:  Eric Lauritsen, for Onika   10:27:08

4   Maraj.                                               10:27:10

5            MS. LaPOLT:  Dina LaPolt, for Onika Maraj.  10:27:12

6            MS. PRICE:  Danielle Price, for Onika       10:27:16

7   Maraj.                                               10:27:16

8            MR. BRUCE:  Tommy Bruce, for Onika Maraj.   10:27:17

9            THE VIDEO OPERATOR:  Thank you.  The court  10:27:22

10  reporter today is Lori Byrd with eLitigation         10:27:23

11  Services, Inc.                                       10:27:25

12           Will the reporter please swear in the       10:27:26

13  witness and we can begin.                            10:27:26

14  ----------------------------------------             10:27:26

15       ONIKA TANYA MARAJ, p/k/a NICKI MINAJ,           10:27:26

16           called as a witness in this case,           10:27:26

17            having been first duly sworn               10:27:26

18         upon her oath, testified as follows:          10:27:26

19                    EXAMINATION                        10:27:26

20  BY MR. JACOBS:                                       10:27:39

21       Q.   Good morning, Ms. Maraj.                   10:27:39

22       A.   Good morning.                              10:27:42

23       Q.   Can you please state your full name for the  10:27:42

24  record.                                              10:27:44

25       A.   Onika Tanya Maraj.                         10:27:45

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
Onika Tanya Maraj

|   |   |   |   | Page 22 |
|---|---|---|---|---|
| 1 | | song getting done. | | 10:42:57 |
| 2 | Q. | Anything else? | | 10:43:00 |
| 3 | A. | No. | | 10:43:02 |
| 4 | Q. | Did you look for any communications you had | | 10:43:20 |
| 5 | | with a disc jockey named "Flex"? | | 10:43:24 |
| 6 | A. | Yes. | | 10:43:31 |
| 7 | Q. | And did you have any? | | 10:43:32 |
| 8 | A. | No. | | 10:43:37 |
| 9 | Q. | Who is Flex? | | 10:43:43 |
| 10 | A. | A DJ. | | 10:43:46 |
| 11 | Q. | Do you know his full name? | | 10:43:47 |
| 12 | A. | No. | | 10:43:49 |
| 13 | Q. | Where is he a DJ? | | 10:43:50 |
| 14 | A. | In New York. | | 10:43:51 |
| 15 | Q. | Do you know what radio station? | | 10:43:54 |
| 16 | A. | Hot 97. | | 10:43:58 |
| 17 | | (REPORTER REQUESTED CLARIFICATION) | | 10:44:00 |
| 18 | | THE WITNESS:  Hot 97. | | 10:44:01 |
| 19 | BY MR. JACOBS: | | | 10:44:02 |
| 20 | Q. | How long have you known him for? | | 10:44:03 |
| 21 | A. | I think about, maybe over 10 years. | | 10:44:04 |
| 22 | Q. | Have you ever texted with Flex? | | 10:44:27 |
| 23 | A. | Yes. | | 10:44:28 |
| 24 | Q. | When was the last time you texted him? | | 10:44:29 |
| 25 | A. | About a day or two ago. | | 10:44:31 |

eLitigation Services, Inc. - els@els-team.com

047

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
Onika Tanya Maraj

Page 24

| | | |
|---|---|---|
| 1 | spoke about the case on the phone, but we spoke | 10:45:46 |
| 2 | about the case on social media prior to that. | 10:45:49 |
| 3 | Q.   When was that? | 10:45:52 |
| 4 | A.   I don't remember the date. | 10:45:53 |
| 5 | Q.   Do you recall generally what the discussion | 10:45:56 |
| 6 | was over social media you referenced? | 10:45:58 |
| 7 | A.   Yes.  It was about him saying that he was | 10:46:02 |
| 8 | about to play a song that was, like, a -- an | 10:46:04 |
| 9 | exclusive song.  And I -- that was on Twitter. | 10:46:09 |
| 10 | And I went on Instagram and said:  Only | 10:46:14 |
| 11 | play the songs that are official album cuts from my | 10:46:17 |
| 12 | album, because my album had just come out.  And that | 10:46:20 |
| 13 | was it. | 10:46:25 |
| 14 | Q.   Did you have any other communication with | 10:46:27 |
| 15 | him around that same time in any other way? | 10:46:28 |
| 16 | A.   Not that I can recall. | 10:46:34 |
| 17 | Q.   You don't remember being on the phone with | 10:46:37 |
| 18 | him around that time? | 10:46:39 |
| 19 | A.   No. | 10:46:42 |
| 20 | Q.   And you don't remember exchanging any text | 10:46:42 |
| 21 | messages -- text messages with him around that time? | 10:46:45 |
| 22 | A.   No. | 10:46:48 |
| 23 | Q.   Do you recall being on the phone with him | 10:46:51 |
| 24 | between that time and the time you just reached out | 10:46:54 |
| 25 | to him regarding this document you referenced? | 10:46:56 |

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
Onika Tanya Maraj

Page 28

| | | |
|---|---|---|
| 1 | will send someone to hear all of your music to see | 10:52:43 |
| 2 | if there's anything that should -- you know, that | 10:52:47 |
| 3 | there's something that maybe there's a sample in the | 10:52:51 |
| 4 | music that you didn't know about or something like | 10:52:53 |
| 5 | that. | 10:52:55 |
| 6 | So they'll send someone to your recording | 10:52:56 |
| 7 | studio, in this case, that will listen to the music. | 10:52:59 |
| 8 | And I forgot the name of the person's | 10:53:05 |
| 9 | occupation. But it's -- deals with ... I think | 10:53:07 |
| 10 | there's a person that I deal with, his name is | 10:53:17 |
| 11 | Joshua Berkman. He is the person that we usually | 10:53:19 |
| 12 | use as the middle man, because he's like the A&R for | 10:53:24 |
| 13 | my projects in the past. And he usually goes about | 10:53:29 |
| 14 | finding the person hiring -- I think it's a | 10:53:35 |
| 15 | musicologist. | 10:53:38 |
| 16 | Q.   Does Joshua Berkman work for your record | 10:53:46 |
| 17 | label? | 10:53:49 |
| 18 | A.   Yes. | 10:53:50 |
| 19 | Q.   And what's the label? | 10:53:50 |
| 20 | A.   Republic Records. | 10:53:52 |
| 21 | Q.   Are you in direct communication -- | 10:54:17 |
| 22 | withdrawn. | 10:54:19 |
| 23 | Do you talk to Josh about -- Joshua Berkman | 10:54:20 |
| 24 | about his efforts to clear songs for you? | 10:54:23 |
| 25 | A.   Yes. | 10:54:27 |

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
Onika Tanya Maraj

Page 37

| | | |
|---|---|---|
| 1 | Q.   Before you got to his studio, did you have | 11:05:36 |
| 2 | an understanding that -- that there was an interest | 11:05:39 |
| 3 | in doing a version of the Tracy Chapman composition? | 11:05:44 |
| 4 | A.   No. | 11:05:50 |
| 5 | Q.   So what happened next after you went back | 11:05:57 |
| 6 | to L.A., in relation to your recording vocals for | 11:05:59 |
| 7 | the song? | 11:06:04 |
| 8 | A.   I recorded -- oh. | 11:06:07 |
| 9 |       I pulled up the Shelly Thunder song.  I | 11:06:11 |
| 10 | pulled that up to hear it on YouTube.  And I then | 11:06:14 |
| 11 | recorded it in my studio, singing the hook -- | 11:06:23 |
| 12 | singing the chorus of the song. | 11:06:29 |
| 13 | Q.   When you say your studio, which studio is | 11:06:31 |
| 14 | that? | 11:06:34 |
| 15 | A.   Glenwood. | 11:06:35 |
| 16 | Q.   And where is that located? | 11:06:36 |
| 17 | A.   I believe it's in Glenwood, California. | 11:06:37 |
| 18 | Q.   When you went to look at the Shelly Thunder | 11:06:45 |
| 19 | video, did you notice any references to Tracy | 11:06:47 |
| 20 | Chapman? | 11:06:50 |
| 21 | A.   Not one. | 11:06:52 |
| 22 | Q.   Do you recall when you recorded the vocals | 11:07:01 |
| 23 | for your song "Sorry"? | 11:07:05 |
| 24 | A.   I don't recall what month that was. | 11:07:09 |
| 25 | Q.   It was in 2018, though? | 11:07:12 |

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
Onika Tanya Maraj

Page 38

1      A.   Actually, if my album came out in 2018, I      11:07:20

2   believe I recorded the song in 2017.  Because it was   11:07:25

3   not originally for my album, it was for his album.     11:07:31

4        So I think that it was a lot sooner than          11:07:36

5   when my album came out that I actually cut those       11:07:39

6   vocals.                                                11:07:42

7      Q.   Did the song go out on Nas's album?            11:07:47

8      A.   No.                                            11:07:50

9      Q.   Do you know why not?                           11:07:51

10     A.   I don't know.  I don't know.                   11:07:55

11     Q.   Did you ever have a conversation with          11:08:07

12   anybody about releasing your song "Sorry" on the      11:08:09

13   album "Queen"?                                         11:08:15

14     A.   Did I have a conversation with anyone?         11:08:17

15     Q.   Yes.                                           11:08:19

16     A.   Yes.                                           11:08:20

17     Q.   Who did you discuss that with?                 11:08:20

18     A.   Everyone that I think I would have come in     11:08:23

19   contact with about my album.                          11:08:25

20     Q.   And did you want to put it on your album       11:08:29

21   "Queen"?                                               11:08:31

22     A.   Yes.                                           11:08:33

23     Q.   And how did it come about that it didn't go    11:08:35

24   on -- withdrawn.                                       11:08:41

25        How did it come about that you got Nas's         11:08:42

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
Onika Tanya Maraj

Page 61

| | | |
|---|---|---|
| 1 | through your recording process? | 11:43:55 |
| 2 | A. Yes. | 11:43:58 |
| 3 | Q. Are the different takes maintained at the | 11:44:27 |
| 4 | studio where you recorded, or are they somewhere | 11:44:29 |
| 5 | else? | 11:44:36 |
| 6 | A. The takes are on whatever the -- whatever | 11:44:38 |
| 7 | device we record on. | 11:44:41 |
| 8 | Q. Do you recall what device you recorded | 11:44:44 |
| 9 | "Sorry" on? | 11:44:45 |
| 10 | A. No. | 11:44:47 |
| 11 | Q. Who performs on "Sorry"? | 11:45:04 |
| 12 | A. Myself and Nas. | 11:45:07 |
| 13 | Q. Are there any musicians? | 11:45:14 |
| 14 | A. Not that I know of. | 11:45:16 |

[Lines 15–19 redacted]

11:45:52

| | | |
|---|---|---|
| 20 | Q. At the time you recorded it, you intended | 11:45:54 |
| 21 | it to go out on his album -- | 11:45:58 |
| 22 | A. Yes. | 11:46:00 |
| 23 | Q. -- is that correct? | 11:46:00 |
| 24 | Did you record an explicit version of | 11:46:33 |
| 25 | "Sorry"? | 11:46:36 |

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
Onika Tanya Maraj

Page 62

| | | | |
|---|---|---|---|
| 1 | A. | The original version is explicit. | 11:46:38 |
| 2 | Q. | Is there a clean version of the song? | 11:46:52 |
| 3 | A. | I'm not sure. | 11:46:55 |
| 4 | Q. | Do you know somebody named Chris Athens? | 11:47:05 |
| 5 | A. | The name sounds familiar, but I'm not sure. | 11:47:09 |
| 6 | Q. | Do you know of a company called Chris | 11:47:13 |
| 7 | Athens Masters? | | 11:47:14 |
| 8 | A. | Not off the top of my head. | 11:47:18 |
| 9 | Q. | Do you know somebody named Curt Bradley? | 11:47:24 |
| 10 | A. | No. | 11:47:28 |
| 11 | Q. | Do you know somebody named David Castro? | 11:47:29 |
| 12 | A. | No. | 11:47:32 |
| 13 | Q. | Dave Huffman? | 11:47:34 |
| 14 | A. | No. | 11:47:37 |
| 15 | | MR. ROSS: Let's take a break. | 11:47:50 |
| 16 | | MR. JACOBS: Do you want to take a break? | 11:47:51 |
| 17 | | MR. ROSS: Yes, please. | 11:47:53 |
| 18 | | MR. JACOBS: Sure. | 11:47:54 |
| 19 | | THE VIDEO OPERATOR: Here marks the end of | 11:47:56 |
| 20 | tape number 1 in the video deposition of Ms. Maraj. | | 11:47:57 |
| 21 | And we're off the record at 11:48 A.M. | | 11:48:00 |
| 22 | | (RECESS TAKEN FROM 11:48 TO 11:59 A.M.) | 11:48:50 |
| 23 | | THE VIDEO OPERATOR: Here marks the | 11:59:50 |
| 24 | beginning of tape number 2 in the video deposition | | 11:59:51 |
| 25 | of Ms. Maraj. And we're back on record at | | 11:59:54 |

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
Onika Tanya Maraj

Page 63

| | | |
|---|---|---|
| 1 | 11:59 A.M. | 11:59:57 |
| 2 | BY MR. JACOBS: | 12:00:00 |
| 3 | Q.   Ms. Maraj, do you know somebody named Kenny | 12:00:02 |
| 4 | Meiselas? | 12:00:05 |
| 5 | A.   Yes. | 12:00:07 |
| 6 | Q.   And who is he? | 12:00:08 |
| 7 | A.   He was my attorney. | 12:00:09 |
| 8 | Q.   He no longer is your attorney? | 12:00:10 |
| 9 | A.   That's correct. | 12:00:12 |
| 10 | Q.   When did he stop being your attorney? | 12:00:13 |
| 11 | A.   I'm not sure of the exact date.  Sometime | 12:00:15 |
| 12 | this year. | 12:00:17 |
| 13 | Q.   Before summer?  Or since summer? | 12:00:22 |
| 14 | A.   I don't remember. | 12:00:24 |
| 15 | Q.   Do you know somebody named Stuart Prager? | 12:00:25 |
| 16 | A.   I'm not sure. | 12:00:28 |
| 17 | Q.   Have you heard the name before? | 12:00:36 |
| 18 | A.   I'm not sure. | 12:00:38 |
| 19 | Q.   Are you aware of any efforts by Kenny | 12:00:49 |
| 20 | Meiselas to clear the use of the Tracy Chapman | 12:00:50 |
| 21 | composition "Sorry"? | 12:00:56 |
| 22 | A.   I'm not sure. | 12:01:00 |
| 23 | Q.   You're not sure, meaning you don't have any | 12:01:01 |
| 24 | recollection of any effort? | 12:01:04 |
| 25 | A.   Could you repeat the question? | 12:01:06 |

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
Onika Tanya Maraj

Page 64

| | | |
|---|---|---|
| 1 | Q.   When you say you're not sure, does that | 12:01:07 |
| 2 | mean you have no recollection of him making any such | 12:01:08 |
| 3 | effort? | 12:01:11 |
| 4 | A.   Right. | 12:01:12 |
| 5 | MR. JACOBS:  I'd like to mark as | 12:02:19 |
| 6 | Plaintiff's Exhibit 102 a text chain.  It was | 12:02:20 |
| 7 | produced by the defendant with Bates number | 12:02:29 |
| 8 | MINAJ000032 through 37. | 12:02:34 |
| 9 | (DEPOSITION EXHIBIT 102 MARKED FOR | 12:02:50 |
| 10 | IDENTIFICATION) | 12:02:52 |
| 11 | BY MR. JACOBS: | 12:02:59 |
| 12 | Q.   Ms. Maraj, if you could take a minute and | 12:03:01 |
| 13 | look at Plaintiff's Exhibit 102 and let me know | 12:03:02 |
| 14 | after you've done so, I'd appreciate it. | 12:03:06 |
| 15 | A.   (Perusing document) | 12:03:09 |
| 16 | Q.   Do you recognize Plaintiff's Exhibit 102? | 12:03:25 |
| 17 | A.   Yes. | 12:03:28 |
| 18 | Q.   What is it? | 12:03:28 |
| 19 | A.   A text. | 12:03:29 |
| 20 | Q.   A text between whom? | 12:03:30 |
| 21 | A.   Myself and Nas. | 12:03:32 |
| 22 | Q.   Are you -- are your texts in the darker | 12:03:36 |
| 23 | blue, or the lighter shade? | 12:03:42 |
| 24 | A.   Blue. | 12:03:45 |
| 25 | | |

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
Onika Tanya Maraj

Page 65

| | | | |
|---|---|---|---|
| 1 | | "Tell that lady clear the damned | 12:04:06 |
| 2 | | song." | 12:04:10 |
| 3 | | Do you see that? | 12:04:11 |
| 4 | A. | Yes. | 12:04:12 |
| 5 | Q. | Do you have an understanding of who he's | 12:04:12 |
| 6 | referring to? | | 12:04:14 |
| 7 | A. | Yes. | 12:04:14 |
| 8 | Q. | Who's he referring to? | 12:04:16 |
| 9 | A. | I believe he's referring to Tracy Chapman. | 12:04:18 |
| 10 | Q. | And that's your response immediately | 12:04:30 |
| 11 | following it: | | 12:04:32 |
| 12 | | "SMH.  By the way, did you ever | 12:04:33 |
| 13 | | approve a mix?" | 12:04:35 |
| 14 | A. | Yes. | 12:04:40 |
| 15 | Q. | When you say "did you ever approve a mix" | 12:04:47 |
| 16 | to Nas, what are you referring to? | | 12:04:50 |
| 17 | A. | A mix of the song. | 12:04:53 |
| 18 | Q. | A mix of the song "Sorry"? | 12:04:54 |
| 19 | A. | Yes. | 12:04:55 |
| 20 | Q. | The next page refers -- withdrawn. | 12:05:16 |
| 21 | | The next page appears to reflect a mix -- | 12:05:19 |
| 22 | or that you sent him a mix. | | 12:05:23 |
| 23 | | Is that correct? | 12:05:25 |
| 24 | A. | Yes. | 12:05:26 |
| 25 | Q. | Did this mix contain the rap verse that you | 12:05:39 |

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
Onika Tanya Maraj

Page 66

| | | |
|---|---|---|
| 1 | wrote and recorded? | 12:05:42 |
| 2 | A.   Yes. | 12:05:44 |
| 3 | Q.   To your knowledge, had Nas heard that | 12:06:06 |
| 4 | version prior to this date? | 12:06:09 |
| 5 | A.   I'm not sure. | 12:06:11 |
| 6 | Q.   The reference -- withdrawn. | 12:06:27 |
| 7 | Do you see the reference to "Queensbridge" | 12:06:30 |
| 8 | on page 2 of Plaintiff's Exhibit 102? | 12:06:32 |
| 9 | A.   Yes. | 12:06:35 |
| 10 | Q.   Do you know what that's a reference to? | 12:06:35 |
| 11 | A.   I'm not sure.  It looks like it may have | 12:06:44 |
| 12 | been the password. | 12:06:46 |
| 13 | Q.   On the next page, am I correct that you | 12:07:22 |
| 14 | wrote: | 12:07:25 |
| 15 | "We'll go in and make the changes | 12:07:27 |
| 16 | if you want, then we can go from | 12:07:30 |
| 17 | there"? | 12:07:32 |
| 18 | A.   Yes. | 12:07:35 |
| 19 | Q.   Did you, in fact, make changes to your mix | 12:07:36 |
| 20 | based on the comments he made? | 12:07:39 |
| 21 | A.   I don't think so. | 12:07:44 |
| 22 | Q.   Why didn't you? | 12:07:52 |
| 23 | A.   I'm not sure. | 12:07:53 |
| 24 | Q.   On the following page, am I correct that | 12:08:11 |
| 25 | you're saying: | 12:08:13 |

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
Onika Tanya Maraj

                                                    Page 67

 1          "I'm in the booth.  I'll hit you        12:08:15

 2          tomorrow"?                              12:08:18

 3     A.   Yes.                                    12:08:20

 4     Q.   Do you recall what you were in the booth 12:08:20

 5  for?                                            12:08:22

 6     A.   No.                                     12:08:22

 7     Q.   Below that there's a reference to --    12:08:37

 8  withdrawn.                                      12:08:42

 9          Below that, am I correct that Nas says: 12:08:42

10          I'll go in the lab Sunday or            12:08:45

11          Monday and adlib the hook?              12:08:48

12       MR. ROSS:  That's not what the document    12:08:53

13  says.  You misread it.                         12:08:54

14  BY MR. JACOBS:                                  12:09:01

15     Q.   Do you see the text below the one you sent 12:09:02

16  where it says:                                 12:09:05

17          "I'm in the booth, I'll hit you         12:09:05

18          tomorrow."                              12:09:08

19          It goes on to say:                      12:09:09

20          "Good morning.  I'll go in the lab      12:09:11

21          Sunday night or Monday and adlib        12:09:15

22          the hook.  Just see if we like it.      12:09:17

23          If it's not [sic] all good"?            12:09:20

24     A.   "If not, it's all good"?  Yes.          12:09:22

25     Q.   And is that something that Nas wrote to  12:09:24

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

Onika Tanya Maraj

Page 68



CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER
Onika Tanya Maraj

Page 69



CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
Onika Tanya Maraj

Page 77

1      Q.    Why didn't you call him at the time?        12:24:50

2      A.    Because I communicated on here.  That's     12:24:52

3   what would have been my text.                         12:24:57

4            "You can only play official album            12:24:58

5   material."                                            12:25:00

6            And that's what I said to him on Instagram.  12:25:02

7      Q.    And what do you mean by:                     12:25:05

8            "You can only play official album            12:25:06

9            material, sir"?                              12:25:09

10     A.    Meaning that I want him to play album        12:25:11

11   songs, songs that are on my album.                   12:25:13

12     Q.    Did you have an understanding when you saw   12:25:23

13   his post what he was referring to in terms of what   12:25:25

14   song he was planning to play?                        12:25:31

15     A.    It was confusing, because it -- it's         12:25:35

16   obvious that I did a song with Nas from my album.    12:25:38

17            So when I saw this and he said:  "Nicki     12:25:44

18   Minaj feature Nas, not on her album," I could only   12:25:47

19   guess that he was going to try to play the song that 12:25:52

20   I had with Nas.                                       12:25:56

21            Because he put a -- he put up a photo with  12:25:57

22   me and Nas, and said:  "Nicki Minaj feature Nas, and 12:25:59

23   it's not on her album."                              12:26:06

24     Q.    Are there any songs on Queen that feature    12:26:08

25   Nas?                                                  12:26:11

eLitigation Services, Inc. - els@els-team.com

061

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER
Onika Tanya Maraj

Page 78

1      A.   No.                                             12:26:11

2      Q.   So just so I'm clear, when you saw this        12:26:13

3  post, did you have an understanding that this was       12:26:19

4  "Sorry" he was referring to?                            12:26:22

5      A.   I didn't understand that.  But it was one      12:26:25

6  of my guesses.                                          12:26:28

7           And the other thing is, I didn't know if he    12:26:30

8  was just, like, joking, either.                         12:26:32

9           I didn't know if he really had music, or if    12:26:38

10  he was just playing my album.  Because my album had    12:26:40

11  just come out.  So it was a bit weird.                 12:26:43

12           But he's a very funny person.  So I           12:26:46

13  didn't -- so I wasn't sure if he was kidding, if he    12:26:52

14  was serious, and what he was going to play, because    12:26:56

15  he didn't say the song name or anything.               12:26:58

16           So I was, like, maybe he's just doing this    12:27:01

17  for people to enjoy a show.  I wasn't sure.            12:27:03

18      Q.   Do you have an understanding about how he      12:27:15

19  got a recording of "Sorry"?                            12:27:19

20      A.   No.                                            12:27:20

21      Q.   So he didn't tell you how he got a copy of    12:27:23

22  it?                                                     12:27:25

23      A.   No.                                            12:27:26

24      Q.   Do you have an understanding about how        12:27:39

25  anybody affiliated with that radio station may have    12:27:41

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
Onika Tanya Maraj

Page 79

1    gotten a copy of a recording of "Sorry"?          12:27:43

2        A.    Probably the same way everyone gets music   12:27:45

3    that's unreleased.  You just have -- I mean, songs    12:27:48

4    just leak.  People get songs through e-mails, texts.  12:27:54

5             You could mistakenly send a song to the      12:27:59

6    wrong phone number.  Someone can have it that way.    12:28:01

7             A billion different reasons how these songs  12:28:04

8    leak, because they're going back and forth between    12:28:08

9    so many different people, being mixed, being          12:28:10

10   mastered, being sent to people for approval,          12:28:14

11   lawyers, labels.                                      12:28:16

12            I have no clue.  Songs get leaked every      12:28:18

13   day.                                                  12:28:21

14            In fact, my song got leaked last week.  Two  12:28:21

15   songs got leaked last week.  I have no clue how.      12:28:24

16       Q.    With respect to "Sorry" specifically, do    12:28:28

17   you know of anybody who leaked it to anybody?         12:28:31

18       A.    No.                                         12:28:33

19       Q.    So your reference to the possibility of     12:28:35

20   leaks, you have no knowledge that that actually       12:28:38

21   happened with "Sorry"?                                12:28:40

22       A.    It's clear that it happened, because how    12:28:41

23   would he have gotten the song?                        12:28:43

24            How would anybody have a song unless it      12:28:45

25   leaked?                                               12:28:47

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
Onika Tanya Maraj

Page 80

| | | |
|---|---|---|
| 1 | Q.   But you know of nobody who actually leaked | 12:28:48 |
| 2 | it? | 12:28:50 |
| 3 | A.   Correct. | 12:28:51 |
| 4 | Q.   Did you undertake any investigation to | 12:28:55 |
| 5 | determine if the song was leaked? | 12:28:58 |
| 6 | A.   An investigation?  What do you mean? | 12:29:00 |
| 7 | Q.   Did you have anybody look into whether the | 12:29:02 |
| 8 | song was leaked? | 12:29:05 |
| 9 | A.   Yes.  Everyone looked into it, to my | 12:29:06 |
| 10 | knowledge.  Everyone on the label and management | 12:29:08 |
| 11 | looked into it. | 12:29:10 |
| 12 | Q.   So when you say "everybody in management," | 12:29:11 |
| 13 | who are you referring to? | 12:29:14 |
| 14 | A.   Do you want me to name the people at the | 12:29:19 |
| 15 | management company? | 12:29:20 |
| 16 | Q.   The people that you believe were involved | 12:29:21 |
| 17 | in investigating whether there was a leak, yes. | 12:29:23 |
| 18 | A.   I don't know if this is an investigation. | 12:29:25 |
| 19 | I just know that they were made aware my song was -- | 12:29:27 |
| 20 | an unreleased song was played on the radio.  And we | 12:29:30 |
| 21 | discussed how did the song come out, how was the | 12:29:33 |
| 22 | song played if it's not on my album. | 12:29:36 |
| 23 | Q.   Do you know of any steps taken by anybody | 12:29:38 |
| 24 | at management or the label to determine if, in fact, | 12:29:40 |
| 25 | there was a leak of the song? | 12:29:43 |

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
Onika Tanya Maraj

Page 81

1    A.    Well, normally, what they do -- I don't        12:29:46

2  know specifically with this song.                     12:29:48

3          Normally, they just try to go online and      12:29:50

4  see what was the first source of the song coming       12:29:52

5  out.                                                   12:29:54

6          So whether it was like a blog who leaked       12:29:55

7  it; whether it was someone's -- a personal person's    12:29:57

8  Instagram page who may have leaked the song.           12:30:03

9          They'll go and see if they can Google what     12:30:07

10  radio station played the song first.                  12:30:09

11         So I mean, it wasn't anything specifically     12:30:11

12  different with this song, to my knowledge.            12:30:13

13    Q.    Let me ask you one more time, and then I'll   12:30:18

14  move on:                                              12:30:20

15         Are you aware, with respect to "Sorry," in     12:30:21

16  particular, of any steps taken by anybody to          12:30:24

17  investigate whether there was a leak, and by whom?    12:30:26

18    A.    Could you repeat the question?               12:30:34

19    Q.    Sure.                                         12:30:35

20         Are you aware with respect to "Sorry," in      12:30:36

21  particular, of any steps taken by anybody to          12:30:39

22  investigate whether there was a leak, and by whom?    12:30:41

23    A.    Because of this, I believe that steps were    12:30:48

24  taken on both ends to find out how this radio        12:30:51

25  station obtained the song.                            12:30:55

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
Onika Tanya Maraj

Page 82

1        So I don't know specifically what we did on   12:30:57

2   our end, but we know that this was an issue.       12:30:59

3      Q.   When you say "steps were taken on both     12:31:05

4   ends," you mean in your team, and on the radio's   12:31:07

5   side?                                              12:31:13

6      A.   No.  On Tracy Chapman's side.             12:31:13

7      Q.   And other than what you've told me already 12:31:24

8   regarding what you think may have happened on your 12:31:27

9   side, was there anything else that you're aware of 12:31:28

10  that was done on your side to investigate any leaks? 12:31:31

11     A.   Other than what the leaks department does  12:31:34

12  at a record company, no.                           12:31:36

13        And I don't know what steps they actually    12:31:38

14  take, but I know that they investigate in their own 12:31:40

15  way.                                               12:31:42

16     Q.   Did you ask Nas if he gave the song to     12:32:14

17  anybody?                                           12:32:17

18     A.   I don't remember asking him that.          12:32:19

19     Q.   Do you know anybody else at Hot 97, other  12:32:30

20  than Nas -- sorry, withdrawn.                      12:32:33

21        Do you know anybody at Hot 97, other than    12:32:36

22  Flex?                                              12:32:39

23     A.   Yes.                                       12:32:44

24     Q.   Who?                                       12:32:44

25     A.   People that work at the station.           12:32:45

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER
Onika Tanya Maraj

Page 92

1    STATE OF _____ )
                              )
2    COUNTY OF _____ )

3

4

5                   DEPONENT'S DECLARATION

6

7             I certify under penalty of perjury that

8    the foregoing is true and correct, with addition of

9    correction page, if any corrections are made.

10

11

12

13   Executed at {city>>>}_____on

14   {date>>>}_____.

15

16

17

18                   _____

19                   ONIKA TANYA MARAJ

20                   (Signature of Deponent)

21

22

23

24

25

# EXHIBIT 7

BROWNE GEORGE ROSS LLP
Peter W. Ross (State Bar No. 109741)
  pross@bgrfirm.com
Eric C. Lauritsen (State Bar No. 301219)
  elauritsen@bgrfirm.com
2121 Avenue of the Stars, Suite 2800
Los Angeles, California 90067
Telephone: (310) 274-7100
Facsimile: (310) 275-5697

Attorneys for Defendants Onika Tanya Maraj

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA WESTERN DIVISION

| | |
|---|---|
| TRACY CHAPMAN, | Case No. 2:18-cv-9088-VAP-SS |
| Plaintiff, | **ANSWER OF DEFENDANT ONIKA TANYA MARAJ** |
| vs. | Trial Date: None Set |
| ONIKA TANYA MARAJ p/k/a NICKI MINAJ and DOES 1-10,, | |
| Defendants. | |

1208428.1

Case No. 2:18-cv-9088-VAP-SS

1    Defendant Onika Tanya Maraj ("Defendant"), for herself and no other party,

2    hereby answers the complaint filed in this action by plaintiff Tracy Chapman (the

3    "Complaint"), as follows:

4    1.    Defendant denies that she has infringed, willfully or otherwise, any

5    copyrights held by Plaintiff and, on that basis, denies the allegations in paragraph 1

6    of the Complaint.

7    2.    Defendant admits that her representatives made several requests for

8    permission to release a musical interpolation that used music and lyrics from the

9    Composition.  Except as expressly admitted, Defendant denies each and every

10   allegation in paragraph 2 of the Complaint.

11   3.    Defendant admits that Chapman denied her requests for permission to

12   release a musical interpolation that used music and lyrics from the Composition.

13   Except as expressly admitted, Defendant denies each and every allegation in

14   paragraph 3 of the Complaint.

15   4.    Defendant denies the allegations in paragraph 4 of the Complaint.

16   5.    Defendant admits the allegations in paragraph 5 of the Complaint.

17   6.    Defendant admits the allegations in paragraph 6 of the Complaint.

18   7.    Defendant admits that this Court has personal jurisdiction over her.

19   Except as expressly admitted, Defendant denies each and every allegation in

20   paragraph 7 of the Complaint.

21   8.    Defendant admits that venue is proper as to her.  Except as expressly

22   admitted, Defendant denies each and every allegation in paragraph 8 of the

23   Complaint.

24   9.    Defendant lacks information sufficient to form a belief as to the truth of

25   the allegations in paragraph 9 of the Complaint and, on that basis, denies them.

26   10.   Defendant admits the allegations in paragraph 10 of the Complaint.

27   11.   Defendant lacks information sufficient to form a belief as to the truth of

28   the allegations in paragraph 11 of the Complaint and, on that basis, denies them.

12.     Defendant lacks information sufficient to form a belief as to the truth of the allegations in paragraph 12 of the Complaint and, on that basis, denies them.

13.     Defendant lacks information sufficient to form a belief as to the truth of the allegations in paragraph 13 of the Complaint and, on that basis, denies them.

14.     Defendant lacks information sufficient to form a belief as to the truth of the allegations in paragraph 14 of the Complaint and, on that basis, denies them.

15.     Defendant lacks information sufficient to form a belief as to the truth of the allegations in paragraph 15 of the Complaint and, on that basis, denies them.

16.     Defendant lacks information sufficient to form a belief as to the truth of the allegations in paragraph 16 of the Complaint and, on that basis, denies them.

17.     Defendant lacks information sufficient to form a belief as to the truth of the allegations in paragraph 17 of the Complaint and, on that basis, denies them.

18.     Defendant lacks information sufficient to form a belief as to the truth of the allegations in paragraph 18 of the Complaint and, on that basis, denies them.

19.     Defendant admits that she recorded a musical interpolation ("*Sorry*") that incorporated music and lyrics from the Composition.  Defendant admits that she hoped to include *Sorry* on her album *Queen*, which was released in the United States on August 10, 2018.  Except as expressly admitted, Defendant denies each and every allegation in paragraph 19 of the Complaint.

20.     Defendant admits that *Sorry* incorporates music and lyrics from the Composition.  Defendant admits that she made a recording of *Sorry* without first seeking authorization to do so.  Except as expressly admitted, Defendant denies each and every allegation in paragraph 20 of the Complaint.

21.     Defendant denies the allegations in paragraph 21 of the Complaint.

22.     Defendant finds unintelligible the allegations of paragraph 22 of the Complaint and, on that basis, denies them.

23.     Defendant admits that she recorded Sorry before her representatives sought Chapman's consent to use portions of the Composition in an interpolation.

1   Except as expressly admitted, Defendant denies each and every allegation in

2   paragraph 23 of the Complaint.

3        24.    Defendant admits the allegations in paragraph 24 of the Complaint.

4        25.    Defendant admits the allegations in paragraph 25 of the Complaint.

5        26.    Defendant admits the allegations in paragraph 26 of the Complaint.

6        27.    Defendant admits the allegations in paragraph 27 of the Complaint.

7        28.    Defendant admits the allegations in paragraph 28 of the Complaint.

8        29.    Defendant denies the allegations in paragraph 29 of the Complaint.

9        30.    Defendant lacks information sufficient to form a belief as to the truth of

10  the allegations in paragraph 30 of the Complaint and, on that basis, denies them.

11       31.    Defendant lacks information sufficient to form a belief as to the truth of

12  the allegations in paragraph 31 of the Complaint and, on that basis, denies them.

13       32.    Defendant denies there was an infringing work.  Defendant lacks

14  information sufficient to form a belief as to the truth of the remaining allegations in

15  paragraph 32 of the Complaint and, on that basis, denies them.

16       33.    Defendant lacks information sufficient to form a belief as to the truth of

17  the allegations in paragraph 33 of the Complaint and, on that basis, denies them.

18       34.    Defendant admits that, on August 10, 2018, Defendant released *Queen*

19  in the United States.  Defendant admits that *Sorry* was not on the album.  Except as

20  expressly admitted, Defendant denies each and every allegation in paragraph 34 of

21  the Complaint.

22       35.    Defendant admits the allegations in paragraph 35 of the Complaint.

23       36.    Defendant lacks information sufficient to form a belief as to the truth of

24  the allegations in paragraph 36 of the Complaint and, on that basis, denies them.

25       37.    Defendant denies the allegations in paragraph 37 of the Complaint.

26       38.    Defendant lacks information sufficient to form a belief as to the truth of

27  the allegations in paragraph 38 of the Complaint and, on that basis, denies them.

28       39.    Defendant lacks information sufficient to form a belief as to the truth of

1  the allegations in paragraph 39 of the Complaint and, on that basis, denies them.

2      40.    Defendant lacks information sufficient to form a belief as to the truth of

3  the allegations in paragraph 40 of the Complaint and, on that basis, denies them.

4      41.    Defendant lacks information sufficient to form a belief as to the truth of

5  the allegations in paragraph 41 of the Complaint and, on that basis, denies them.

6      42.    Defendant lacks information sufficient to form a belief as to the truth of

7  the allegations in paragraph 42 of the Complaint and, on that basis, denies them.

8      43.    Defendant lacks information sufficient to form a belief as to the truth of

9  the allegations in paragraph 43 of the Complaint and, on that basis, denies them.

10     44.    Defendant lacks information sufficient to form a belief as to the truth of

11 the allegations in paragraph 44 of the Complaint and, on that basis, denies them.

12     45.    Defendant lacks information sufficient to form a belief as to the truth of

13 the allegations in paragraph 45 of the Complaint and, on that basis, denies them.

14     46.    Defendant lacks information sufficient to form a belief as to the truth of

15 the allegations in paragraph 46 of the Complaint and, on that basis, denies them.

16     47.    Paragraph 47 of the Complaint assumes the existence of a hypothetical

17 decision maker.  For this reason, Defendant lacks information sufficient to form a

18 belief as to the truth of the allegations in paragraph 47 of the Complaint and, on that

19 basis, denies them.

20     48.    Defendant denies the allegations in paragraph 48 of the Complaint.

21            **ANSWER TO FIRST CLAIM FOR RELIEF**

22     49.    Defendant incorporates her responses to paragraphs 1 through 48 of the

23 Complaint.

24     50.    Defendant lacks information sufficient to form a belief as to the truth of

25 the allegations in paragraph 50 of the Complaint and, on that basis, denies them.

26     51.    Defendant admits that Chapman, through her representatives, denied

27 Defendant's requests to license the Composition for use in *Sorry*.  Except as

28 expressly admitted, Defendant denies each and every allegation in paragraph 51 of

the Complaint.

52.  Defendant denies the allegations in paragraph 52 of the Complaint.

53.  Defendant denies the allegations in paragraph 53 of the Complaint.

54.  Defendant denies the allegations in paragraph 54 of the Complaint.

55.  Defendant denies the allegations in paragraph 55 of the Complaint.

56.  Defendant denies the allegations in paragraph 56 of the Complaint.

57.  Defendant denies the allegations in paragraph 57 of the Complaint.

## FIRST AFFIRMATIVE DEFENSE
### (Fair Use)

1.  Defendant's use of the Composition in connection with the making of *Sorry* constituted fair use.

## SECOND AFFIRMATIVE DEFENSE
### (Failure to Register Copyright)

2.  Defendant is informed and believes and thereon alleges that Plaintiff has not properly registered her claim to the copyright in the Composition.

## THIRD AFFIRMATIVE DEFENSE
### (Standing)

3.  Defendant is informed and believes and thereon alleges that Plaintiff is not the owner of the copyright in issue and therefore lacks standing to bring the claims alleged in the Complaint.

## FOURTH AFFIRMATIVE DEFENSE
### (Failure to Mitigate)

4.  Plaintiff failed to mitigate the damages alleged in the Complaint and therefore is not entitled to the alleged damages, or any such damages must be reduced due to Plaintiff's failure to mitigate.

## **FIFTH AFFIRMATIVE DEFENSE**

### **(De Minimus)**

5.     Plaintiff is entitled to recover nothing, because the alleged infringement is de minimus.

WHEREFORE, Defendant prays for judgment as follows:

1.     That Plaintiff take nothing by reason of her Complaint and that judgment be rendered in favor of Defendant;

2.     That Defendant be awarded her attorneys' fees and costs of suit incurred in defense of this action; and

3.     For such other and further relief as the Court deems just and proper.

DATED:  February 22, 2019        BROWNE GEORGE ROSS LLP
                                 Peter W. Ross
                                 Eric C. Lauritsen

By:    _____
                 Peter W. Ross
       Attorneys for Defendant Onika Tanya Maraj

075

# **DEMAND FOR JURY TRIAL**

Defendant hereby demands trial by jury.

DATED:  February 22, 2019

BROWNE GEORGE ROSS LLP
Peter W. Ross
Eric C. Lauritsen

By: _____

Peter W. Ross
Attorneys for Defendant Onika Tanya Maraj

# EXHIBIT 8

BROWNE GEORGE ROSS LLP
Peter W. Ross (State Bar No. 109741)
   pross@bgrfirm.com
Eric C. Lauritsen (State Bar No. 301219)
   elauritsen@bgrfirm.com
2121 Avenue of the Stars, Suite 2800
Los Angeles, California 90067
Telephone: (310) 274-7100
Facsimile: (310) 275-5697

Attorneys for Defendant Onika Tanya
Maraj p/k/a Nicki Minaj

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA WESTERN DIVISION

| | |
|---|---|
| TRACY CHAPMAN, | Case No. 2:18-cv-9088-VAP-SS |
| Plaintiff, | Hon. Virginia A. Phillips |
| vs. | **DEFENDANT MARAJ'S SUPPLEMENTAL RESPONSES AND OBJECTIONS TO PLAINTIFF CHAPMAN'S FIRST SET OF REQUESTS FOR ADMISSIONS** |
| ONIKA TANYA MARAJ p/k/a NICKI MINAJ and DOES 1-10, | |
| Defendants. | |
| | Date Filed:       October 22, 2018<br>Disc. Cutoff:    November 30, 2019<br>FPC:                February 10, 2020<br>Trial Date:       February 25, 2020 |

1333910.1

Case No. 2:18-cv-9088-VAP-SS
DEFENDANT MARAJ'S SUPPLEMENTAL RESPONSES AND OBJECTIONS TO PLAINTIFF CHAPMAN'S FIRST SET OF REQUESTS FOR ADMISSIONS

078

1  PROPOUNDING PARTY:  PLAINTIFF TRACY CHAPMAN

2  RESPONDING PARTY:      DEFENDANT ONIKA TANYA MARAJ

3  SET NO.:                      ONE (1)

4      Pursuant to Rule 36 of the Federal Rules of Civil Procedure, defendant Onika

5  Tanya Maraj ("Maraj") sets forth her objections and responses to plaintiff Tracy

6  Chapman's ("Chapman") first set of requests for admissions as follows:

7  **PRELIMINARY STATEMENT**

8      Maraj's investigation of the facts relating to this case is ongoing.  All of the

9  responses contained herein are based on information presently available, and

10  specifically known, to Maraj.  It is anticipated that further discovery and

11  investigation will disclose additional facts that may clarify and add meaning to those

12  facts presently known, as well as establish new factual matters, all of which may

13  lead to additions to, changes in, and variations from the responses set forth below.

14  The following responses are given without prejudice to Maraj's right to produce

15  evidence of subsequently discovered facts or facts that Maraj may later recall.

16  **REQUESTS FOR ADMISSION**

17  **REQUEST FOR ADMISSION NO. 1:**

18      Admit that You recorded the Infringing Work with the intention of releasing

19  it commercially.

20  **RESPONSE TO REQUEST FOR ADMISSION NO. 1:**

21      Objection:  Maraj is not aware of any "Infringing Work."  Without waiving

22  the foregoing objection, and assuming the RFA is referring to the composition and

23  recording "Sorry," DENY.

24  **REQUEST FOR ADMISSION NO. 2:**

25      Admit that You intended to include the Infringing Work on Your album

26  *Queen*.

27  **RESPONSE TO REQUEST FOR ADMISSION NO. 2:**

28      Objection:  Vague and ambiguous as to time, and Maraj is not aware of any

1  "Infringing Work."  Without waiving the foregoing objection, and assuming the

2  RFA is referring to the composition and recording "Sorry," ADMIT.

3  **REQUEST FOR ADMISSION NO. 3:**

4       Admit that You recorded the Infringing Work before requesting a License

5  from Plaintiff.

6  **RESPONSE TO REQUEST FOR ADMISSION NO. 3:**

7       Objection:  Maraj is not aware of any "Infringing Work."  Without waiving

8  the foregoing objection, and assuming the RFA is referring to the composition and

9  recording "Sorry," ADMIT.

10 **REQUEST FOR ADMISSION NO. 4:**

11      Admit that before recording the Infringing Work, You knew that Plaintiff

12 typically did not grant Licenses to use her musical works.

13 **RESPONSE TO REQUEST FOR ADMISSION NO. 4:**

14      Objection:  Maraj is not aware of any "Infringing Work."  Without waiving

15 the foregoing objection, and assuming the RFA is referring to the composition and

16 recording "Sorry," DENY.

17 **REQUEST FOR ADMISSION NO. 5:**

18      Admit that You knew that You needed a License to use the Composition in

19 the Infringing Work in order to include the Infringing Work on Your album *Queen*.

20 **RESPONSE TO REQUEST FOR ADMISSION NO. 5:**

21      Objection:  Vague and ambiguous as to time, and Maraj is not aware of any

22 "Infringing Work."  Without waiving the forgoing objection, and assuming the RFA

23 is referring to the composition and recording entitled "Sorry," ADMIT.

24 **REQUEST FOR ADMISSION NO. 6:**

25      Admit that the Infringing Work uses lyrics from the Composition.

26 **RESPONSE TO REQUEST FOR ADMISSION NO. 6:**

27      Objection:  Maraj is not aware of any "Infringing Work."  Without waiving

28 the foregoing objection, and assuming the RFA is referring to the composition and

1  recording "Sorry," ADMIT.

2  **REQUEST FOR ADMISSION NO. 7:**

3       Admit that the Composition's lyrics comprise approximately half of the lyrics

4  of the Infringing Work.

5  **RESPONSE TO REQUEST FOR ADMISSION NO. 7:**

6       Objection:  Maraj is not aware of any "Infringing Work."  Without waiving

7  the foregoing objection, and assuming the RFA is referring to the composition and

8  recording "Sorry," DENY.

9  **REQUEST FOR ADMISSION NO. 8:**

10       Admit that the Infringing Work uses a majority of the Composition's lyrics.

11  **RESPONSE TO REQUEST FOR ADMISSION NO. 8:**

12       Objection:  Maraj is not aware of any "Infringing Work."  Without waiving

13  the foregoing objection, and assuming the RFA is referring to the composition and

14  recording "Sorry," ADMIT.

15  **REQUEST FOR ADMISSION NO. 9:**

16       Admit that the lyrics of the Infringing Work are set forth in Exhibit 1 to the

17  Complaint.

18  **RESPONSE TO REQUEST FOR ADMISSION NO. 9:**

19       Objection:  Maraj is not aware of any "Infringing Work."  Without waiving

20  the foregoing objection, and assuming the RFA is referring to the composition and

21  recording "Sorry," ADMIT.

22  **REQUEST FOR ADMISSION NO. 10:**

23       Admit that the lyrics of the Composition are set forth in Exhibit 1 to the

24  Complaint.

25  **RESPONSE TO REQUEST FOR ADMISSION NO. 10:**

26       ADMIT.

27  **REQUEST FOR ADMISSION NO. 11:**

28       Admit that the Infringing Work uses at least part of the vocal melody of the

1  Composition.

2  **RESPONSE TO REQUEST FOR ADMISSION NO. 11:**

3       Objection:  Maraj is not aware of any "Infringing Work."  Without waiving

4  the foregoing objection, and assuming the RFA is referring to the composition and

5  recording "Sorry," ADMIT.

6  **REQUEST FOR ADMISSION NO. 12:**

7       Admit that all Communications posted on Your Social Media Accounts under

8  the handle @nickiminaj are made by You.

9  **RESPONSE TO REQUEST FOR ADMISSION NO. 12:**

10       DENY.

11  **REQUEST FOR ADMISSION NO. 13:**

12       Admit that any Communications posted on Your Social Media Accounts

13  under the handle @nickiminaj that You do not make are made by Your Agents.

14  **RESPONSE TO REQUEST FOR ADMISSION NO. 13:**

15       ADMIT.

16  **REQUEST FOR ADMISSION NO. 14:**

17       Admit that, on or about July 31, 2018, You posted the following

18  Communication on Your Social Media Account:  "Had no clue [the Infringing

19  Work] sampled the legend #Tracy Chapman – do I keep my date & lose the record?

20  Or do I lose the record & keep my date? [D]o we push #Queen back 1week (sic)?

21  Ugh! I'm torn, y'all help".

22  **RESPONSE TO REQUEST FOR ADMISSION NO. 14:**

23       Objection:  Maraj is not aware of any "Infringing Work."  Without waiving

24  the foregoing objection, and assuming the RFA is referring to the composition and

25  recording "Sorry," ADMIT.

26  **REQUEST FOR ADMISSION NO. 15:**

27       Admit that, on or about July 31, 2018, Your Agents posted the following

28  Communication on Your Social Media Account:  "Had no clue [the Infringing

Work] sampled the legend #Tracy Chapman – do I keep my date & lose the record? Or do I lose the record & keep my date? [D]o we push #Queen back 1week (sic)? Ugh! I'm torn, y'all help".

**RESPONSE TO REQUEST FOR ADMISSION NO. 15:**

Objection:  Maraj is not aware of any "Infringing Work."  Without waiving the foregoing objection, and assuming the RFA is referring to the composition and recording "Sorry," DENY.

**REQUEST FOR ADMISSION NO. 16:**

Admit that, on or about August 1, 2018, You posted the following Communication on Your Social Media Account:  "Tracy Chapman, can you please hit me. . . . omg for the love of #Queen".

**RESPONSE TO REQUEST FOR ADMISSION NO. 16:**

ADMIT.

**REQUEST FOR ADMISSION NO. 17:**

Admit that, on or about August 1, 2018, Your Agents posted the following Communication on Your Social Media Account:  "Tracy Chapman, can you please hit me. . . . omg for the love of #Queen".

**RESPONSE TO REQUEST FOR ADMISSION NO. 17:**

DENY.

**REQUEST FOR ADMISSION NO. 18:**

Admit that, on or about July 31, 2018, You posted the following Communication on Your Social Media Account:  "Since I may have asked it wrong. . . . vote.  You guys can only imagine how much this means to me.  It's such a perfect body of work . . . love you. Long time".

**RESPONSE TO REQUEST FOR ADMISSION NO. 18:**

ADMIT.

**REQUEST FOR ADMISSION NO. 19:**

Admit that, on or about July 31, 2018, Your Agents posted the following

1  Communication on Your Social Media Account: "Since I may have asked it wrong.

2  . . . vote.  You guys can only imagine how much this means to me.  It's such a

3  perfect body of work . . . love you. Long time".

4  **RESPONSE TO REQUEST FOR ADMISSION NO. 19:**

5      DENY.

6  **REQUEST FOR ADMISSION NO. 20:**

7      Admit that, on or about July 31, 2018, You posted the following poll as part

8  of the Communication on Your Social Media Account referenced in Request for

9  Admission Nos. 18 and 19: "Keep date/lose record" and "Keep record/push date1

10  wk [sic]".

11  **RESPONSE TO REQUEST FOR ADMISSION NO. 20:**

12      ADMIT.

13  **REQUEST FOR ADMISSION NO. 21:**

14      Admit that, on or about July 31, 2018, Your Agents posted the following poll

15  as part of the Communication on Your Social Media Account referenced in Request

16  for Admission Nos. 18 and 19: "Keep date/lose record" and "Keep record/push

17  date1 wk [sic]".

18  **RESPONSE TO REQUEST FOR ADMISSION NO. 21:**

19      DENY.

20  **REQUEST FOR ADMISSION NO. 22:**

21      Admit that the Document attached hereto as **Exhibit B** is a true and correct

22  copy of the Communications referenced in Request for Admission Nos. 18, 19, 20

23  and 21.

24  **RESPONSE TO REQUEST FOR ADMISSION NO. 22:**

25      ADMIT.

26  **REQUEST FOR ADMISSION NO. 23:**

27      Admit that, on or about August 11, 2018, You posted the following

28  Communication on Your Social Media Account: "Sis said no".

1333910.1        -6-        Case No. 2:18-cv-9088-VAP-SS
DEFENDANT MARAJ'S SUPPLEMENTAL RESPONSES AND OBJECTIONS TO PLAINTIFF CHAPMAN'S
FIRST SET OF REQUESTS FOR ADMISSIONS    084

**RESPONSE TO REQUEST FOR ADMISSION NO. 23:**

ADMIT.

**REQUEST FOR ADMISSION NO. 24:**

Admit that, on or about August 11, 2018, Your Agents posted the following Communication on Your Social Media Account: "Sis said no".

**RESPONSE TO REQUEST FOR ADMISSION NO. 24:**

DENY.

**REQUEST FOR ADMISSION NO. 25:**

Admit that the Communication referenced in Request for Admission Nos. 23, and 24 refer to Plaintiff's denial of a request to License the Composition for use in the Infringing Work.

**RESPONSE TO REQUEST FOR ADMISSION NO. 25:**

Objection:  Maraj is not aware of any "Infringing Work."  Without waiving the foregoing objection, and assuming the RFA is referring to the composition and recording "Sorry," ADMIT.

**REQUEST FOR ADMISSION NO. 26:**

Admit that You made a copy of the Infringing Work after it was recorded.

**RESPONSE TO REQUEST FOR ADMISSION NO. 26:**

Objection:  Maraj is not aware of any "Infringing Work."  Without waiving the foregoing objection, and assuming the RFA is referring to the composition and recording "Sorry," DENY.

**REQUEST FOR ADMISSION NO. 27:**

Admit that Your Agents made a copy of the Infringing Work after it was recorded.

**RESPONSE TO REQUEST FOR ADMISSION NO. 27:**

Objection:  Maraj is not aware of any "Infringing Work."  Without waiving the foregoing objection, and assuming the RFA is referring to the composition and recording "Sorry," DENY.

085

1  **REQUEST FOR ADMISSION NO. 28:**

2      Admit that You gave a copy of the Infringing Work to Taylor.

3  **RESPONSE TO REQUEST FOR ADMISSION NO. 28:**

4      Objection:  Maraj is not aware of any "Infringing Work."  Without waiving

5  the foregoing objection, and assuming the RFA is referring to the composition and

6  recording "Sorry," DENY.

7  **REQUEST FOR ADMISSION NO. 29:**

8      Admit that Your Agents gave a copy of the Infringing Work to Taylor.

9  **RESPONSE TO REQUEST FOR ADMISSION NO. 29:**

10      Objection:  Maraj is not aware of any "Infringing Work."  Without waiving

11  the foregoing objection, and assuming the RFA is referring to the composition and

12  recording "Sorry," DENY.

13  **REQUEST FOR ADMISSION NO. 30:**

14      Admit that You expected that Taylor would play the Infringing Work on HOT

15  97 FM.

16  **RESPONSE TO REQUEST FOR ADMISSION NO. 30:**

17      Objection:  vague and ambiguous as to time, and Maraj is not aware of any

18  "Infringing Work."  Without waiving the foregoing objection, and assuming the

19  RFA is referring to the composition and recording "Sorry," DENY.

20  **REQUEST FOR ADMISSION NO. 31:**

21      Admit that Your Agents expected that Taylor would play the Infringing Work

22  on HOT 97 FM.

23  **RESPONSE TO REQUEST FOR ADMISSION NO. 31:**

24      Objection:  Maraj is not aware of any "Infringing Work."  Without waiving

25  the foregoing objection, and assuming the RFA is referring to the composition and

26  recording "Sorry".  Maraj lacks information sufficient to form a belief as to her

27  agents' expectations.

28  ///

DEFENDANT MARAJ'S SUPPLEMENTAL RESPONSES AND OBJECTIONS TO PLAINTIFF CHAPMAN'S
FIRST SET OF REQUESTS FOR ADMISSIONS

**REQUEST FOR ADMISSION NO. 32:**

Admit that You asked Taylor to play the Infringing Work on HOT 97 FM.

**RESPONSE TO REQUEST FOR ADMISSION NO. 32:**

Objection:  Maraj is not aware of any "Infringing Work."  Without waiving the foregoing objection, and assuming the RFA is referring to the composition and recording "Sorry," DENY.

**REQUEST FOR ADMISSION NO. 33:**

Admit that Your Agents asked Taylor to play the Infringing Work on HOT 97 FM.

**RESPONSE TO REQUEST FOR ADMISSION NO. 33:**

Objection:  Maraj is not aware of any "Infringing Work."  Without waiving the foregoing objection, and assuming the RFA is referring to the composition and recording "Sorry," DENY.

**REQUEST FOR ADMISSION NO. 34:**

Admit that You understood that Taylor would play the Infringing Work on HOT 97 FM.

**RESPONSE TO REQUEST FOR ADMISSION NO. 34:**

Objection:  vague and ambiguous as to time, and Maraj is not aware of any "Infringing Work."  Without waiving the foregoing objection, and assuming the RFA is referring to the composition and recording "Sorry," DENY.

**REQUEST FOR ADMISSION NO. 35:**

Admit that Your Agents understood that Taylor would play the Infringing Work on HOT 97 FM.

**RESPONSE TO REQUEST FOR ADMISSION NO. 35:**

Objection:  Maraj is not aware of any "Infringing Work."  Without waiving the foregoing objection, and assuming the RFA is referring to the composition and recording "Sorry," Maraj lacks information sufficient to form a belief as to her agents' understanding.

**REQUEST FOR ADMISSION NO. 36:**

Admit that, on August 11, 2018, one or more of Taylor's Social Media Accounts contained the Communication, "Shhhhhhh!!!! TONIGHT 7PM!!! NICKY GAVE ME SOMETHING!!! @nickiminaj ft @nas !!! (NOT ON HER ALBUM!) GONNA STOP THE CITY TONIGHT!!!!!!!!!!!!!".

**RESPONSE TO REQUEST FOR ADMISSION NO. 36:**

Maraj lacks sufficient information and belief to either admit or deny the request and on that basis denies it.

**REQUEST FOR ADMISSION NO. 37:**

Admit that the Document attached hereto as **Exhibit C** is a true and correct copy of the Communication referenced in Request for Admission No. 36.

**RESPONSE TO REQUEST FOR ADMISSION NO. 37:**

Maraj lacks sufficient information and belief to either admit or deny the request and on that basis denies it.

**REQUEST FOR ADMISSION NO. 38:**

Admit that, on August 11, 2018, one or more of Taylor's Social Media Accounts contained the Communication, "Shhhhhhh!!!! TONIGHT 7PM!!! NICKI GAVE ME SOMETHING!!! @nickiminaj ft @nas !!! (NOT ON HER ALBUM!) GONNA STOP THE CITY TONIGHT!!!!!!!!!!!!!".

**RESPONSE TO REQUEST FOR ADMISSION NO. 38:**

Maraj lacks sufficient information and belief to either admit or deny the request and on that basis denies it.

**REQUEST FOR ADMISSION NO. 39:**

Admit that the Document attached hereto as **Exhibit C** is a true and correct copy of the Communication referenced in Request for Admission No. 38.

**RESPONSE TO REQUEST FOR ADMISSION NO. 39:**

Maraj lacks sufficient information and belief to either admit or deny the request and on that basis denies it.

1333910.1                                              -10-                          Case No. 2:18-cv-9088-VAP-SS
DEFENDANT MARAJ'S SUPPLEMENTAL RESPONSES AND OBJECTIONS TO PLAINTIFF CHAPMAN'S
FIRST SET OF REQUESTS FOR ADMISSIONS

088

**REQUEST FOR ADMISSION NO. 40:**

Admit that, on August 11, 2018, one or more of Taylor's Social Media Accounts contained the Communication, "Shhhhhh!!!! TONIGHT 7PM!!! I GOT SOMETHING!!! @nickiminaj ft @nas!!! (NOT ON HER ALBUM!) GONNA STOP THE CITY TONIGHT!!!!!!!!!!!!!".

**RESPONSE TO REQUEST FOR ADMISSION NO. 40:**

Maraj lacks sufficient information and belief to either admit or deny the request and on that basis denies it.

**REQUEST FOR ADMISSION NO. 41:**

Admit that the Document attached hereto as **Exhibit C** is a true and correct copy of the Communication referenced in Request for Admission No. 40.

**RESPONSE TO REQUEST FOR ADMISSION NO. 41:**

Maraj lacks sufficient information and belief to either admit or deny the request and on that basis denies it.

**REQUEST FOR ADMISSION NO. 42:**

Admit that on August 11, 2018, Taylor's Social Media Account responded "Hot97 App!!!!!" to the Communication, "Anyone have a link or know how to listen to @funkflex tonight at 7pm live for when that @NICKIMINAJ and @Nas song drops?".

**RESPONSE TO REQUEST FOR ADMISSION NO. 42:**

Maraj lacks sufficient information and belief to either admit or deny the request and on that basis denies it.

**REQUEST FOR ADMISSION NO. 43:**

Admit that the Document attached hereto as **Exhibit C** is a true and correct copy of the Communication referenced in Request for Admission No. 42.

**RESPONSE TO REQUEST FOR ADMISSION NO. 43:**

Maraj lacks sufficient information and belief to either admit or deny the request and on that basis denies it.

**REQUEST FOR ADMISSION NO. 44:**

Admit that, on August 11, 2018, one or more of Taylor's Social Media Accounts contained the Communication, "EXCLUSIVE: @FunkFlex Debuts NEW @NickiMinaj Ft. Nas - Sorry - http://tinyurl.com/y9shont9 #IFWT".

**RESPONSE TO REQUEST FOR ADMISSION NO. 44:**

Maraj lacks sufficient information and belief to either admit or deny the request and on that basis denies it.

**REQUEST FOR ADMISSION NO. 45:**

Admit that the Document attached hereto as **Exhibit D** is a true and correct copy of the Communication referenced in Request for Admission No. 44.

**RESPONSE TO REQUEST FOR ADMISSION NO. 45:**

Maraj lacks sufficient information and belief to either admit or deny the request and on that basis denies it.

**REQUEST FOR ADMISSION NO. 46:**

Admit that, on or about August 11, 2018, Taylor played the Infringing Work on HOT 97 FM.

**RESPONSE TO REQUEST FOR ADMISSION NO. 46:**

Objection:  Maraj is not aware of any "Infringing Work."  Without waiving the foregoing objection, and assuming the RFA is referring to the composition and recording "Sorry," Maraj lacks sufficient information and belief to either admit or deny the request and on that basis denies it.

**REQUEST FOR ADMISSION NO. 47:**

Admit that, after Taylor played the Infringing Work, Internet users made the Infringing Work available on different websites.

**RESPONSE TO REQUEST FOR ADMISSION NO. 47:**

Objection:  Maraj is not aware of any "Infringing Work."  Without waiving the foregoing objection, and assuming the RFA is referring to the composition and recording "Sorry," Maraj lacks sufficient information and belief to either admit or

1  deny the request and on that basis denies it.

2  **REQUEST FOR ADMISSION NO. 48:**

3       Admit that, on or about August 13, 2018, the Infringing Work was played on

4  Power 105.1 FM.

5  **RESPONSE TO REQUEST FOR ADMISSION NO. 48:**

6       Objection:  Maraj is not aware of any "Infringing Work."  Without waiving

7  the foregoing objection, and assuming the RFA is referring to the composition and

8  recording "Sorry," Maraj lacks sufficient information and belief to either admit or

9  deny the request and on that basis denies it.

10

11  DATED:  September 3, 2019       BROWNE GEORGE ROSS LLP

12                                           Peter W. Ross

                                         Eric C. Lauritsen

13

14

15                     By: _____

16                             Peter W. Ross

Attorneys for Defendants Onika Tanya Maraj

17  p/k/a Nicki Minaj

18

19

20

21

22

23

24

25

26

27

28

1333910.1               -13-         Case No. 2:18-cv-9088-VAP-SS
DEFENDANT MARAJ'S SUPPLEMENTAL RESPONSES AND OBJECTIONS TO PLAINTIFF CHAPMAN'S
FIRST SET OF REQUESTS FOR ADMISSIONS

091

<u>**PROOF OF SERVICE**</u>

**Chapman v. Maraj p/k/a Nicki Minaj**
**USDC Case No. 2:18-cv-9088**

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Los Angeles, State of California. My business address is 2121 Avenue of the Stars, Suite 2800, Los Angeles, CA 90067.

On September 3, 2019, I served true copies of the following document(s) described as **DEFENDANT MARAJ'S SUPPLEMENTAL RESPONSES AND OBJECTIONS TO PLAINTIFF CHAPMAN'S FIRST SET OF REQUESTS FOR ADMISSION** on the interested parties in this action as follows:

**SEE ATTACHED SERVICE LIST**

**BY MAIL:** I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed in the Service List and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with the practice of Browne George Ross LLP for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid. I am a resident or employed in the county where the mailing occurred. The envelope was placed in the mail at Los Angeles, California.

**BY E-MAIL OR ELECTRONIC TRANSMISSION:** On September 3, 2019, I caused a copy of the document(s) to be sent from e-mail address dtorosyan@bgrfirm.com to the persons at the e-mail addresses listed in the Service List. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on September 3, 2019, at Los Angeles, California.

_____
Diane Torosyan

1333910.1

Case No. 2:18-cv-9088-VAP-SS
DEFENDANT MARAJ'S SUPPLEMENTAL RESPONSES AND OBJECTIONS TO PLAINTIFF CHAPMAN'S
FIRST SET OF REQUESTS FOR ADMISSIONS

092

**SERVICE LIST**
*Chapman v. Maraj p/k/a Nicki Minaj*
**USDC Case No. 2:18-cv-9088**

Robert A. Jacobs, Esq.                          Attorneys for Plaintiff Tracy Champan
Maura K. Gierl, Esq.
Manatt, Phelps & Phillips, LLP
11355 West Olympic Boulevard
Los Angeles, California 90064-1614
Tel.: 310.312.4000
Fax: 310.312.4224
Email:       rjacobs@manatt.com
             mgierl@manatt.com

1333910.1

Case No. 2:18-cv-9088-VAP-SS
DEFENDANT MARAJ'S SUPPLEMENTAL RESPONSES AND OBJECTIONS TO PLAINTIFF CHAPMAN'S
FIRST SET OF REQUESTS FOR ADMISSIONS

093

# EXHIBIT 9

<u>**EXHIBIT 1**</u>
Comparison Chart
(Identical lyrics bolded)

| ***Baby Can I Hold You***<br>**(the Composition)** | ***Sorry***<br>**(the Infringing Work)** |
|---|---|
| **Sorry**<br>**Is all that you can't say**<br>**Years gone by and still**<br>**Words don't come easily**<br>Like sorry like sorry | Hey, baby<br>Even though you break my heart<br>I still love you<br>**Sorry**<br>**Is all that you can't say** |
| Forgive me<br>**Is all that you can't say**<br>**Years gone by and still**<br>**Words don't come easily**<br>**Like forgive me forgive me** | **Years gone by and still**<br>**Words don't come easily**<br>**Like forgive me (forgive me)**<br>And **you can say, baby (baby)**<br>My **baby, can I hold you tonight?** |
| But **you can say baby**<br>**Baby can I hold you tonight**<br>**Maybe if I told you the right words**<br>**At the right time you'd be mine** | And **maybe if I told you the right**<br>**words**<br>**Ooh, at the right time**<br>**You'd be** Nas<br>Ayo<br>That bitch is always flippin' |
| I love you<br>**Is all that you can't say**<br>**Years gone by and still**<br>**Words don't come easily**<br>Like I love you I love you | You n****s never listen<br>We make a perfect team<br>Balling Jordan and Scottie Pippen<br>But I'ma let you dip in<br>That wax sauce drippin' |
| But **you can say baby**<br>**Baby can I hold you tonight**<br>**Maybe if I told you the right words**<br>**Ooh, at the right time you'd be mine** | Said that when you with a boss bitch,<br>now you can tell the difference<br>You be like jungle digger<br>I don't want another n***a<br>I wanna make you 'bout a legend, but I<br>make you bigger<br>Tinkerbell, Peter Pan |
| **Baby can I hold you tonight**<br>**Maybe if I told you the right words**<br>**At the right time you'd be mine** | No bitches badder than me when I pull<br>up<br>Got 'em screaming like a temper tan'<br>Ayo, DJ, drop the beat |
| **You'd be** mine | My gun didn't fall but I drop the heat |
| **You'd be** mine | I love how we kept it on the low, mad<br>discreet (I'm in a rush!) |

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT 1

| Baby Can I Hold You<br>(the Composition) | Sorry<br>(the Infringing Work) |
|---|---|
| | Pass me the keys to my jeep (truck)<br>I hit 'em with it, I'ma kill 'em with that wine wine<br>Ain't losin' watches, but with me, he always find time<br>We keep it classy when we eatin' it's that fine dine<br>But between love and hate, baby, it's a fine line<br>**Sorry**<br>**Is all that you can't say**<br>**Years gone by and still**<br>**Words don't come easily**<br>**Like forgive me (forgive me)**<br>And **you can say, baby (baby)**<br>My **baby, can I hold you tonight?**<br>And **maybe if I told you the right words**<br>**Ooh, at the right time**<br>**You'd be** Nas<br>A mack<br>I used to mack with the MAC on me<br>Project parties, lights off, mad horny<br>Dutty wine and feel the gun I'm hidin'<br>She still grindin' on me, smilin' at me<br>I'm like "Hi, I'm Nasty"<br>"God bless ya, met ya'"<br>Thought you were sexy as ever<br>Flexing with your ex, I couldn't disrespect ya'<br>Later on, I undress ya, couldn't wait to sex ya'<br>Made a n***a wait so long, but it was special<br>Light travel faster than sound<br>Lightning strike one second every point two miles<br>So when you first saw me emerge from a weed cloud |

| Baby Can I Hold You (the Composition) | Sorry (the Infringing Work) |
|---|---|
| | Electricity touch your soul, that's how I get down |
| | Gangsta love |
| | Completing each other |
| | Touching tongues so close, we could breathe for each other |
| | Untouchable boy with the illustrious girl |
| | But maybe being together's too much for the world, sorry |
| | **Sorry** |
| | **Is all that you can't say** |
| | **Years gone by and still** |
| | **Words don't come easily** |
| | **Like forgive me (forgive me)** |
| | And **you can say, baby (baby)** |
| | My **baby, can I hold you tonight?** |
| | And **maybe if I told you the right words** |
| | **Ooh, at the right time** |
| | **You'd be** Nas |

Manatt, Phelps & Phillips, LLP
Attorneys At Law
Los Angeles

3

EXHIBIT 1

097

# EXHIBIT 10

**DEPOSITION EXHIBIT**
PX - 113
KH 12/4/20

| | |
|---|---|
| **From:** | Deborah Mannis-Gardner <deborah@dmgclearances.com> |
| **Sent:** | Thursday, May 24, 2018 11:23 AM |
| **To:** | Joshua Berkman |
| **Cc:** | G Roberson; Jean Nelson; Grace Kim Nicki Minaj Attorney |
| **Subject:** | Re: New Nicki Minaj Interpolation |

Hi

I need to her the song because if this is shelly thunder/foxy brown reggae version of Sorry written by Tracy Chapman then its not available for sampling

On Wed, May 23, 2018 at 6:38 PM, Joshua Berkman <joshuaberkman@mac.com> wrote:

Hey Deborah,

Theres a new interpolation for Nicki Minaj. The interpolation comes from Shelly Thunder "Sorry". Can we found out all parties involved who need to clear and start setting up in person meetings. Thanks so much.

Joshua Berkman
Tel: 757-737-2434

Note: Privileged/Confidential information may be contained in this message and may be subject to legal privilege. Access to this e-mail by anyone other than the intended is unauthorised. If you are not the intended recipient (or responsible for delivery of the message to such person), you may not use, copy, distribute or deliver to anyone this message (or any part of its contents ) or take any action in reliance on it. In such case, you should destroy this message, and notify us immediately. If you have received this email in error, please notify us immediately by e-mail or telephone and delete the e-mail from any computer.

--
**Deborah Mannis-Gardner**
**DMG Clearances, Inc.**
**7209 Lancaster Pike, Suite 4-330**
**Hockessin, DE 19707**
**302.239.6337 x1 voice**
**302.239.6875 fax**
**deborah@dmgclearances.com**
**Visit our website at www.dmgclearances.com**
**Visit our partner company www.tracklib.com**
http://www.imdb.com/name/nm0543434/
http://www.allmusic.com/artist/deborah-mannis-gardner-mn0001801015

**DMG HAS MOVED - PLEASE NOTE OUR NEW ADDRESS**
**DMG Clearances, Inc.**

1

099

7209 Lancaster Pike, Suite 4-330
Hockessin, DE 19707



The information contained in this e-mail, including any attachments, is confidential and may contain privileged information or work product.  If you have received this e-mail in error, please advise the sender immediately by reply e-mail, destroy all hard copies of the original message and any attachments thereto and delete same from your system. The unauthorized use, distribution, copying, or alteration of this e-mail is prohibited.  Because e-mail can be altered electronically, the integrity in this communication cannot be guaranteed.

# EXHIBIT 11

CERTIFIED COPY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| TRACY CHAPMAN, | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| vs. | ) | CASE NO. 2:18-CV-09088-VAP-SS |
| | ) | |
| ONIKA TANYA MARAJ P/K/A | ) | |
| NICKI MINAJ AND DOES 1-10, | ) | |
| | ) | |
| DEFENDANTS. | ) | |
| | ) | |

DEPOSITION OF DEBORAH MANNIS-GARDNER

Taken on January 28, 2020



**Court Reporting • Video • Trial Presentation**

LA 310.230.9700 • SF 415.445.0105

els@elitigationservices.com • www.elitigationservices.com

102

Page 1

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

TRACY CHAPMAN,           )
                         )
        Plaintiff,       )
                         )
        v.               ) Case No.
                         ) 2:18-cv-09088-VAP-SS
ONIKA TANYA MARAJ        )
p/k/a NICKI MINAJ and)
DOES 1-10,               )
                         )
        Defendants.      )


        Videotaped deposition of

DEBORAH MANNIS-GARDNER taken pursuant to

notice at the offices of Regus/Christiana

Corporate, 200 Continental Drive,

Suite 401, Newark, Delaware, beginning at

10:30 a.m., on Tuesday, January 28, 2020,

before Kimberly A. Hurley, Registered Merit

Reporter and Notary Public.

Deborah Mannis-Gardner

Page 2

```
 1   APPEARANCES:

 2           NICHOLAS FRONTERA, ESQUIRE
             MANATT PHELPS & PHILLIPS, LLP
 3             11355 West Olympic Boulevard
               Los Angeles, California 90064
 4             for the Plaintiff

 5           JEFFREY A. MITCHELL, ESQUIRE
             BROWNE GEORGE ROSS, LLP
 6             5 Penn Plaza - 24th Floor
               New York, New York 10001
 7             for the Defendants

 8           STEPHANIE SMIERTKA RILEY, ESQUIRE
             CONNOLLY GALLAGHER, LLP
 9             1201 North Market Street
               20th Floor
10             Wilmington, Delaware 19801
               for the Deponent
11
     ALSO PRESENT:
12
             LINDSAY DuPHILY
13           Videotape Specialist

14                   - - - - -

15

16

17

18

19

20

21

22

23

24
```

Deborah Mannis-Gardner

Page 3

1                THE VIDEOGRAPHER:  This is the

2    videotaped deposition of Deborah Mannis-

3    Gardner taken by the plaintiff in the

4    matter of Tracy Chapman, Plaintiff, versus

5    Onika Tanya Maraj, et al., defendants, Case

6    No. 2:18-cv-09088-VAP-SS.

7                This deposition is being held

8    in Newark, Delaware.  We are going on the

9    record on January 28, 2020, at

10   approximately 10:30 a.m.

11               The court reporter is

12   Kim Hurley with eLitigation Services.  My

13   name is Lindsay DuPhily.  I'm the videotape

14   specialist with eLitigation Services.

15               Counsel will now introduce

16   themselves, and then the court reporter

17   will swear in the witness.

18               MR. FRONTERA:  Nicholas

19   Frontera on behalf of plaintiff.

20               MS. RILEY:  Stephanie Riley on

21   behalf of Deborah Mannis-Gardner.

22               MR. MITCHELL:  Jeffrey Mitchell

23   on behalf of defendants.

24               - - - - -

Deborah Mannis-Gardner

Page 4

1                    DEBORAH MANNIS-GARDNER,

2          the witness herein, having first been

3          duly sworn on oath, was examined and

4          testified as follows:

5    BY MR. FRONTERA:

6      Q.    Good morning.

7      A.    Good morning.

8      Q.    Can you please state and spell your

9    name for the record?

10     A.    Deborah Mannis-Gardner.

11   D-e-b-o-r-a-h; Mannis-Gardner, M-a, double

12   N as in Nancy, i-s, hyphen, G-a-r-d-n-e-r.

13     Q.    Thank you.  Have you ever gone by

14   any other names?

15     A.    Prior to being married, yes.

16     Q.    What was that name?

17     A.    Deborah Mannis.

18     Q.    Any other names?

19     A.    No.

20     Q.    Have you ever had your deposition

21   taken before?

22     A.    No.  Not that I recall.

23     Q.    Have you ever been an expert

24   witness in a case?

Deborah Mannis-Gardner

Page 98

1    why don't we take a short break now.  Maybe

2    five or ten minutes?  Does that work?

3                    THE WITNESS:  I'm good with

4    five.

5                    THE VIDEOGRAPHER:  Going off

6    the record at 11:58 a.m.

7                    (A recess was taken.)

8                    THE VIDEOGRAPHER:  Back on the

9    record at 12:08 p.m.

10   BY MR. FRONTERA:

11     Q.    I'm going to give you a document

12   that I would like you to look at.

13                   MR. FRONTERA:  We're going to

14   mark this one I believe as Plaintiff's

15   Exhibit 113.  Is that right?

16                   (Plaintiff's Deposition Exhibit

17   No. 113 was marked for identification.)

18   BY MR. FRONTERA:

19     Q.    Do you recognize Exhibit 113?

20     A.    Yes.

21     Q.    What is it?

22     A.    It's an email correspondence

23   between myself and Josh and other people.

24     Q.    "Josh" is Josh Berkman?

Deborah Mannis-Gardner

Page 99

1      A.      Josh Berkman.

2      Q.      And if you look at the from line at

3   the top of the email chain, is that your

4   email address there?

5      A.      That is correct.

6      Q.      And do you recall receiving and

7   sending emails in the chain?

8      A.      Yes.

9      Q.      The subject line in the email says

10   "Re:  New Nicki Minaj Interpolation."

11              Do you know if the

12   interpolation that's being referenced in

13   the subject line is Ms. Maraj's song

14   "Sorry"?

15      A.      Yes.

16      Q.      In the first --

17      A.      Oh, wait.  You said Nicki Minaj's

18   song "Sorry" or Shelly Thunder's song

19   "Sorry"?

20      Q.      Sorry.  Ms. Maraj's Song D I guess

21   we would say.

22      A.      Thank you.  Yes.

23      Q.      And then the first email chain in

24   this chain is dated May 23rd, 2018, at

Deborah Mannis-Gardner

Page 102

1    Right?

2      A.     That is the cover of Tracy's song.

3    That was my impression, yeah.

4      Q.     And do you know if this email was

5    the first time you were asked to obtain

6    clearance for "Sorry"?   Or, I'm sorry, for

7    Song D?

8      A.     Based on my response, that would be

9    the first time learning about it.

10     Q.     And above that email on May 23rd

11   you respond to Josh Berkman, copying

12   G. Roberson, Jean Nelson, Grace Kim,

13   Nicki Minaj Attorney, saying "Hi.   I need

14   to her [sic] the song because of this" --

15   I'm sorry -- "because if this is

16   shelly thunder/foxy brown reggae version of

17   "Sorry" written by Tracy Chapman then

18   its [sic] not available for sampling."

19            When you wrote "her," did you

20   mean "hear"?

21     A.     Yes.

22     Q.     When you said "the song," are you

23   referring to the song Song D?

24     A.     I am referring to Song D, correct.

Deborah Mannis-Gardner

Page 103

1    Q.    The new song that Nicki Minaj --

2    A.    The Nicki Minaj song, correct.

3    Q.    Why did you need to hear that song?

4    A.    To determine if it's the

5    Tracy Chapman song.

6    Q.    And after you sent the email, did

7    you hear Song D?

8    A.    I never heard Nicki's song.

9    Q.    Never at any point?

10   A.    No.

11   Q.    So just to be clear, to this day

12   you've never heard Nicki Minaj's Song --

13   A.    No.

14   Q.    -- D?

15   A.    Never.  That's not uncommon.

16   Q.    No, I understand.

17   A.    Okay.

18   Q.    The song that you're referencing in

19   the email by Tracy Chapman, do you know if

20   that song was "Baby Can I Hold You"?

21   A.    That's what I ended up figuring out

22   that's what it was, through the help of

23   Purple Rabbit.

24   Q.    And when you said that it's not

Deborah Mannis-Gardner

Page 104

1    available for sampling, what do you mean?

2       A.      Tracy Chapman is known for not

3    allowing her material to be sampled.

4       Q.      Have you tried to obtain clearances

5    from Tracy Chapman before?

6       A.      Many years ago.

7       Q.      And were those requests denied?

8       A.      Yes.

9       Q.      And so when you say it's known, you

10   mean kind of in your experience in the

11   industry, it's known throughout the

12   industry that Tracy Chapman doesn't allow

13   people to use her songs?

14      A.      There's a list of people who do not

15   allow their material to be sampled.

16   Tracy Chapman is on the list.

17      Q.      Is that like a physical list?

18      A.      No.

19      Q.      When you say "There's a list,"

20   there's kind of just people in the know

21   know that these artists don't allow their

22   songs to be used?

23      A.      Correct.

24      Q.      Do you remember what songs you

Deborah Mannis-Gardner

Page 107

1    Q.    I don't see Sonya on this email.

2              Do you know if Grace was

3    handling this on behalf of Sonya?

4    A.    She probably was.  That's why she's

5    on there.

6    Q.    Got it.  And the "Nicki Minaj

7    Attorney" part, was that something you

8    would have added?

9    A.    Might have been saved in my email

10   like that.

11   Q.    Okay.  I've just never seen that

12   before.  Curious.

13   A.    Yeah.

14   Q.    All right.  You can set that

15   exhibit aside.

16              (Plaintiff's Deposition Exhibit

17   No. 114 was marked for identification.)

18   BY MR. FRONTERA:

19   Q.    I'd like to mark that exhibit as

20   Plaintiff's Exhibit 114.

21              Do you recognize Exhibit 114?

22   A.    It's an email that I sent.

23   Q.    Do you recall receiving and sending

24   the emails in this chain?

Deborah Mannis-Gardner

Page 108

1    A.    Do I specifically recall sending

2  this specific email?  I'm assuming I did.

3  But do I recall doing it?

4    Q.    Do you have any reason to believe

5  that you did not?

6    A.    No.  This is my email, yes.

7    Q.    So the subject line for this email

8  chain is "Re:  Nicki Minaj interpolation of

9  Shelly Thunder "Sorry."

10           Do you see that?

11   A.    Yes.

12   Q.    Below that:  On June 26, 2018, at

13 3:44 Josh Berkman writes:  "Hey Deborah can

14 we please start the clearance process for

15 this interpolation."

16           Do you see that?

17   A.    Yes.

18   Q.    Between this email and the email

19 you sent Mr. Berkman on May 24th, 2018,

20 stating "this is shelly thunder/foxy brown

21 reggae version of Sorry written by

22 Tracy Chapman then its [sic] not available

23 for sampling," do you know if you had any

24 discussions with Mr. Berkman regarding

Deborah Mannis-Gardner

Page 109

1   getting clearance for Song D?

2       A.    Based on this, he told me to

3   proceed anyway.

4       Q.    Do you know if that was another

5   conversation you would have had by phone,

6   or are you just basing it on --

7       A.    It must have been by phone.  No, he

8   never -- he started the clearance process

9   with an email.  He told me to proceed, so I

10  proceeded.

11      Q.    Got you.  So between -- it was

12  about a month.  Between that time and this

13  time, you don't recall having any

14  conversations with him or --

15      A.    It's standard for radio silence

16  between telling me about a sample and

17  actually having me proceed.

18      Q.    Got it.  So you don't believe there

19  was anything in between?

20      A.    Not unless -- it doesn't -- the one

21  month looks like a weird thing to you, but

22  it's a common thing where people tell me

23  that they're going to do something, but I

24  can't do it until they say, Please proceed.

Deborah Mannis-Gardner

Page 115

1    Sorry.  URGENT - please advise."

2              Is that correct?

3    A.    Correct.

4    Q.    Who's Dag Sandsmark?

5    A.    I don't know if his title is vice

6    president, but he oversees the sample

7    clearances at Sony/ATV.

8    Q.    And what's Sony/ATV?

9    A.    A publishing company.

10   Q.    Is there a reason that you emailed

11   Dag at Sony/ATV regarding Tracy Chapman?

12   A.    Yes.  Because I thought

13   Tracy Chapman was Sony/ATV.

14   Q.    What do you mean by the "do not

15   sample or interpolate list"?  Is that the

16   list you were referring to before?

17   A.    Yes.

18   Q.    And you said it wasn't a physical

19   list, right?

20   A.    No.

21   Q.    Or a digital list.  It's just

22   something that people know?

23   A.    Something people know.  Or if

24   there's a list, I'm not aware of it.

Deborah Mannis-Gardner

Page 116

1    Q.    Okay.  Understood.  And at the time

2    of this email, did you believe Ms. Chapman

3    was on that list?

4    A.    Yes.

5    Q.    And that was common knowledge in

6    the industry, right?

7              MR. MITCHELL:  Object to the

8    form of the question.

9    BY MR. FRONTERA:

10   Q.    I think you testified earlier that,

11   in the industry, based on your experience,

12   most people knew that Tracy Chapman --

13   A.    I don't think artists or producers

14   know.  I think copyright holders know.  My

15   side of the industry, not the creative side

16   of the industry.

17   Q.    And then the same day at 4:22 p.m.,

18   Dag responds to you, saying "Gelfand

19   Rennert & Feldman," with contact

20   information for someone named

21   Rachel Maloney, correct?

22   A.    Correct.

23              (Plaintiff's Deposition Exhibit

24   No. 116 was marked for identification.)

Deborah Mannis-Gardner

Page 117

1    BY MR. FRONTERA:

2        Q.     All right.   I'm going to show you

3    another email chain, and we're going to

4    mark that as Exhibit 116.

5                    Do you know what this is?

6        A.     Yes, I do.

7        Q.     Do you recall sending and receiving

8    emails in this chain?

9        A.     Absolutely, yes.

10       Q.     And the subject of the email is

11   "Re:  Tracy Chapman - Sorry," correct?

12       A.     Correct.

13       Q.     If you go to the first email at the

14   bottom of the chain, you email

15   Rachel Maloney at Gelfand on June 26,

16   2018 --

17       A.     Yes.

18       Q.     -- saying "Hi Rachel When your

19   client Tracy Chapman was with Sony/ATV her

20   material was always denied.  Is she still

21   on the do not sample or interpolate list?

22   I have an A LIST artist who wants to use

23   the song Sorry.  URGENT - please advise.

24   Many thanks, Deborah."

Deborah Mannis-Gardner

Page 118

1                    Do you see that?

2       A.    Yes.

3       Q.    Then you receive a response from

4  someone at Gelfand named Lauren Brockie on

5  June 27th, saying "Hi Deborah!  I handle

6  the day to day on behalf of Purple Rabbit

7  Music.  Do you mean the song, 'Baby Can I

8  Hold You'?  Can you please provide

9  information or send over an official

10  request?  Thanks!  Lauren."

11                   Is that the first time you

12  learned that Tracy Chapman's song that

13  Ms. Maraj was seeking to use was called

14  "Baby Can I Hold You"?

15      A.    Correct.

16      Q.    You didn't find that earlier in

17  your research?

18      A.    I didn't exert too much energy.  It

19  was Tracy Chapman.

20      Q.    Okay.  And that -- you didn't exert

21  energy because it was Tracy Chapman because

22  she typically denies use, correct?

23      A.    Correct.

24      Q.    And then the same day -- that same

Deborah Mannis-Gardner

Page 119

1   day you forward the email to Joshua Berkman

2   with a message saying "you want to try?"

3             Do you see that?

4     A.     Yes.

5     Q.     Do you know if you had any phone

6   conversations with Joshua Berkman around

7   that time regarding trying to obtain --

8     A.     I don't recall anything specific,

9   but probably did.  I don't recall

10  specifics.

11    Q.     Okay.  At that time did you believe

12  it was likely that you would obtain

13  clearance to use "Baby Can I Hold You"?

14    A.     No.

15    Q.     And that's for the reasons you

16  already testified?

17    A.     Correct.

18    Q.     And then a week and a half later on

19  July 6, Mr. Berkman responds, asking if you

20  reached out and tried for this, correct?

21    A.     Correct.

22    Q.     Do you know if you had any

23  conversations about obtaining clearance for

24  "Sorry" with -- or with Mr. Berkman between

Deborah Mannis-Gardner

Page 120

1    the time you sent him the email, asking if

2    he wanted to try, and the response, asking

3    if you had tried?

4              MS. RILEY:  Objection.

5              THE WITNESS:  Isn't there a

6    prior email that shows that?

7    BY MR. FRONTERA:

8      Q.    I'm not sure if it shows it between

9    this time period.  I guess I'm asking --

10     A.    I don't recall.  You'd have to look

11   at the timeline of the emails.

12     Q.    Okay.  I guess just based on what

13   you can recall, did you have any

14   conversations between the date of your

15   email and the date he responded?

16     A.    I don't think I did, because I just

17   shrugged this off as someone paying me $325

18   for a denial.

19     Q.    Okay.  Set that aside.

20              (Plaintiff's Deposition Exhibit

21   No. 117 was marked for identification.)

22   BY MR. FRONTERA:

23     Q.    I'm going to show you another

24   exhibit that I'd like to mark as 117.

Deborah Mannis-Gardner

Page 121

1            Do you know what it is?

2     A.     Yes, I do.

3     Q.     What is it?

4     A.     It's my denial letter, as well as

5  me advising the client it was denied.

6     Q.     Do you recall sending and receiving

7  emails this chain?

8     A.     Yes.

9     Q.     And if you look through the chain,

10  is it a continuation of the email chain

11  that we were discussing before --

12     A.     Correct.

13     Q.     -- regarding -- regarding

14  discussions between you and representatives

15  at Gelfand, correct?

16     A.     Correct.

17     Q.     And if you look at the bottom of

18  page 1 and at the top of page 2 on

19  July 10th, 2018, you send Lauren Brockie an

20  email, stating Hi Lauren.  Attached please

21  find my formal letter request along with my

22  client on copy relating to arrange the

23  listening of the music.  Many thanks.

24  Deborah."

Deborah Mannis-Gardner

Page 122

1              See that?

2     A.     Correct.

3     Q.     Don't put that one away, but let's

4     set it aside for a second.

5                    (Plaintiff's Deposition Exhibit

6     No. 118 was marked for identification.)

7     BY MR. FRONTERA:

8     Q.     I'd like to mark this exhibit as

9     Exhibit 118.

10                   Do you recognize what's been

11    marked as Exhibit 118?

12    A.     Yes, I do.

13    Q.     Is that the letter that you

14    attached to your July 10th email?

15    A.     That's correct.

16    Q.     If you look at the subject line, it

17    says "'D' contains interpolations from

18    "Sorry (Baby can I Hold You)' written by

19    Tracy Chapman and published by Purple

20    Rabbit Music ASCAP)."

21                   Do you see that?

22    A.     Correct.

23    Q.     And if you look at the first line

24    of the second paragraph, you write:  "In

Deborah Mannis-Gardner

Page 137

1    A.    Approximating, thank you.

2    Q.    So if you look below that

3   paragraph, there's a link.

4              Do you know what that link is

5   to?

6    A.    I would assume it's to the "Sorry"

7   YouTube song by Shelly Thunder/Foxy Brown.

8    Q.    And is there a reason why you would

9   have sent the Shelly Thunder/Foxy Brown

10  version rather than a link to

11  Tracy Chapman's song?

12   A.    Because the client didn't say they

13  were interpolating Tracy Chapman's

14  composition.  They said they were

15  interpolating the Shelly Thunder, which

16  sounded different.  It's a reggae song.

17             MR. MITCHELL:  It's a what

18  song?

19             THE WITNESS:  It's a reggae

20  song.

21  BY MR. FRONTERA:

22   Q.    If you go back to Exhibit 117.

23  That was the last email chain that we were

24  just looking at.  I think it should be that

Deborah Mannis-Gardner

Page 138

1    one.

2              So going back to that email

3    chain, if you look at the first page,

4    Lauren Brockie emails you, saying "Hi

5    Deborah.  Thank you for the interest in

6    this sample request.  Unfortunately, the

7    request has not been approved.  Kind

8    regards, Lauren."

9              Do you see that?

10   A.    Yes.

11   Q.    Then about nine minutes later you

12   respond, copying Joshua Berkman, saying

13   "Thanks Lauren.  I have my client on copy

14   for visibility."

15             Other than copying Mr. Berkman,

16   did you have any other communications with

17   Mr. Berkman to let him know that the

18   request had been denied?

19   A.    I don't recall.  I don't recall if

20   there was a phone call or anything else.  I

21   just -- when something is denied, it's

22   denied and I move on.

23   Q.    And other than Mr. Berkman at this

24   time, do you recall if you would have told

Deborah Mannis-Gardner

Page 139

1    anyone else that it was denied?

2      A.    I would have updated my chart

3    reflecting denied, and the updated chart

4    would have gone to the client advising

5    them.  "The client" meaning the label and

6    everyone else.

7      Q.    Did you receive any follow-up

8    instructions from Ms. Maraj's

9    representatives regarding clearing Song D

10   after you told Mr. Berkman that the request

11   had been denied?

12     A.    I just remember being asked, Is

13   there anything we can do.

14     Q.    Is that typical for artists, in

15   your experience, after you've informed them

16   that the request has been denied, to

17   continue trying to obtain clearance?

18     A.    For DMG to continue clearance?  We

19   might go back and say, Why is it denied?

20   Is there anything we can do to change the

21   denial.  This was Tracy Chapman.  It was

22   denied.

23     Q.    And how often do you go back and do

24   those sorts of things?

Deborah Mannis-Gardner

Page 140

1    A.    Depends.  It's case-by-case based

2    on what the client asks me to do.

3    Q.    Is that what usually happens, or

4    does it -- usually they stop pursuing the

5    clearance after it's been denied?

6    A.    It varies by who the client is.

7              (Plaintiff's Deposition Exhibit

8    No. 119 was marked for identification.)

9    BY MR. FRONTERA:

10   Q.    I'd like to show you another

11   document that we're marking as Exhibit 119.

12             Do you know what it is?

13   A.    Yes, I do.

14   Q.    What is it?

15   A.    Josh asks me what can we do to get

16   to Tracy directly to get this overturned,

17   and I reiterated what I said before, she

18   doesn't approve interpolations of her

19   samples.

20   Q.    Do you recall receiving and sending

21   the emails in the chain?

22   A.    Yes.

23   Q.    And this email was sent after you

24   had informed Mr. Berkman -- this chain was

Deborah Mannis-Gardner

Page 141

1    after you had informed Mr. Berkman that the

2    request had been denied, correct?

3      A.    Correct.

4      Q.    And I think you just alluded to it,

5    but if you look at the bottom email on the

6    chain, it says -- I guess it's July 18,

7    2018.  It says "Deborah can we do a call to

8    see if we can figure out a way to get to

9    Tracy direct?  Would love to figure out a

10   way for her and Nicki to speak.  Any

11   possible way to get this cleared.  Thanks."

12                 What do you understand

13   Mr. Berkman's statement asking if he

14   could -- if you could figure out a way to

15   get Tracy to direct to mean?

16     A.    That he wanted to, I guess, reach

17   out to management or legal counsel per my

18   response.

19     Q.    So you didn't take it to mean to

20   Ms. Maraj herself?

21     A.    I'm sorry?

22     Q.    You just testified that you took it

23   to mean management or legal counsel.

24                 Did you also take it to mean

Deborah Mannis-Gardner

Page 142

1   that he was asking if there was a way to

2   reach out to Ms. Maraj herself?

3     A.    No.   I took this to mean how do we

4   get in touch with Tracy directly, and I

5   said I don't know.

6                 Is that what you're asking?

7     Q.    I guess the next line says "Would

8   love to figure out a way for her and Nicki

9   to speak."

10                Did you understand that to mean

11   that Mr. Berkman wanted Tracy Chapman and

12   Nicki Minaj to personally speak to each

13   other?

14                MS. RILEY:   Objection.

15                MR. MITCHELL:   Object to the

16   form of the question.

17   BY MR. FRONTERA:

18     Q.    Well, what did you understand that

19   line to mean?

20     A.    That they wanted to get to

21   Tracy Chapman, and I had no way to get them

22   to Tracy Chapman.

23     Q.    When you say to get to

24   Tracy Chapman, do you mean to Tracy Chapman

Deborah Mannis-Gardner

Page 143

1    directly or to her representatives?

2       A.     Her representatives.

3       Q.     Do you know why he wanted to get

4    them to speak?

5       A.     They wanted the denial reversed.  I

6    assume.

7       Q.     Then Mr. Berkman says "Any possible

8    way to get this cleared."

9              Did Mr. Berkman tell you why he

10   was asking you to continue to try to get

11   Song D cleared after you had already

12   informed him it was denied?

13      A.     One can assume that Nicki wanted it

14   cleared.

15      Q.     Did Mr. Berkman tell you anything

16   that would indicate that Nicki wanted it

17   cleared?

18      A.     He might have told me, but that

19   email pretty much tells me.  If he called

20   me or told me that -- I don't think I took

21   the phone call, because that's a shut-up

22   email that I just sent.  He wanted to get

23   on the phone, and I'm pretty much saying

24   no.

Deborah Mannis-Gardner

Page 144

1    Q.    Did Mr. Berkman ever indicate that

2    getting "Sorry" cleared was of particular

3    importance to Ms. Maraj?

4    A.    Every song that we work on for

5    Nicki was important.

6    Q.    Did you have any reason to believe

7    that this song was any more important than

8    the other songs?

9    A.    No.

10    Q.    Going back to the email, in

11    response to Mr. Berkman's email, as you

12    just alluded, you sent an email, stating

13    "Hi Josh.  Tracy doesn't approve samples or

14    interpolations and the songs out there are

15    not consent.  I am unfamiliar with Tracy's

16    Mmgt or legal counsel.  Im [sic] sorry."

17            Is that correct?

18    A.    That's correct.

19    Q.    What songs are you referring to

20    when you say the songs are not out there

21    with consent?  Is that the one song that

22    you testified to earlier?

23    A.    Yes.

24    Q.    After you sent this email, do you

Deborah Mannis-Gardner

Page 145

1   know if you made additional efforts to

2   clear "Sorry," -- or to clear Song D,

3   excuse me?

4       A.     I did not make any additional

5   efforts.  Not that I recall.  It was

6   denied.

7       Q.     And did you ever tell anyone that

8   you were able to obtain clearance for

9   Ms. Maraj to use "Baby Can I Hold You" in

10  her song?

11      A.     Never.

12      Q.     And based on your experience, you

13  knew that, without clearance from

14  Ms. Chapman, use of "Baby Can I Hold You"

15  in her song would violate Ms. Chapman's

16  copyright, correct?

17                MS. RILEY:  Objection.

18                THE WITNESS:  Yes.

19                (Plaintiff's Deposition Exhibit

20  No. 120 was marked for identification.)

21  BY MR. FRONTERA:

22      Q.     I'm going to show you another email

23  chain that I'm going to mark as

24  Exhibit 120.

Deborah Mannis-Gardner

Page 177

1    Q.    Was anything inaccurate about the

2  statement that you recall being made in the

3  article?

4    A.    It's not inaccurate that the sample

5  was denied.  But what was the purpose of

6  putting DMG in the article?

7    Q.    I guess my question would be, then:

8  What is the implication that you're worried

9  about from that statement?

10    A.    I'm the No. 1 sample clearance

11  agent in the country, if not world, and it

12  leaves a bad mark, and my publicist was

13  very upset and wanted to know if we should

14  do a response, and I said no, but -- there

15  was no reason.  They could have just said

16  the sample was denied.  They didn't need to

17  say the sample was denied from DMG

18  Clearances.

19    Q.    So I guess what was the implication

20  you were concerned about?

21    A.    The implication is I didn't do my

22  job properly.

23    Q.    And Why would that -- what would be

24  the implication that you didn't do your job

Deborah Mannis-Gardner

Page 235

1    Q.    And putting aside Tracy Chapman,

2    are most -- do you mostly deal with record

3    companies when you're dealing with

4    clearances for songs?  Is that primarily

5    who you deal with?

6    A.    It's not a most.  It's a

7    collaboration of attorneys, management,

8    labels altogether.

9    Q.    I think I heard you testify that

10   you're the largest music and sample

11   clearance firm in the world.

12           Is that right?

13   A.    I'm the No. 1 clearance company,

14   yeah.

15   Q.    Have you ever tried to count how

16   many -- what's your average year of

17   clearance of songs you do?

18   A.    We have tried, because when you

19   talked about the billing, that chart

20   reflects -- and because we're flat fees, we

21   actually can do an analysis of how many

22   samples we do a year.

23   Q.    And how many, approximately, is

24   that?

Deborah Mannis-Gardner

Page 238

1          MS. RILEY:  Objection.

2          MR. FRONTERA:  Object to form.

3  BY MR. MITCHELL:

4    Q.    Withdrawn.  You know it's not on

5  the final album, right?

6    A.    Again, it's based on emails.  I

7  never heard the song, so I'm basing it on

8  everyone telling me it did not make the

9  album.

10    Q.    So this would appear to be a leak,

11  one of those things that security tries to

12  protect against, right?

13          MR. FRONTERA:  Object to form.

14          THE WITNESS:  I would call it a

15  leak, yes.

16  BY MR. MITCHELL:

17    Q.    And that's the kind of thing that,

18  in your experience, happens sometimes in

19  the music business?

20    A.    Yes.

21    Q.    And looking at your background, you

22  started music clearance in 1990 at Diamond

23  Time?

24    A.    That's correct.

Deborah Mannis-Gardner

Page 239

1    Q.    So we're now in 2020.  That's
2    30 years of music clearance.
3    A.    I started in diapers.
4    Q.    I understand.  Was there a time
5    when record companies did clearances
6    themselves?
7    A.    When I was at RCA Records, it was
8    in-house.  When I left RCA, I took all of
9    the work with me.
10            Sony Label does stuff in-house,
11   but more and more the artists have asked me
12   to get involved and not have the label to
13   do it.  More like a hands-off kind of
14   thing.
15   Q.    So the idea of music clearance now
16   is an outsourced thing, for the most part,
17   in the industry, right?
18   A.    It really has been since -- again,
19   since 1990 it's been outsourced.
20   Q.    I don't think I asked you:  A cover
21   is when you record a song as it's
22   originally written by a new artist.
23            Is that fair?
24   A.    That's my understanding of a cover.

Deborah Mannis-Gardner

Page 276

1              THE VIDEOGRAPHER:  This

2    deposition is ending at 3:09 p.m.

3              MR. FRONTERA:  Off record a

4    discussion was had between counsel.

5    Counsel has agreed to counsel for the

6    plaintiff will relieve the court reporter

7    of any duties under the code to maintain

8    the transcript.  The reporter will deliver

9    the original copy to the plaintiff's

10   counsel, and then I'll send a pdf copy to

11   the witness for review.

12             The witness will have 14 days

13   to review the transcript after counsel's

14   receipt to make any changes that are

15   necessary.  If no changes are made, then

16   the original will stand.

17             Witness's counsel will advise

18   us within two business days after whether

19   changes were made.  Witness's counsel will

20   advise us within two business days after

21   receiving the transcript from witness

22   whether any changes were made.

23             And we will maintain custody of

24   the original and make it available for

Deborah Mannis-Gardner

Page 277

1    trial or any hearing upon reasonable

2    request.  If the original is lost,

3    destroyed, or unavailable, a certified copy

4    may be used in its place.

5                    So stipulated?

6                    MS. RILEY:  Yes.

7                    MR. MITCHELL:  You will cc me

8    on anything you send?

9                    MR. FRONTERA:  Yes.  Does that

10   work?  You might want to stipulate.

11                   MR. MITCHELL:  That's fine.

12   That's not the New York stipulations, but

13   that being said, I don't have a problem

14   with that as long as you cc me on whatever

15   you're doing.

16                   MR. FRONTERA:  I think we're in

17   California.

18                   MR. MITCHELL:  Is that right?

19   Oh, I'm sorry.

20                   (Deposition concluded at

21   3:09 p.m.)

22                   - - - - -

23

24

 1                CERTIFICATE OF REPORTER

 2   STATE OF DELAWARE:

 3                           :

 4   NEW CASTLE COUNTY:

 5

 6              I, Kimberly A. Hurley,
     Registered Merit Reporter and Notary
     Public, do hereby certify that there came

 7   before me on the 28th day of January, 2020,
     the deponent herein, DEBORAH

 8   MANNIS-GARDNER, who was duly sworn by me
     and thereafter examined by counsel for the

 9   respective parties; that the questions
     asked of said deponent and the answers

10   given were taken down by me in Stenotype
     notes and thereafter transcribed by use of

11   computer-aided transcription and computer
     printer under my direction.

12

13              I further certify that the
     foregoing is a true and correct transcript
     of the testimony given at said examination

14   of said witness.

15              I further certify that I am not
     counsel, attorney, or relative of either

16   party, or otherwise interested in the event
     of this suit.

17

18

19              _Kimberly A. Hurley_

20

                 Kimberly A. Hurley, RPR, RMR
21

22

23

24   DATED:  February 3, 2020

138

# EXHIBIT 12

DEPOSITION EXHIBIT
PX-114
KH 1/28/20
PENGAD 800-631-6989

| | |
|---|---|
| **From:** | Deborah Mannis-Gardner <deborah@dmgclearances.com> |
| **Sent:** | Tuesday, June 26, 2018 3:50 PM |
| **To:** | Joshua Berkman |
| **Cc:** | Janice Shreve |
| **Subject:** | Re: Nicki Minaj interpolation of Shelly Thunder "Sorry" |
| **Attachments:** | nicki minaj 2018.xlsx |

please see updated chART

On Tue, Jun 26, 2018 at 3:44 PM, Joshua Berkman <joshuaberkman@mac.com> wrote:
Hey Deborah can we please start the clearance process for this interpolation.

Joshua Berkman
Tel: 757-737-2434

Note: Privileged/Confidential information may be contained in this message and may be subject to legal privilege. Access to this e-mail by anyone other than the intended is unauthorised. If you are not the intended recipient (or responsible for delivery of the message to such person), you may not use, copy, distribute or deliver to anyone this message (or any part of its contents) or take any action in reliance on it. In such case, you should destroy this message, and notify us immediately. If you have received this email in error, please notify us immediately by e-mail or telephone and delete the e-mail from any computer.

--

**Deborah Mannis-Gardner**
**DMG Clearances, Inc.**
**7209 Lancaster Pike, Suite 4-330**
**Hockessin, DE 19707**
**302.239.6337 x1 voice**
**302.239.6875 fax**
**deborah@dmgclearances.com**
Visit our website at **www.dmgclearances.com**
Visit our partner company **www.tracklib.com**
http://www.imdb.com/name/nm0543434/
http://www.allmusic.com/artist/deborah-mannis-gardner-mn0001801015

**DMG HAS MOVED - PLEASE NOTE OUR NEW ADDRESS**
**DMG Clearances, Inc.**

1

140

**7209 Lancaster Pike, Suite 4-330**
**Hockessin, DE 19707**



The information contained in this e-mail, including any attachments, is confidential and may contain privileged information or work product.  If you have received this e-mail in error, please advise the sender immediately by reply e-mail, destroy all hard copies of the original message and any attachments thereto and delete same from your system. The unauthorized use, distribution, copying, or alteration of this e-mail is prohibited.  Because e-mail can be altered electronically, the

integrity in this communication cannot be guaranteed.

# EXHIBIT 13



 inc        Music Clearances for Film, Television, Samples, and New Technology

DMG Clearances, Inc.

**VIA EMAIL**

13 Robin Drive                July 10, 2018
Hockessin, DE 19707
302. 239 6337                 Lauren Brockie
302. 239 6875 fax             Purple rabbit Music

deborah@dmgclearances.com     **RE: Nicki Minaj**
                              **"D" contains interpolations from "Sorry (Baby can I Hold You)" written by Tracy Chapman  and published by Purple Rabbit Music ASCAP)**

Dear Lauren

I am currently working on a sample clearance for Cash Money/Republic recording artist Nicki Minaj

In the song **"D (working title)"** Nicki has used interpolations from the above referenced song. For security purposes, a representative from Nicki's camp will play the song for you. I have Josh on copy to arrange this meeting.

https://www.youtube.com/watch?v=3ArOBAt5Ml0
**https://www.youtube.com/watch?v=zoj9lxmGe4s**

Because of the nature of this clearance, the rights that we are looking to secure include the right to use this sample in our new composition in all audio configurations, now known or hereinafter devised, throughout the world, in perpetuity including music video rights and digital downloads and ring tones/ring tunes.

Any efforts to provide me with a response to this request as soon as possible would be sincerely appreciated. I look forward to hearing from you.

Best regards,

*Deborah Mannis-Gardner*

143

# EXHIBIT 14

DEPOSITION EXHIBIT
PX-119
KH 1b8/20
PENGAD 800-631-6989

**From:** Deborah Mannis-Gardner <deborah@dmgclearances.com>
**Sent:** Wednesday, July 18, 2018 9:28 AM
**To:** Joshua Berkman
**Cc:** G Roberson; Jean Nelson
**Subject:** Re: Tracy Chapman

Hi Josh

Tracy doesn't approve samples or interpolations and the songs out there are not with consent.

I am unfamiliar with Tracy's Mmgt or legal counsel.

Im sorry

----------------------------
Deborah Mannis-Gardner
dmg clearances, inc.
302.239.6337 x1
www.dmgclearances.com

Sent from a device with virtual keyboard and ridiculous autocorrect. Please excuse typos.

On Jul 18, 2018, at 2:49 AM, Joshua Berkman <joshuaberkman@mac.com> wrote:

> Deborah can we do a call to see if we can figure out a way to get to Tracy direct? Would love to figure out a way for her and Nicki to speak. Any possible way to get this cleared. Thanks.
>
> Joshua Berkman
> Tel: 757-737-2434
>
>
> Note: Privileged/Confidential information may be contained in this message and may be subject to legal privilege. Access to this e-mail by anyone other than the intended is unauthorised. If you are not the intended recipient (or responsible for delivery of the message to such person), you may not use, copy, distribute or deliver to anyone this message (or any part of its contents ) or take any action in reliance on it. In such case, you should destroy this message, and notify us immediately. If you have received this email in error, please notify us immediately by e-mail or telephone and delete the e-mail from any computer.

# EXHIBIT 15

FLEX 000013



CONFIDENTIAL

FLEX 000014

CONFIDENTIAL

FLEX 000015

# EXHIBIT 16

CERTIFIED COPY

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| TRACY CHAPMAN, | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| vs. | ) | CASE NO. 2:18-CV-09088-VAP-SS |
| | ) | |
| ONIKA TANYA MARAJ P/K/A | ) | |
| NICKI MINAJ AND DOES 1-10, | ) | |
| | ) | |
| DEFENDANTS. | ) | |
| | ) | |

## DEPOSITION OF ASTON GEORGE TAYLOR
### Taken on February 11, 2020



**Court Reporting • Video • Trial Presentation**

LA 310.230.9700 • SF 415.445.0105
els@elitigationservices.com • www.elitigationservices.com

Page 1

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA


TRACY CHAPMAN,                )
                             )
        Plaintiff,           )
                             ) Civil Action No:
                             ) 2:18-cv-09088-VAP-SS
     -v-                      )
                             )
ONIKA TANYA MARAJ p/k/a       )
NICKI MINAJ                   )
and DOES 1-19,               )
                             )
        Defendants.          )
                             )
----------------------- )


VIDEOTAPED DEPOSITION OF

ASTON GEORGE TAYLOR

TAKEN ON TUESDAY, FEBRUARY 11, 2020


BY:  DARBY GINSBERG, RPR

Page 2

1            UNITED STATES DISTRICT COURT

2           CENTRAL DISTRICT OF CALIFORNIA

3

4    TRACY CHAPMAN,              )
                                 )
5          Plaintiff,            )
                                 ) Civil Action No:
6                                ) 2:18-cv-09088-VAP-SS
          -v-                    )
7                                )
     ONIKA TANYA MARAJ p/k/a     )
8    NICKI MINAJ                 )
     and DOES 1-19,              )
9                                )
           Defendants.           )
10   ----------------------- )
11

12

13        DEPOSITION of ASTON GEORGE TAYLOR,

14   taken on behalf of the Plaintiff, at 7 Times

15   Square, New York, New York, commencing at

16   9:41 a.m. and ending at 4:01 p.m., Tuesday,

17   February 11, 2020, before Darby Ginsberg,

18   Registered Professional Reporter and Notary

19   Public of the State of New York, pursuant to

20   Notice.

21

22

23

24

25

Aston George Taylor

Page 3

```
 1

 2    APPEARANCES:

 3

 4    For the Plaintiff, TRACY CHAPMAN

 5          MANATT, PHELPS & PHILLIPS, LLP
            BY:  JOHN M. GATTI, ESQ.
 6          11355 West Olympic Boulevard
            Los Angeles, California 90064
 7          310.312.4169
            jgatti@manatt.com
 8

 9    For the Defendants, ONIKA TANYA MARAJ p/k/a
      NICKI MINAJ and DOES 1-19
10
            BROWNE GEORGE ROSS, LLP
11          BY:  JEFFREY A. MITCHELL, ESQ.
            BRETT D. KATZ, ESQ.
12          5 Penn Plaza, 24th Floor
            New York, New York 10001
13          212.413.2604
            jmitchell@bgrfirm.com
14          bkatz@bgrfirm.com

15
      For the Witness
16
            DAVIS WRIGHT TREMAINE, LLP
17          BY:  ELIZABETH A. McNAMARA, ESQ.
            ADAM LAZIER, ESQ.
18          1251 Avenue of the Americas
            21st Floor
19          New York, New York 10020-1104
            212.489.8230
20          lizmcnamara@dwt.com
            adamlazier@dwt.com
21

22    ALSO PRESENT:

23    MICHAEL SPAZIANI, Legal Video Specialist
      PIO FERRO
24

25
```

Page 4

1               INDEX OF EXAMINATION

2
    WITNESS:
3
    ASTON GEORGE TAYLOR
4
5   EXAMINATION                    PAGE

6       BY MR. GATTI                7

7       BY MR. MITCHELL           226

8       BY MR. GATTI              313

9       BY MR. MITCHELL           321

10      BY MR. GATTI              323

11

12              E X H I B I T S

13  NUMBER         DESCRIPTION           PAGE

14  Exhibit 127   subpoena              16

15  Exhibit 128   subpoena to produce

16                documents            38

17  Exhibit 129   document Bates

18                numbered Flex 000013

19                through 000015      100

20  Exhibit 130   one-page document

21                Bates numbered Flex

22                000002              160

23  Exhibit 131   document Bates numbered

24                Flex 000001         175

25  Exhibit 132   Instagram post      179

1                    I N D E X (CONT.)

2    NUMBER           DESCRIPTION           PAGE

3    Exhibit 133   one-page document Bates

4                  stamped Flex 00003     182

5    Exhibit 134   document Bates stamped

6                  Flex 4                 186

7    Exhibit 135   document Bates stamped

8                  Flex 000005            190

9    Exhibit 136   one-page document Flex

10                 Bates stamp 6          198

11   Exhibit 137   printout Bates stamped

12                 MS1                    205

13   Exhibit 138   printout of Hot 97

14                 app page               209

15   Exhibit 139   document Bates stamped

16                 Flex 7                 212

17   Exhibit 140   document Flex Bates

18                 stamped 8              222

19

20

21

22

23

24

25

Aston George Taylor

Page 6

```
 1                NEW YORK, NEW YORK,
 2           TUESDAY, FEBRUARY 11, 2020
 3                  AT 9:41 A.M.
 4              ASTON GEORGE TAYLOR,
 5              having been duly sworn,
 6     was examined and testified as follows:
 7              (Reporter's opening statement)
 8              THE VIDEOGRAPHER:  Good morning.
 9        My name is Michael Spaziani.  I am a
10        certified legal video specialist
11        working with eLitigation Services.  I
12        am neither a relative nor employee of
13        any of the parties and have no
14        financial interest in the outcome of
15        this action.
16              Today's date is February 11,
17        2020, and the current time is 9:41.
18        This is the videotaped deposition of
19        Aston George Taylor.  The case number
20        is Civil Action Number 2:18-cv-09008-
21        VAP-SS, and the entitled case matter is
22        Tracy Chapman versus Onika Tanya Maraj.
23        This deposition is being taken on
24        behalf of the plaintiff.  We are now on
25        the record.
```

Aston George Taylor

Page 96

1    7:00 but I just do that for people to tune

2    in and listen.  So it would happen in --

3    you know, somewhere in there.

4         Q.    Okay.  And I think we established

5    earlier that you did, in fact, at some

6    point receive a copy of the song Sorry,

7    correct?

8         A.    Yes.

9         Q.    That's yes?

10        A.    Yes.

11        Q.    Okay.  And, again, I am not going

12   to go over things again, but can you tell

13   me, to the best of your recollection, if

14   you know --

15        A.    Uh-huh.

16        Q.    -- the form that you received it

17   in?  Was it a direct message?  Was it a

18   text?  Was it an email?  Do you have any

19   recollection?

20        A.    It was text.

21        Q.    Okay.  To your phone?

22        A.    I think so.

23        Q.    Okay.  Do you only have one cell

24   phone?

25        A.    Yes.

Aston George Taylor

Page 100

1          MR. GATTI:   Let me mark as the

2     next exhibit, which will be 129.   It is

3     three pages of documents Bates numbered

4     Flex 000013 through 000015.   We will

5     mark this as 129.

6          (Exhibit 129, document Bates

7     numbered Flex 000013 through 000015,

8     marked for Identification.)

9          Q.   I am going to ask you,

10   Mr. Taylor, if you could just take just a

11   quick glance at the three pages and ask you

12   some questions about it.

13        A.   Uh-huh.

14        Q.   First off, those numbers I have

15   referred to, I will represent to you that

16   these are documents that have been produced

17   by you in connection with the subpoena that

18   was served on you.

19        A.   Uh-huh.

20        Q.   Do you -- taking a look at these,

21   do you recall or do you recognize these

22   documents?

23        A.   Yeah.

24   CO
     NF
     ID
     EN

Page 101



Aston George Taylor

Page 102





Aston George Taylor



Page 104

Aston George Taylor

Page 132



Page 133



Aston George Taylor

Page 155

1    in a little different section.  This was

2    really to whoever was following me.

3    Whoever was following me.

4          Q.    Do you know if Ms. Minaj was

5    following you at that time?

6          A.    You know something?  This is when

7    you said, I don't -- I don't know.  I don't

8    think -- I don't know.  I don't know.

9          Q.    Did you have -- as of August 11,

10   2018, you -- at or about 7:00 p.m. or

11   thereafter, you broadcast the song Sorry

12   and premiered it --

13         A.    Uh-huh.

14         Q.    -- as you testified to.  You

15   don't need to go over that, but did you

16   have any communications with Ms. Minaj

17   after August 11th?

18         A.    After August 11th?

19         Q.    After premiered.

20         A.    I know she came to the show at

21   some point or I went to Queen Radio.  I

22   went to her -- I don't know which one

23   happened first.

24         Q.    After you premiered the song

25   Sorry on August 11, 2018, on your show, did

Aston George Taylor

Page 160

1    don't know if I am using the right word.

2         Q.    Did the song Sorry, after you

3    broadcast it, was linked to Hot 97's

4    website, correct?

5         A.    I don't know.  I'm not sure.

6         Q.    Are you aware that the song

7    was -- went viral on the Internet?

8         A.    I --

9              MR. MITCHELL:  Object to the form

10        of the question.

11             THE WITNESS:  I'm not sure.

12        Q.    Are you aware of any response to

13    your show, good or bad?  The show that --

14    the show that premiered Sorry.

15        A.    I do a lot, so, you know, it's

16    not -- it's -- I don't remember.  I don't

17    remember.  I don't at the time.

18             MR. GATTI:  Let me mark as the

19        next exhibit, which will be 130.  The

20        document is a one-page document Bates

21        numbered Flex 000002.

22             (Plaintiff's Exhibit 130,

23        one-page document Bates numbered Flex

24        000002, marked for Identification.)

25        Q.    I just want to -- as you are

Aston George Taylor

Page 161

1    looking at it, I just wanted to ask you if

2    you recognize this document.

3         A.    Yes.  My Tweet.

4         Q.    Okay.  I was going to say, this

5    is a Tweet from Funk Flex; is that correct?

6         A.    Correct.  Yes.

7         Q.    Do you recall after you see it,

8    that you Tweeted this message?

9         A.    Well, it was actually a repost

10   from my Instagram.  So as I put on my

11   Instagram, it went through my Twitter at

12   the same time.

13        Q.    And just for the record, it says,

14   "Shhh!!!!  TONIGHT 7:00 p.m.!!!  Nicki gave

15   me something!!!  @ Nicki Minaj featuring ft

16   @Nas.  (Not on her album).  Going to stop

17   the city tonight."  With many exclamation

18   points, and it's a reference to Instagram

19   at the bottom.

20              Is that a -- what you were

21   saying, that was a --

22        A.    Post.  So there is probably a

23   picture associated with it on the Gram.

24        Q.    Okay.  And it was reTweeted, as

25   it says, 1,030 times.  You don't have any

Page 171

1    your possession, correct?

2         A.    When I posted this?

3         Q.    Yeah.

4         A.    Yes.

5         Q.    Okay.  Do you recall when in the

6    time period between Ms. Minaj asking for

7    your -- for you to text your mobile number

8    to her on August 10th and 1:55 p.m. on

9    August 11th, when you actually received

10   possession of the song Sorry?

11        A.    From -- you are saying if I -- if

12   she --

13        Q.    I am saying -- no, I am just

14   saying:  Between the time that Ms. Minaj --

15        A.    I'm not sure.  I'm not sure on

16   that.  But I definitely -- somewhere in

17   between before this because I definitely

18   Tweet this after I got it.

19        Q.    Okay.  So I am correct; so

20   between the time on August 10th that

21   Ms. Minaj direct messaged you asking for

22   your -- your cell phone number and you

23   provided it to her, and 1:55 p.m. on August

24   11, 2018, you came into possession of the

25   song Sorry, correct?

Aston George Taylor

Page 182

1          Let me mark as Exhibit 133, it's

2      a document Flex 00003 Bates number.

3      One-page document.

4          (Exhibit 133, one-page document

5      Bates stamped Flex 00003, marked for

6      Identification.)

7          THE WITNESS:  Uh-huh.

8      Q.    Just after looking at this

9  document, again, is that your Twitter

10  account name and picture in the top left

11  corner?

12      A.    Yes.

13      Q.    Okay.  And this one is now at --

14  timestamped 2:34 on August 11, 2018?

15      A.    Uh-huh.

16      Q.    Which was approximately about

17  40 minutes after your previous Twitter post

18  we talked about; is that correct?

19      A.    Uh-huh.  Yes.

20      Q.    Do you -- can you tell me why

21  there is an -- it's another post of the

22  same -- of the prior posting?

23      A.    It's the same thing?  I mean, I

24  might Twitter.  Okay.  So sometimes the way

25  that Facebook is, you may see a couple of

Aston George Taylor

Page 183

1    Tweets more than once.  Sometimes it just

2    does it.  I mean, I would have wanted it to

3    go out more than once.

4        Q.   And I will show you the post in

5    the prior exhibit, and the post in this

6    exhibit appear to be exactly the same

7    instead of spelling Nicki with a "Y" in the

8    previous post, and I can show you your

9    spelling?

10       A.   Might be an "I"?

11       Q.   Yes, when you say Nicki gave me

12   something, now it's spelled with an "I."

13       A.   It's not spelled with an I.

14           MS. McNAMARA:  This is with an

15       "I" too.

16           MR. GATTI:  The other one.

17           MS. McNAMARA:  Oh, the other one

18       is a "Y."  I am sorry.

19           THE WITNESS:  I am not sure.  I

20       might have corrected it.

21           MS. McNAMARA:  Oh.

22           THE WITNESS:  I don't know.

23       Q.   Again, you are the only one

24   controlling these submissions, these

25   postings?

Aston George Taylor

Page 194

1    my section, so I would have had to have

2    sent it to the guy running the board.  I

3    would have had to send it to the guy who

4    has my computer.

5         Q.    Who are those individuals?  Who

6    ran the board?

7         A.    I'm not sure who was running it

8    that day, but I probably sent it to Tat,

9    and he probably sent it to whoever -- if he

10   wasn't, he would send it to whoever is

11   running it.  I mean, it will take it

12   through like three or four people.

13        Q.    And who had your computer you

14   said?

15        A.    A guy HR.

16        Q.    Who is that?

17        A.    Former intern.

18        Q.    What's his name?

19        A.    HR.  It really is the letter "H"

20   and letter "R."

21        Q.    Do you know him by any other name

22   other than HR?

23        A.    I just know him as --

24        Q.    Was he hired by the station or

25   directly by you?

Aston George Taylor

Page 210

1          app page, marked for Identification.)

2          Q.    For the record, it's Exhibit 9,

3    number 9.  Just looking at this, do you

4    have any recollection of what this is?

5          A.    It looks like it's a Hot 97 app;

6    is that correct.

7          Q.    That is a printout of the Hot 97

8    app page.

9          A.    Uh-huh.

10         Q.    And there is a reference to your

11   show.

12         A.    Uh-huh.

13         Q.    And it says, halfway through --

14   down it says, "Funk Flex mix premier of

15   Nicki Minaj and Nas."

16         A.    Yep.

17         Q.    And it shows an air date of

18   Saturday, August 11, 2018, at 7:00 p.m.

19   Eastern Time; is that --

20         A.    Pow.

21         Q.    -- accurate to your reflection as

22   to when the premier occurred?

23         A.    Yeah.

24         Q.    Do you know if through this app

25   Sorry was posted on the Hot 97 app?  Can

Page 212

1    accessed through the link, through the app?

2         A.    I think the mix, meaning that it

3    may be within nine or ten records, but

4    it's -- it's there, you know.

5         Q.    Uh-huh?

6         A.    It would be -- it's never

7    usually -- I don't think -- it never goes

8    to a song.  It goes to a mix or it probably

9    take -- if I played that song for seven

10   minutes, it probably has a 30-minute mix of

11   songs I played before and after.  I think.

12   That's usually.

13        Q.    I understand.  Thanks.

14              After you received a copy of the

15   song Sorry, did you send it to anyone else?

16        A.    When I -- well, the board

17   operator on my computer, HR and Tat.

18        Q.    Okay.  Anybody else you recall

19   sending this out to?

20        A.    I don't recall sending it to

21   anyone.

22              (Exhibit 139, document Bates

23         stamped Flex 7, marked for

24         Identification.)

25              MR. GATTI:  Let me mark as 139,

Page 213

1        Flex document number 7.  It's a

2        one-page document.  It has a reference

3        to some redacting.  It is a -- from DJ

4        HR to Funk dated August 11, 2018, at

5        4:48 p.m. Eastern Time.

6        Q.    So DJ HR,

7   DJheavyrotation@GMail.com.  Do you see

8   that?

9        A.    Same person, yes.

10        Q.    So that's the HR person who you

11   were referring to?

12        A.    Uh-huh.

13        Q.    You had at the bottom there what

14   appears to be a message, an email from you,

15   DJ Funk Flex@GMail.com wrote, "Don't email

16   to anyone," and then there is an attachment

17   to a document, which is entitled

18   Sorry72518master.  Mp3; do you see that?

19        A.    Yes.

20        Q.    And it's signed or at least at

21   the end it says Funk Flex?  Do you recall

22   sending this email to DJ HR?

23        A.    Yep.  I remember.

24        Q.    And was it sent on or about

25   August 11 at 2:43 p.m. on 2018?

Aston George Taylor

Page 214

1       A.     I am not sure of the time, but I
2    sent it.
3       Q.     Do you have any reason to doubt
4    it was sent at that time?
5       A.     No.
6       Q.     Okay.  Did you and DJ HR have any
7    discussions about sending it to him?
8       A.     No.
9       Q.     What was the purpose for you
10   sending it to DJ HR?
11      A.     So he could put it in my
12   computer.
13      Q.     And was that in preparation for
14   the show broadcast?
15      A.     It plays out of my computer in
16   the mix booth.
17      Q.     You said, "Don't email to
18   anyone."  What did you mean by that?
19      A.     That, you know, I just don't want
20   any -- I don't want the other stations to
21   get it.
22      Q.     How did you know that anybody you
23   were getting this recording of Sorry from
24   wasn't already talking to another station?
25      A.     That's why I got to get it on

Page 315

1        A.      No.

2        Q.      Okay.

3        A.      Uh-uh.

4        Q.      Were you ever contacted by anyone

5    regarding an investigation into how Sorry

6    was leaked to you?

7        A.      No.

8        Q.      You said that it was your

9    understanding that Nas didn't want the --

10   you had heard, I think you said, that Nas

11   didn't want the song Sorry to come out?

12       A.      Well, I just know that I heard

13   that he didn't want -- I heard that he just

14   didn't want to be rapping with her.  It

15   wasn't a particular song.

16       Q.      Who did you hear that from?  Do

17   you recall?

18       A.      I mean, you know, these rappers,

19   just, you know, people, people who are in

20   the business that, you know, look, it made

21   him look mushy.  Regardless, it's his

22   image.

23       Q.      Okay.  With respect to these

24   interns and bloggers that work with you, is

25   it -- do you recall if any one of those

328

1            I declare under penalty of perjury

2    under the laws of New York that the

3    foregoing is true and correct.

4         Dated this 18th day of February, 2019

5

6

7

8              DARBY L. GINSBERG

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Aston George Taylor

Page 325

1    February 11, 2020

2

3              ERRATA

4

5    PAGE/LINE      CHANGE/REASON

6    _____

7    _____

8    _____

9    _____

10   _____

11   _____

12   _____

13   _____

14   _____

15   _____

16   _____

17   _____

18   _____

19   _____

20   _____

21   _____

22   _____

23   _____

24   _____

25   _____

Aston George Taylor

Page 326

1

2

3

4

5

6

7

8

          ASTON GEORGE TAYLOR

9

10

11

12    Subscribed and sworn to

13    before me this        day

14    of                    2020

15    _____

16

17

18

19

20

21

22

23

24

25

**EXHIBIT 17**

CONFIDENTIAL

EXHIBIT

102

MARAJ

MINAJ000032

CONFIDENTIAL



CONFIDENTIAL

CONFIDENTIAL





CONFIDENTIAL

MINAJ000036



CONFIDENTIAL

MINAJ000037

# EXHIBIT 18

**Eric Lauritsen**

| | |
|---|---|
| **From:** | Big Juice <eljugo205@gmail.com> |
| **Sent:** | Thursday, September 5, 2019 8:46 PM |
| **To:** | Danielle Price |
| **Subject:** | Fwd: Nicki Minaj - Sorry - Chris Athens Masters |

Hello. I'm Aubry Delaine, Nicki's Engineer. Here is the email thread if have regarding "Sorry". It's between me and the Mastering engineer. Let me know if this helps. My number is 2052330560 if you need to reach me.

Thx!

---------- Forwarded message ---------
From: **Big Juice** <eljugo205@gmail.com>
Date: Mon, Aug 13, 2018 at 9:23 AM
Subject: Re: Nicki Minaj - Sorry - Chris Athens Masters
To: Gee Roberson <geemaverick@gmail.com>, Jean Nelson <Jeannelson@maverick.com>, Kurt Bradley <kurt@chrisathensmasters.com>
CC: Chris Athens <chris@chrisathensmasters.com>, DC <dc@chrisathensmasters.com>, Dave Huffman <dave@chrisathensmasters.com>

Looping in management.

On Mon, Aug 13, 2018 at 9:21 AM Kurt Bradley <kurt@chrisathensmasters.com> wrote:
  Hey Juice,

  Who's handling the billing on this one if it's not going to the label? Thanks!

  KB

  On Fri, Aug 10, 2018 at 9:04 PM DC <dc@chrisathensmasters.com> wrote:
  Hi Juice,

  Below is a link to download the clean version of **Sorry** by **Nicki Minaj:**

  http://client.chrisathensmasters.com/__CHUzkeOa3xvuR

  **Please note this link will expire after <u>one download.</u>*** *

  Let us know if there's anything else we can provide.

  Thanks!
  DC

David Castro - Assistant Engineer at Chris Athens Masters

Exhibit 152
G. Roberson
February 25, 2020
Rptr: D. Paholski

1

On Fri, Aug 10, 2018 at 9:12 PM, DC <dc@chrisathensmasters.com> wrote:
Hi Juice!

Below is a link to download the new song called **Sorry** by **Nicki Minaj**:

http://client.chrisathensmasters.com/_KTHRHhySJ3gvdR

**Please note this link will expire after <u>one download.</u>*****

Let us know if there's anything else we can provide.

Thanks!
DC


David Castro - Assistant Engineer at Chris Athens Masters

--
Sent from a touch screen
--
Aubry "Big Juice" Delaine Juicebox Entertainment (205) 233-0560
--
Aubry "Big Juice" Delaine Juicebox Entertainment (205) 233-0560

2

MINAJ000002

190

# EXHIBIT 19

CERTIFIED COPY

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| TRACY CHAPMAN, | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| vs. | ) | CASE NO.    2:18-cv-09088-VAP-SS |
| | ) | |
| ONIKA TANYA MARAJ p/k/a | ) | |
| NICKI MINAJ and DOES 1-10, | ) | |
| | ) | |
| DEFENDANTS. | ) | |
| _____ | ) | |

### VIDEOTAPED DEPOSITION OF AUBRY DELAINE
**Taken on July 27, 2020**



**Court Reporting • Video • Trial Presentation**

LA 310.230.9700 • SF 415.445.0105
els@elitigationservices.com • www.elitigationservices.com

192

AUBRY DELAINE
JULY 27, 2020

Page 1

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA


TRACY CHAPMAN,                        )
                                      )
               Plaintiff,             )
                                      )
          vs.                         )   Case Number
                                      )   2:18-cv-09088-VAP-SS
ONIKA TANYA MARAJ p/k/a               )
NICKI MINAJ and DOES 1-10,            )
                                      )
               Defendants.            )
_____)




          Videotaped Deposition of AUBRY DELAINE, taken

remotely on behalf of Plaintiff, at Los Angeles,

California, beginning at 11:04 a.m. and ending at

2:48 p.m., on July 27, 2020, before Christianne Lee

Fong, CSR Number 7559, CCRR.

AUBRY DELAINE
JULY 27, 2020

Page 2

```
 1    APPEARANCES:

 2        FOR THE PLAINTIFF TRACY CHAPMAN:

 3            MANATT, PHELPS & PHILLIPS, LLP
              BY:  JOHN M. GATTI, ESQ.
 4            (Via Videoconference)
              BY:  NICHOLAS FRONTERA, ESQ.
 5            (Via Videoconference)
              2049 Century Park East
 6            Suite 1700
              Los Angeles, California 90067
 7            310.312.4169
              jgatti@manatt.com
 8            nfrontera@manatt.com

 9

          FOR DEFENDANT ONIKA TANYA MARAJ p/k/a NICKI MINAJ:
10
              BROWNE GEORGE ROSS LLP
11            BY:  PETER W. ROSS, ESQ.
              (Via Videoconference)
12            2121 Avenue of the Stars
              Suite 2800
13            Los Angeles, California 90067
              310.274.7100
14            pross@bgrfirm.com

15

          ALSO PRESENT:
16
              Collette Stark, Videographer
17            (Via Videoconference)

18

19

20

21

22

23

24

25
```

AUBRY DELAINE
JULY 27, 2020

Page 3

1                    I N D E X

2  W I T N E S S :

3  AUBRY DELAINE                              PAGE

4        BY MR. GATTI:                          7

5        BY MR. ROSS:                         114

6        BY MR. GATTI:                        120

7

8

9  INFORMATION REQUESTED

10                    PAGE      LINE

11                     20        10

12

13

14  QUESTIONS INSTRUCTED NOT TO ANSWER

15                    (None)

16

17

    EXHIBITS PREVIOUSLY MARKED AND ATTACHED:
18
    PLAINTIFF'S           DESCRIPTION          PAGE
19
    Exhibit 117    Email Chain, UMG CONFIDENTIAL    54
20                 000002 - 000006

21  Exhibit 146    Email Chain, Blueprint000004 -   59
                   Blueprint000005
22
    Exhibit 152    8/10/18 Email Chain, MINAJ       86
23                 0000001 - MINAJ 0000002

24  Exhibit 153    Minaj and Flex Instagram         80
                   Messages, FLEX 000013 - FLEX
25                 000015

AUBRY DELAINE
JULY 27, 2020

Page 4

1   EXHIBITS PREVIOUSLY MARKED AND ATTACHED:   (Continued)

2   PLAINTIFF'S              DESCRIPTION                   PAGE

3   Exhibit 154    Flex Instagram Post,              78
                   EMMIS000004
4

5

6   EXHIBITS MARKED:

7   PLAINTIFF'S              DESCRIPTION                   PAGE

8   Exhibit 158    Subpoena to Testify at a          33
                   Deposition in a Civil Action
9

    Exhibit 159    Subpoena to Produce Documents,    34
10                 Information, or Objects or to
                   Permit Inspection of Premises
11                 in a Civil Action

12  Exhibit 160    8/10/18 Email from                106
                   dc@chrisathensmasters.com to
13                 Big Juice

14  Exhibit 161    Email Chain                       109

15

16

17

18

19

20

21

22

23

24

25

AUBRY DELAINE
JULY 27, 2020

Page 5

1          Los Angeles, California; Monday, July 27, 2020

2

3               THE VIDEOGRAPHER:  We are on the record.

4               My name is Collette Stark.  I'm a notary

5     public contracted by eLitigation Services.  I'm not

6     interested in this action, nor am I a relative or

7     employee of any of the attorneys or any of the

8     parties.

9               Today is July 27, 2020.  The time is

10    11:04 a.m.  This video deposition is taken remotely

11    via LiveLitigation.  The name of the case is "Chapman

12    vs. Minaj," filed in the United States District Court,

13    Central District of California, Case Number

14    2:18-cv-09088-VAP-SS.  This is Volume I in the

15    videotaped deposition of Aubrey Delaine.

16              Would the attorneys introduce themselves and

17    state whom you represent.

18         MR. GATTI:  Yes.  This is John Gatti,

19    G-a-t-t-i.  I'm appearing and representing Ms. Tracy

20    Chapman, the plaintiff in this matter.

21         MR. FRONTERA:  This is Nick Frontera, also on

22    behalf of the plaintiff, Tracy Chapman.

23         MR. ROSS:  Pete Ross, representing Onika

24    Maraj.

25              THE VIDEOGRAPHER:  We are ready to proceed.

AUBRY DELAINE
JULY 27, 2020

Page 6

1           The court reporter today is Christianne Fong

2      with eLitigation Services.  She will administer the

3      oath.

4           THE REPORTER:  The attorneys participating in

5      this deposition acknowledge that I am not physically

6      present with the witness and that I will be reporting

7      this deposition remotely.  They further acknowledge

8      that, in lieu of an oath administered in person, the

9      oath will be administered remotely and the witness

10     will declare that his/her testimony in this matter is

11     under penalty of perjury.

12          Before we proceed, I will ask counsel to

13     agree on the record that there is no objection to my

14     administering a binding oath to this witness not

15     appearing personally before me.

16          Please state your name and agreement on the

17     record.

18          MR. GATTI:  John Gatti --

19          THE WITNESS:  I'm sorry.

20          MR. GATTI:  I'm sorry, Mr. Delaine.

21          This is John Gatti.  I agree.

22          MR. ROSS:  Pete Ross.  I agree.

23

24                    AUBRY DELAINE,

25             having been duly affirmed, was

AUBRY DELAINE
JULY 27, 2020

Page 7

1              examined and testified as follows:

2

3                        EXAMINATION

4    BY MR. GATTI:

5        Q    Okay.  Good morning, Mr. Delaine.  My name is

6    John Gatti.  We met a little bit earlier at the

7    beginning.  As I stated earlier, I represent the

8    plaintiff in this case, Tracy Chapman.  I'm just going

9    to go -- very nice to meet you.

10            I'm going to go over the guidelines for a

11   general deposition to show you -- talk through some of

12   the instructions, so hopefully make this go smoothly

13   and to go ahead and get you out of here in a timely

14   fashion.  We appreciate you taking the time out of

15   your day today, and we will try to make this go as

16   quickly as possible.

17            This is a unique situation, the video.  So

18   I'll apologize for any interruptions --

19            THE VIDEOGRAPHER:  We're going to need to go

20   off the record, please.

21            Off the record.  The time is 11:08 a.m.

22            (A discussion was held off the record.)

23            THE VIDEOGRAPHER:  We are back on the record.

24   The time is 11:10 a.m.

25   ///

AUBRY DELAINE
JULY 27, 2020

Page 15

1          Generally speaking, how would you describe

2    your services that you provide as an engineer working

3    with Ms. Maraj when the two of you are working on a

4    recording?

5        A    My services are to record and engineer the

6    audio.  Or the audio recordings that she makes.  I

7    record the songs and prep the songs for release to the

8    public.  In a general sense.  Like recording, mixing,

9    and mastering services.

10       Q    While you're providing those services for

11   Ms. Maraj, do you maintain possession of the

12   recordings that you are working on --

13       A    Yes.

14       Q    -- with Ms. Maraj?

15          Is there anyone else during these recording

16   sessions that obtains copies of any recordings while

17   they're being worked on?

18       A    Yes.

19       Q    Who else would get copies?  Specifically with

20   Ms. Maraj.

21       A    Mostly -- mostly it would be her and that's

22   it.  Well -- yeah, mostly just her.

23       Q    As you said earlier, I assume it's important

24   to you and Ms. Maraj that while you're working on

25   recording before the release to the public, that you

AUBRY DELAINE
JULY 27, 2020

Page 16

1    and she maintain strict confidence on the recordings?

2         A    Yes.

3         Q    Are there procedures that you and Ms. Maraj

4    put in place to make sure that the recordings you and

5    she are working on do not get leaked inadvertently to

6    the public or intentionally by somebody who wants to

7    get access to her work?

8         A    Yes.

9         Q    Can you describe for us generally what you do

10   to protect the songs and the recordings from getting

11   out before she wants them to get out?

12        A    Basically, limit the amount of transfers.

13   The type of transfers are normally -- limited or very

14   secure, meaning that if I have to send a song to

15   someone, I guess, outside of the room at the time or

16   someone else, it will be, like, an encrypted link and

17   it will only go out to whoever has to have it, you

18   know, for legal purposes or for marketing purposes or

19   whatever purposes.

20        Q    And is that always the process that you and

21   Ms. Maraj follow, when a link for any of her

22   recordings go out, that they're encrypted?

23        A    Yes.  Yes.

24        Q    How do you normally -- excuse me.  What is

25   the mode of transferring such recordings when

AUBRY DELAINE
JULY 27, 2020

Page 17

1    Ms. Maraj asks you to send a recording to a third
2    party?
3        A    A third party, it's either text message, if
4    that's applicable, which is the most secure way we
5    transfer music.  Other than that, it would be a
6    encrypted link through email.
7        Q    And in your experience have you been the one
8    that, when a recording of Ms. Maraj's was to be sent
9    out, whether through text message or encrypted email,
10   to a third party, are you the one who is tasked with
11   sending that out?
12       A    Yes.
13       Q    How long have you been working for Ms. Maraj?
14   When did you start working for her?
15       A    Six years.  It was February 2014.
16       Q    And is it correct to say that since
17   February 2014 you have worked with Ms. Maraj on every
18   single one of her recordings?
19       A    Yes.
20       Q    And this is just background.
21            In those situations where you worked with
22   Ms. Maraj, has that always been as a recording
23   engineer for her?
24       A    Yes.
25       Q    Have you been the sole engineer on

AUBRY DELAINE
JULY 27, 2020

Page 18

1    Ms. Maraj's recordings since 2014?

2         A    I've been the sole recording engineer, yes.

3         Q    Okay.

4              Others that have testified in this matter

5    have described you as the person who -- as you have

6    just told me, but I just want to see if this is

7    your -- you agree with this description -- that you

8    are the person who all of Ms. Maraj's recordings run

9    through.

10             So, if somebody wants to get a recording of a

11   Ms. Maraj recording that she's working on, they would

12   have to go through yourself.

13             Is that how you understand it?

14        A    Yes.  Generally, yes.  For the most part,

15   yes.  That's correct.

16        Q    Have you ever, since working with Ms. Maraj

17   since 2014, February of 2014 to the present, do you

18   recall ever sending out any recordings of Ms. Maraj's

19   to a third party without you receiving an instruction

20   from Ms. Maraj to send out that recording?

21        A    No.

22        Q    It's not your practice --

23        A    For unreleased music, no.

24        Q    Okay.

25             What about for music that's already been

AUBRY DELAINE
JULY 27, 2020

Page 22

1    hopefully very quickly today, and I appreciate you're

2    doing a great job so far as far as responding and

3    waiting for me; so that's great.

4            I didn't say this before, but even though

5    we're in this strange setup, if at any time you want

6    to take a break, you know, feel free to let us know.

7    So I just want to make you know that.

8        A    Okay, thank you.

9        Q    Sure.

10           From the time that you started working with

11   Ms. Maraj in February 2014 to the present date, has

12   Ms. Maraj ever reprimanded you or objected to -- well,

13   first off, let me say, has she ever reprimanded you

14   for sending out a recording that has not been released

15   without her permission?

16       A    No.

17       Q    Have you from that date, February 2014 to the

18   present date, have you ever to your knowledge released

19   a unreleased Maraj recording to a third party without

20   Ms. Maraj's instruction to do so?

21       A    No.

22       Q    Have you ever been the subject of an inquiry

23   from Ms. Maraj or any of her representatives

24   investigating any potential leaks of Ms. Maraj's

25   unreleased recordings since the time you started to

AUBRY DELAINE
JULY 27, 2020

Page 83

1    middle of the page, there's a reference to, August 3,

2    "I will make a movie," which is from Flex.

3             And then on August 10, I will represent that

4    there's a Instagram message from Ms. Maraj that says

5    (as read):

6                 You got me tonight?  The song is me

7                 and Nas.

8                 Again, other than the recording of "Sorry,"

9    are you aware of any other song that you worked on

10   with Ms. Maraj that featured Nas other than "Sorry"?

11      A    At that moment in time, no, sir, I was not

12   aware.

13      Q    If you turn for us to the second page of this

14   exhibit.  If you look at that, Mr. Delaine, again,

15   we're talking about August 10.  Again, there's a

16   repeat of this from Ms. Maraj, "You got me tonight?"

17             Then there's some redaction.  Ms. Maraj asks

18   for -- says "Send your number to Flex," and there's a

19   reference to a number.

20             Do you have any recollection if that's Flex's

21   phone number?  Starting with 646?

22      A    I have no recollection of his phone number,

23   no, sir.

24      Q    Then August 10 Ms. Maraj writes to Flex

25   messages, "Okay, I'll text," after she receives Flex's

AUBRY DELAINE
JULY 27, 2020

Page 86

1     Q     I'm sorry.

2     A     Go ahead, I'm sorry.

3           I'll say no, he did not, not to my

4     recollection.

5     Q     Let me ask you, the exhibits that I've shown

6     you, Exhibit 154 and 153, does it refresh your

7     recollection at all that someone had asked you to get

8     a master of "Sorry" in or about August of 2018?

9     A     I'm sorry, I don't recall anyone reaching out

10    for the master to "Sorry."

11    Q     Did you ever gain knowledge one way or the

12    other whether Ms. Maraj had actually texted a copy of

13    "Sorry" to Flex?

14    A     No, I did not have any knowledge of that, no,

15    sir.

16    Q     Let me mark Exhibit -- a document which was

17    previously marked as Exhibit 152.  It is Number 7 on

18    the tab.  It's an email chain regarding mastering

19    "Sorry."

20          (Exhibit 152 previously marked.)

21    BY MR. GATTI:

22    Q     If you look at the very bottom of the first

23    page of Exhibit 152, which is marked Minaj 0000001 --

24    and the second page is 02, Minaj 02.

25          If you look at the very bottom of the first

AUBRY DELAINE
JULY 27, 2020

Page 87

1    page, though, there's a mention of David Castro,

2    assistant engineer at Chris Athens Masters.

3              And as we get along to the second page of

4    that document -- Collette -- at the very top it's --

5    Mr. Castro on Friday, August 10, 2018, at 9:12 p.m.

6    wrote (as read):

7                Hi Juice!  Below is a link to

8             download a new song called "Sorry" by

9             Nicki Minaj.

10            And there's a link there.  (As read):

11               Please note that this link will

12            expire after one download.  Let us know

13            if there's anything else we can provide.

14            Thanks, DC.

15            You're familiar with David Castro, assistant

16    engineer at Chris Athens Masters?

17       A    Yes.

18       Q    Okay.  And have you seen this document

19    before?

20       A    Yes.

21       Q    So is it correct that on August 10, 2018, at

22    9:12 p.m. that Mr. Castro sent you a link to download

23    the new song called "Sorry" by Nicki Minaj?

24       A    Yes.

25       Q    It says that the link will expire after one

AUBRY DELAINE
JULY 27, 2020

Page 88

1    download.

2         Is that normal course to maintain

3    confidentiality?

4         A    Yes.

5         Q    Is that an encrypted link?

6         A    I don't recall -- yes -- I mean, can I say

7    that this -- do I remember if this link was encrypted

8    or not?  No, do I not.  But normally it is.  Normally

9    it is, yeah.

10        Q    Like, looking at the link itself, can you

11   tell one way or the other whether it's encrypted?

12        A    No, I can't tell by looking at it, no.

13        Q    Does this refresh your recollection that on

14   August 10, 2018, you had asked Mr. Castro of Chris

15   Athens Mastering to send you a link of "Sorry"?

16        A    Actually, no.  I asked him to send me all of

17   the songs that they've mastered.  I don't recall

18   asking specifically for "Sorry," no.

19        Q    But you don't have any reason to doubt that

20   Mr. Castro sent his email to you only providing the

21   song "Sorry" and a link to download the song "Sorry"

22   on August 10, 2018?  You don't have any reason to

23   doubt that this was in response to a request you had

24   made?

25        A    I'm sorry, but I don't recall the specifics

1    STATE OF CALIFORNIA      )
                              ) SS.
2    COUNTY OF LOS ANGELES    )

3

4         I, Christianne Lee Fong, CSR 7559, CCRR, a

5    Certified Shorthand Reporter in and for the County of

6    Los Angeles, the State of California, do hereby

7    certify:

8         That, prior to being examined, the witness

9    named in the foregoing deposition was by me duly sworn

10   to testify the truth, the whole truth, and nothing but

11   the truth;

12        That said deposition was taken down by me in

13   shorthand at the time and place therein named, and

14   thereafter reduced to typewriting by computer-aided

15   transcription under my direction.

16        I further certify that I am not interested in

17   the event of the action.

18        In witness whereof, I have hereunto

19   subscribed my name.

20

21   Dated:  August 8, 2020

22

23

24   _____

25   Christianne Lee Fong, CSR 7559, CCRR

                                                 125

Page 124

```
 1    STATE OF CALIFORNIA      )
 2                             )  Ss.
 3    COUNTY OF LOS ANGELES    )
 4
 5
 6            I, AUBRY DELAINE, hereby certify under
 7    penalty of perjury under the laws of the State of
 8    California that the foregoing is true and correct.
 9            Executed this 14th day of August,
10    2020, at Marina Del Rey            , California.
11
12
13
14                            AUBRY DELAINE
15
16
17
18
19
20
21
22
23
24
25
```

210

# EXHIBIT 20



**Funk Flex !!!!!** ✔
@funkflex

[ Follow ]

Shhhhhhh!!!! TONIGHT 7PM!!! NICKY GAVE ME SOMETHING!!! @nickiminaj ft @nas !!! (NOT ON HER ALBUM!) GONNA STOP THE CITY TONIGHT!!!!!!!!!!!!! instagram.com/p/BmWQWRbDxt_/ ...

1:55 PM - 11 Aug 2018

**1,030** Retweets  **2,435** Likes

162     1.0K     2.4K

Tweet your reply

**Marouf** @Marouf08 · 11 Aug 2018
Replying to @funkflex @NICKIMINAJ @Nas
Make sure Nicki is apologizing to all the kids who gets bullied everyday because of their body. She used that word "Fat" to body shaming @djkhaled. This should be outrageous to all the people. Please, do this to all the people who gets discriminated because of their body.

1

**Houston1223** @Houston12231 · 11 Aug 2018
Replying to @funkflex @NICKIMINAJ @Nas
I hope you can keep playing Nicki music she's the best better yet the Queen 👸

11

**LEXITRON**🏚 @onikaslaysme · 11 Aug 2018
Replying to @funkflex @NICKIMINAJ @Nas
who tf is nicky

1     7

EXHIBIT
130
2/11/26  DG

FLEX 000002

212

# EXHIBIT 21



**Funk Flex !!!!!** ✔
@funkflex

Follow ⌄

Shhhhhhh!!!! TONIGHT 7PM!!! NICKI GAVE ME SOMETHING!!! @nickiminaj ft @nas !!! (NOT ON HER ALBUM!) GONNA STOP THE CITY TONIGHT!!!!!!!!!!!!! instagram.com/p/BmWQWRbDxt_/ ...

2:34 PM - 11 Aug 2018

**181** Retweets **460** Likes

♡ 20        ⟲ 181        ♡ 460        ✉

Tweet your reply

**Tom Crewz** @CrewzTom · 11 Aug 2018
Replying to @funkflex @NICKIMINAJ @Nas
WACK

♡        ⟲        ♡        ✉

**Keyshawn (Karris) Head** @JohnSmithIsIt · 11 Aug 2018
Replying to @funkflex @santanamarley44 and 2 others
Wtf dope dealing fyntnal slanging think they worth a bill nas lmao she said you nas bay meaning the bay meaning me ok we made a song I disnt get clearance its on my page we been talking ok stop the b.s. wit ya self

♡        ⟲        ♡        ✉

**Jaye Cole** 🏴 @JayeWinehouse · 11 Aug 2018
Replying to @funkflex @NICKIMINAJ @Nas
Sir it's "N I C K I"

♡        ⟲        ♡        ✉

EXHIBIT
133
2/11/20 DG

FLEX 000003

214

# EXHIBIT 22

Redact A/C

**From:** DJ HR <djheavyrotation@gmail.com>
**Date:** August 11, 2018 at 4:48:28 PM EDT
**To:** Funk <djfunkflex@gmail.com>
**Subject: Re: 01 Sorry - 72518 - master.mp3**

Ok

Sent from my iPhone

> On Aug 11, 2018, at 3:43 PM, Funk <djfunkflex@gmail.com> wrote:
>
> Don't email to anyone
>
> <01 Sorry - 72518 - master.mp3>
>
>
> FunkFlex



EXHIBIT
139
2/11/20  DG
PENGAD 800-631-6989

1

CONFIDENTIAL

FLEX 000007

# EXHIBIT 23







EMMIS 000001

# EXHIBIT 24



# EXHIBIT 25

| Message | |
|---|---|
| **From:** | Crawshaw-Sparks, Sandra A. [/O=PROSKAUER/OU=FIRST ADMINISTRATIVE GROUP/CN=RECIPIENTS/CN=SCRAWSHAW29776577] |
| **Sent:** | 11/18/2019 7:10:28 PM |
| **To:** | Weil, Simona [/o=Proskauer/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=Weil, Simona97c] |
| **Subject:** | Fwd: Tracy Chapman |

Sent from my T-Mobile 4G LTE Device

-------- Original message --------
From: G Roberson <geemaverick@gmail.com>
Date: 11/18/19 5:54 PM (GMT-05:00)
To: "Crawshaw-Sparks, Sandra A." <SCrawshaw@proskauer.com>
Subject: Fwd: Tracy Chapman

███████████████████████████████████████

Begin forwarded message:

> **From:** G Roberson <Geemaverick@gmail.com>
> **Date:** August 11, 2018 at 4:47:33 AM GMT+2
> **To:** "Phillips, Lee" <lphillips@manatt.com>
> **Cc:** Peter Bittenbender <peter@massappeal.com>, "tgelfand@grfllp.com" <tgelfand@grfllp.com>
> **Subject: Re: Tracy Chapman**

Hello, not sure why I was on this chain being that I don't represent the producer or asked the producer to reach out on this matter. I was made aware of the denied use via our email on Aug 2nd and the album is in stores without the requested sample.

On Aug 10, 2018, at 3:06 PM, Phillips, Lee <lphillips@manatt.com> wrote:

> I understand. Perhaps the manager can respond directly as I sent another e mail after this one, but I won't bother you further on this.
>
> **Lee Phillips**
> Partner
>
> ─────────────────────
>
> **Manatt, Phelps & Phillips, LLP**
> 11355 W. Olympic Blvd
> Los Angeles, CA 90064
> **D** (310) 312-4111  **F** (310) 914-5850
>
> lphillips@manatt.com
> **manatt.com**

Exhibit 150
G. Roberson
February 25, 2020
Rptr: D. Paholski

Confidential

CONFIDENTIALITY NOTICE: This e-mail transmission, and any documents, files or previous e-mail messages attached to it, may contain confidential information that is legally privileged. If you are not the intended recipient, or a person responsible for delivering it to the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of any of the information contained in or attached to this message is STRICTLY PROHIBITED. If you have received this transmission in error, please immediately notify us by reply email and destroy the original transmission and its attachments without reading them or saving them to disk. Thank you.

**From:** Peter Bittenbender [mailto:peter@massappeal.com]
**Sent:** Friday, August 10, 2018 1:49 PM
**To:** Phillips, Lee
**Cc:** tgelfand@grfllp.com; geemaverick@gmail.com
**Subject:** Re: Tracy Chapman

Hi Phillip

Thank you for your time.

I have made it clear I don't represent Nicki or have any control over the record. I was told to call you by someone who works with Ms Chapman and did so on behalf of the songs producer. I have never even heard the final song as mentioned when we spoke. I just saw your email so wanted to follow up on this thread to make sure it was all clear.

Thank you.

On Wed, Aug 8, 2018 at 8:41 PM, Phillips, Lee <lphillips@manatt.com> wrote:
Just to confirm our conversation, you confirmed that the track with the proposed sample will not be on the album being released or otherwise released, since the sample is not being licensed. I am copying Nicki's manager on this e mail as you suggested. I appreciate your understanding of my client's position. I am also copying Todd Gelfand who is the business manager for Ms Chapman and handles the administration of her publishing rights.

Lee Phillips
Partner

Manatt, Phelps & Phillips, LLP
11355 W. Olympic Blvd
Los Angeles, CA 90064
**D** (310) 312-4111   **F** (310) 914-5850

lphillips@manatt.com
manatt.com

CONFIDENTIALITY NOTICE: This e-mail transmission, and any documents, files or previous e-mail messages attached to it, may contain confidential information that is legally privileged. If you are not the intended recipient, or a person responsible for delivering it to the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of any of the information contained in or attached to this message is STRICTLY PROHIBITED. If you have received this transmission in error, please immediately notify us by reply email and destroy the original transmission and its attachments without reading them or saving them to disk. Thank you.

**From:** Phillips, Lee
**Sent:** Wednesday, August 08, 2018 2:57 PM
**To:** 'peter@massappeal.com'
**Cc:** tgelfand@grfllp.com
**Subject:** RE: Tracy Chapman

In looking at the original phone message, it does appear it has to do with a Nicky Minaj release and that request has been turned down several times.

**Lee Phillips**

Blueprint000002

Partner

**Manatt, Phelps & Phillips, LLP**
11355 W. Olympic Blvd
Los Angeles, CA 90064
**D** (310) 312-4111  **F** (310) 914-5850

lphillips@manatt.com
manatt.com

CONFIDENTIALITY NOTICE: This e-mail transmission, and any documents, files or previous e-mail messages attached to it, may contain confidential information that is legally privileged. If you are not the intended recipient, or a person responsible for delivering it to the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of any of the information contained in or attached to this message is STRICTLY PROHIBITED. If you have received this transmission in error, please immediately notify us by reply email and destroy the original transmission and its attachments without reading them or saving them to disk. Thank you.

**From:** Phillips, Lee
**Sent:** Wednesday, August 08, 2018 2:53 PM
**To:** 'peter@massappeal.com'
**Cc:** tgelfand@grfllp.com
**Subject:** Tracy Chapman

I am sorry I missed your call while I was out to lunch.  I believe you are calling about a Tracy Chapman song for permission to license.  I called you back to get details, but you are not available.  If this relates to a Nicky Minaj release, the request has been rejected several times.  If something else, let me know right away.

**Lee Phillips**
Partner

**Manatt, Phelps & Phillips, LLP**
11355 W. Olympic Blvd
Los Angeles, CA 90064
**D** (310) 312-4111  **F** (310) 914-5850

lphillips@manatt.com
manatt.com

CONFIDENTIALITY NOTICE: This e-mail transmission, and any documents, files or previous e-mail messages attached to it, may contain confidential information that is legally privileged. If you are not the intended recipient, or a person responsible for delivering it to the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of any of the information contained in or attached to this message is STRICTLY PROHIBITED. If you have received this transmission in error, please immediately notify us by reply email and destroy the original transmission and its attachments without reading them or saving them to disk. Thank you.

--
Peter Bittenbender
CEO / Mass Appeal

212.343.8486 (o)
428 Broadway 2nd Floor
New York, NY 10013

Blueprint000003

# EXHIBIT 26

# CERTIFICATE OF COPYRIGHT REGISTRATION

**FORM PA**

UNITED STATES COPYRIGHT OFFICE



OFFICIAL SEAL

This certificate, issued under the seal of the Copyright Office in accordance with the provisions of section 410(a) of title 17, United States Code, attests that copyright registration has been made for the work identified below. The information in this certificate has been made a part of the Copyright Office records.

*David Ladd*

**REGISTER OF COPYRIGHTS**
*United States of America*

| REGISTRATION NUMBER | | |
|---|---|---|
| PAu | **556-755** | |
| PA | | (PAU) |

EFFECTIVE DATE OF REGISTRATION

**OCT 20 1983**

(Month)   (Day)   (Year)

---

DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE CONTINUATION SHEET (FORM PA/CON)

---

**① Title**

**TITLE OF THIS WORK:**

Anthology of Songs by Tracy Chapman, II

**NATURE OF THIS WORK:** (See instructions)

Words and Music

**PREVIOUS OR ALTERNATIVE TITLES:**

---

**② Author(s)**

**IMPORTANT:** Under the law, the "author" of a "work made for hire" is generally the employer, not the employee (see instructions). If any part of this work was "made for hire" check "Yes" in the space provided, give the employer (or other person for whom the work was prepared) as "Author" of that part, and leave the space for dates blank.

**1**

**NAME OF AUTHOR:** Tracy Lenett Chapman

Was this author's contribution to the work a "work made for hire"? Yes...... No.. X

**DATES OF BIRTH AND DEATH:**
Born 1964 .... Died ......
(Year)   (Year)

**AUTHOR'S NATIONALITY OR DOMICILE:**
Citizen of United States ..... } or { Domiciled in ....................
(Name of Country)   (Name of Country)

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK:**
Anonymous? Yes ...... No.... X
Pseudonymous? Yes ...... No.. X
If the answer to either of these questions is "Yes," see detailed instructions attached.

**AUTHOR OF:** (Briefly describe nature of this author's contribution)
Words and Music

**2**

**NAME OF AUTHOR:**

Was this author's contribution to the work a "work made for hire"? Yes...... No ......

**DATES OF BIRTH AND DEATH:**
Born ...... Died ......
(Year)   (Year)

**AUTHOR'S NATIONALITY OR DOMICILE:**
Citizen of .................... } or { Domiciled in ....................
(Name of Country)   (Name of Country)

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK:**
Anonymous? Yes ...... No ......
Pseudonymous? Yes ...... No ......
If the answer to either of these questions is "Yes," see detailed instructions attached.

**AUTHOR OF:** (Briefly describe nature of this author's contribution)

**3**

**NAME OF AUTHOR:**

Was this author's contribution to the work a "work made for hire"? Yes...... No ......

**DATES OF BIRTH AND DEATH:**
Born ...... Died ......
(Year)   (Year)

**AUTHOR'S NATIONALITY OR DOMICILE:**
Citizen of .................... } or { Domiciled in ....................
(Name of Country)   (Name of Country)

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK:**
Anonymous? Yes ...... No ......
Pseudonymous? Yes ...... No ......
If the answer to either of these questions is "Yes," see detailed instructions attached.

**AUTHOR OF:** (Briefly describe nature of this author's contribution)

---

**③ Creation and Publication**

**YEAR IN WHICH CREATION OF THIS WORK WAS COMPLETED:**

Year August 1983

(This information must be given in all cases.)

**DATE AND NATION OF FIRST PUBLICATION:**

Date ....................
(Month)   (Day)   (Year)

Nation ....................
(Name of Country)

(Complete this block ONLY if this work has been published.)

---

**④ Claimant(s)**

**NAME(S) AND ADDRESS(ES) OF COPYRIGHT CLAIMANT(S):**

Tracy Chapman
9007 Miles Park Ave.
Cleveland, Ohio 44105

**TRANSFER:** (If the copyright claimant(s) named here in space 4 are different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright.)

---

- *Complete all applicable spaces (numbers 5-9) on the reverse side of this page*
- *Follow detailed instructions attached   • Sign the form at line 8*

DO NOT WRITE HERE

Page 1 of .... pages

PAu   556-755

EXAMINED BY
CHECKED BY

APPLICATION RECEIVED
20 OCT 1963

CORRESPONDENCE:
☐ Yes

DEPOSIT RECEIVED:
20 OCT 1963

DEPOSIT ACCOUNT
FUNDS USED:
☐

REMITTANCE NUMBER AND DATE:
17133 OCT 20 83

FOR
COPYRIGHT
OFFICE
USE
ONLY

---

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED ADDITIONAL SPACE, USE CONTINUATION SHEET (FORM PA/CON)**

**PREVIOUS REGISTRATION:**

• Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?   Yes . . . . . . . . No . . X . . . . .

• If your answer is "Yes," why is another registration being sought?   (Check appropriate box)

☐ This is the first published edition of a work previously registered in unpublished form.
☐ This is the first application submitted by this author as copyright claimant.
☐ This is a changed version of the work, as shown by line 6 of the application.

• If your answer is "Yes," give:  Previous Registration Number . . . . . . . . . . . . . . . . . Year of Registration . . . . . . . . . . . . . . .

**⑤ Previous Registration**

---

**COMPILATION OR DERIVATIVE WORK:** (See instructions)

PREEXISTING MATERIAL: (Identify any preexisting work or works that the work is based on or incorporates.)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

MATERIAL ADDED TO THIS WORK: (Give a brief, general statement of the material that has been added to this work and in which copyright is claimed.)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

**⑥ Compilation or Derivative Work**

---

**DEPOSIT ACCOUNT:** (If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.)

Name: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Account Number: . . . . . . . . . . . . . . . . . . . . . . . . . . .

**CORRESPONDENCE:** (Give name and address to which correspondence about this application should be sent.)

Name:  Tracy L. Chapman
Address:  9007 Miles Park Ave.
Cleveland,        Ohio        44105
(City)                    (State)              (ZIP)
(Apt.)

**⑦ Fee and Correspondence**

---

**CERTIFICATION:** * I, the undersigned, hereby certify that I am the: (Check one)

☑ author ☐ other copyright claimant ☐ owner of exclusive right(s) ☐ authorized agent of: Tracy Lenett Chapman
(Name of author or other copyright claimant, or owner of exclusive right(s))

of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge.

Handwritten signature: (X)  Tracy Chapman

Typed or printed name.  Tracy Lenett Chapman        Date 10/16/83

**⑧ Certification (Application must be signed)**

---

MAIL CERTIFICATE TO

Tracy Chapman
(Name)
9007 Miles Park Ave.
(Number, Street and Apartment Number)
CCleveland,        Ohio        44105
(City)        (State)        (ZIP code)

(Certificate will be mailed in window envelope)

**⑨ Address For Return of Certificate**

---

* 17 U.S.C. §506(e) FALSE REPRESENTATION—Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.

☆U.S. GOVERNMENT PRINTING OFFICE: 1978 261-022/19

Sept. 1978 - 200,000

227

**EXHIBIT 27**

| | |
|---|---|
| **From:** | Chris Athens |
| **To:** | Gatti, John |
| **Subject:** | "Sorry" info. |
| **Date:** | Tuesday, August 11, 2020 4:36:50 PM |

Below is an email from my former assistant. Apparently  **Juice**  sent it to us after texting my former assistant about it. We mastered it and sent it back.

It's not super unusual for an artist to tell us not to send a particular song to the label [or a specific person]. There can be many reasons why. We don't ask. We just follow their instructions.
The guys copied in this email are my manager [Kurt] and my other assistant [Dave].
The purpose of cc'ing them is just to keep the whole team in the loop on what we have to do that day etc.

Hope this helps. Can't find anything else that mentions this song that you don't already have.
Let me know if there's anything else.

Best,

C.

Nicki Minaj - "Sorry" - song from Serban      Nicki Minaj



**DC <dc@chrisathensmasters.com>**                                        Fri, Aug 10, 2018, 6:40 PM

to me, Kurt, Dave

Hey guys,

Just got a text from Juice saying he's gonna send us a song from Serban. Apparently this song isn't going on the album and told me not to send it to the label.

Chris Athens. Mastering Engineer @ Chris Athens Masters. Austin, TX. U.S.A.

Chris Athens Masters on Facebook

229