BROWNE GEORGE ROSS LLP
Peter W. Ross (State Bar No. 109741)
  pross@bgrfirm.com
Eric C. Lauritsen (State Bar No. 301219)
  elauritsen@bgrfirm.com
2121 Avenue of the Stars, Suite 2800
Los Angeles, California 90067
Telephone: (310) 274-7100
Facsimile: (310) 275-5697

Attorney for Defendant Onika Tanya
Maraj p/k/a Nicki Minaj

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA WESTERN DIVISION

| | |
|---|---|
| TRACY CHAPMAN,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>ONIKA TANYA MARAJ p/k/a NICKI MINAJ and DOES 1-10,<br><br>　　　　Defendants. | Case No. 2:18-cv-9088-VAP-SS<br><br>**DEFENDANT ONIKA MARAJ'S OPPOSITION TO PLAINTIFF TRACY CHAPMAN'S MOTION FOR SUMMARY JUDGMENT**<br><br>Judge: Hon. Virginia A. Phillips<br>Date:　September 14, 21020<br>Time:　2:00 p.m.<br>Crtrm.: 8A<br><br>Date Filed:　October 22, 2018<br>FPC:　　　　October 5, 2020<br>Trial Date:　October 13. 2020 |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................1

II. CHAPMAN'S "IRREFUTABLE" STORY .......................................................1

III. THE EVIDENCE ................................................................................................2

    A. Chapman ..................................................................................................2

    B. Maraj .........................................................................................................2

    C. Flex ...........................................................................................................3

    D. Aubrey Delaine .......................................................................................4

IV. ARGUMENT .......................................................................................................5

    A. Legal Standard ........................................................................................5

    B. There Are Genuine Disputes Of Material Fact As To How Flex Obtained a Copy of *Sorry* ...................................................................5

    C. The Transmission Of *Sorry* To Flex Does Not Implicate Chapman's Distribution Right ................................................................6

    D. Maraj Cannot Be Held Liable For Any Infringement By Flex ...............7

        1. Flex Was Not Maraj's Agent .........................................................7

        2. Chapman Did Not Plead Or Argue Contributory Copyright Infringement ...................................................................................8

V. THERE ARE TRIABLE ISSUES OF FACT REGARDING WILLFULNESS ..................................................................................................9

VI. CONCLUSION ..................................................................................................10

# TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

*Agee v. Paramount Communications, Inc.*,
  59 F.3d 317 (2d Cir. 1995)..................................................................................8

*Am. Broadcasting Cos., Inc. v. Aereo, Inc.*,
  573 U.S. 431 (2014)............................................................................................7

*Hollingsworth v. Perry*,
  570 U.S. 693......................................................................................................8

*Suncoast Post-Tension, Ltd. v. Scoppa*,
  No,. 4:13–cv–3125 2014 WL 12596471 (S.D. Tex. May 13, 2014) ..................8

**STATUTES**

17 U.S.C. section 106(3)..........................................................................................6, 8

17 U.S.C. section 107 ...............................................................................................1, 9

17 U.S.C. section 504 ...............................................................................................1, 2

17 U.S.C. section 504(c)(2).......................................................................................9

**RULES**

Fed. R. Civ. P. 56(a) .................................................................................................5

**OTHER AUTHORITIES**

1 Restatement (Third) of Agency, § 1.01, Comment *f* (2005)..................................8

H.R.Rep. No. 487, 92nd Cong., 1st Sess. at 138 ......................................................8

## I. INTRODUCTION

I love a good mystery story. Don't you? That is what this case is: a good mystery story. According to plaintiff Tracy Chapman, the answer to "who done it" is clear – "irrefutable" in her words. According to Chapman, defendant Onika Maraj leaked the song in issue, *Sorry*, to New York radio host Aston George Taylor, Jr. ("Flex"), who played it on the radio at her request. As shown below, however, the answer is far from clear. There is conflicting evidence and many "suspects," and a trial will be necessary to unmask the culprit.

There is a second aspect to Chapman's motion. She also argues that Maraj willfully infringed Chapman's copyright, merely by recording *Sorry* in the studio, even if the song never was released. Maraj addresses this aspect of Chapman's motion in Maraj's cross-motion for partial summary judgment. As explained in that motion, the studio recording constituted "fair use" under 17 U.S.C. section 107. Moreover, as explained below, even if the studio recording infringed Chapman's copyright, there is substantial evidence that the infringement was not willful, as asserted by Chapman, but "innocent" under 17 U.S.C. section 504.

## II. CHAPMAN'S "IRREFUTABLE" STORY

Chapman tells the following story: Maraj and fellow hip hop singer "Nas" recorded *Sorry* in the studio. She liked the song and wanted to include it on her soon-to-be-released album *Queen*. Maraj's clearance team reached out to Chapman for permission to use the song. Permission was denied. Maraj released *Queen* without the song. But Maraj came up with a plan to forward a recording of *Sorry* to Flex and have him broadcast the song on the radio. To carry out this plan, Maraj contacted Flex via Instagram message, let him know the recording would be coming, and asked him to premiere it on his show.

Then, as Chapman tells it, on August 10, 2018, Maraj must have contacted her recording engineer, Aubry Delaine. (Moving papers, p. 8.) That same day Delaine forwarded the studio recording of *Sorry* to Chris Athens Masters, to be

1  mastered. (Id.) ("Mastering" is the final stage of producing a song for an album.
2  The sound quality is rendered uniform for all songs across the album, a "fade" is
3  added at the beginning and end of the song, and the fidelity and clarity are enhanced
4  to their greatest levels.) Later, but still on August 10, 2018, Delaine received the
5  mastered copy back from Chris Athens. (Id.) The next day, August 11, Flex
6  received the mastered recording as a text on his phone. It bore the file name: <01
7  Sorry – 72518 – master.mp3>. (Id.) That evening, Flex broadcast the song on his
8  show. (Id. at p. 9.) "Maraj is guilty!" says Chapman. No need to hold a trial.

### III. THE EVIDENCE

The problem for Chapman is that the testimony of the witnesses is not nearly so simple or damning. The evidence, in many instances directly contradicts Chapman's story and leaves open many possibilities as to "who done it?"

#### A. Chapman

Chapman testifies to just a few facts: she wrote the song in issue; she holds the copyright; she would not give permission to Maraj to release *Sorry*. (Dkt. 54-2 at 7-8)

#### B. Maraj

Maraj testifies that she recorded *Sorry* with Nas. She wanted to include the song on her album *Queen*. Chapman refused to grant permission. And then, according to Maraj:

> In early August 2018, I let my passion for *Sorry* get the better of me. I thought that maybe, if Ms. Chapman heard my song on the radio, and learned of a positive reaction among listeners, she would allow me to release the song. I contacted New York radio host Aston George Taylor, Jr. ("Flex") and told him, via Instagram message:
>
> "Hey. I got a record I want u to world premier. The week album drops. U will be the only one with it. I'll have jean hit u to explain. Keep it on the low. Wait til u see who's on it. Not going on album either. No one will get it."

> A week later, on August 10, I sent a couple of additional Instagram messages to Flex, stating:
>
>> "You got me tonight?
>>
>> The song is me and Nas
>>
>> Send ur number"
>
> At the time I sent these messages, I intended to send Flex a copy of *Sorry* to play on his radio program. *That day, however, I had a change of heart. I never sent the recording.*
>
> The next day, August 11, I learned that Flex was posting on Instagram that he had gotten something *from me* that was not on my album. I became concerned that Flex had obtained *Sorry*, on his own, from some other source. I posted back:
>
>> "You can only play official album material sir."
>
> I was surprised to learn that Flex played *Sorry* on the radio that evening. I have no idea how he obtained the recording. He did not obtain it from me or, to my knowledge, from anyone I know.

(Maraj Decl, ¶¶ 4-8, emphasis added.)

Of particular note, as will be further explained below, during the same time period that Maraj was corresponding with Flex, she was also corresponding with Nas, who also performed on the *Sorry* recording. (SGD[1] ¶¶ 5, 23, 24.) On or around August 3, 2018, Maraj sent Nas what was then the "latest" mix of the "Sorry" recording. (SGD ¶ 50.) During these communications, Nas made clear his own excitement about the track and deep frustrations over Chapman's refusal to issue a license for its commercial distribution. (SGD ¶ 51.)

**C.  Flex**

Flex testified that he did *not* get the recording from Maraj, or anyone acting at her direction. Instead, he obtained it from one of his "bloggers":

> Q. Okay. And it's correct that you received that

---

[1] Maraj's Separate Statement of Genuine Facts in Dispute.

1  recording of Sorry from Ms. Maraj, correct?

2  A. I didn't receive it from Nicki Minaj.

3  Q. Who did you receive it from?

4  A. I got a lot of bloggers and people who are around me. So I put the feelers out looking for the song because I knew it existed, and one of those guys got it to me. (SGD ¶ 46)

Flex boasted that, once he knows that a recording exists, he can always obtain a copy:

If I put a feeler out for a record that I am looking for, I can get it. So I put the feelers out. I knew the record existed. (SGD ¶ 46)

When asked why he had tweeted that "Nicki give me something," Flex responded:

Well, if you are asking me why I said Nicki gave me something because I want the kids to believe that I got it from the artist so they tune in. It's called smoke and mirrors. (SGD ¶ 46)

Flex also testified that he received the recording by text. (SGD ¶ 36) And the exhibits he produced confirmed that the recording had the file name: <01 Sorry – 72518 – master.mp3>. (SGD ¶ 36)

### D. Aubrey Delaine

Delaine declares that he is a recording engineer. (Delaine Decl., ¶ 2.) He assisted Maraj in the studio with her recording of *Sorry*. (Id. at ¶ 3.) After the recording session, he sent the tape to an independent mixing engineer named Serban Ghenea. (Id. at ¶ 4.) (A recording is "mixed" by balancing the vocals and various instruments that are generally recorded on different tracks.) Delaine received the mixed recording back from Ghenea on July 25, 2018. (Id.) He received it by text. (Id.) It bore the title <01 Sorry – 72518 – master.mp3> – the same title as the copy received by Flex by text. (Id. at ¶ 7.) The numbers "72518" in the title generally indicate that the recording was made on July 25, 2018. (Id.) After receiving the mixed version from Ghenea, Delaine would have sent it to management, the record

label, and the clearance team, among others. (Id. at ¶ 5.) Delaine also sent the mixed recording of *Sorry* to Chris Athens Masters to be mastered, and he did receive back a mastered version. (Id. at ¶ 6.) The mastered version was too large a file to text or email. (Id.) Delaine never sent the mastered version or any version of *Sorry* to Flex. (Id. at ¶ 8.) He does not know who did. (Id. at ¶ 8.) It appears from the title of the recording received by Flex, and the fact that he received the recording by text, that he must have received the mixed version, created by Serban Ghenea on July 25. (Id. at ¶ 7.)

## IV. ARGUMENT

### A. Legal Standard

As both parties correctly noted in the opening briefs for their cross motions for summary judgment, summary judgment is only available "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Chapman's motion fails to satisfy this standard.

### B. There Are Genuine Disputes Of Material Fact As To How Flex Obtained a Copy of *Sorry*

Chapman's purportedly irrefutable material facts are: Maraj intended to send Flex a recording of *Sorry*; he received a recording; therefore, she must have done it. But, there is no direct evidence that Maraj, or anyone acting on her behalf, sent the recording to Flex, and Maraj denies it. That denial alone is sufficient to create a dispute of material fact, requiring the denial of this motion.

But there is a whole lot more as well. Flex also denies that he got the recording from Maraj. He says that one of his bloggers obtained it for him. According to Flex, there is no recording he cannot get, once he knows it exists. Further, there are many, many potential sources from which Flex could have obtained the recording. Flex had the "mixed" version, prepared by Serban Ghenea on July 25. Ghenea had a copy. We do not know to whom he sent copies, other

than Aubry Delaine. But Ghenea may have sent copies to others. We know that Delaine sent copies to management, the record label, and the clearance team. Delaine also sent a copy to Chris Athens Masters. We do not know who the workers were at Chris Athens Masters. We do not know to whom those workers may have sent a copy of the mixed tape. We do not know to whom management, the record label, or the clearance team may have sent a copy. (We do know that a copy was sent to Tracy Chapman and her team. Did they leak it?) And Nas had a copy, as Chapman notes in her own motion. He, of course, would be an obvious target, if Flex and his interns were reaching out to a source to find the recording.

Chapman's only response is that Flex received a copy of the "mastered" recording, and the only person who had a copy of the mastered recording was Aubry Delaine, and he acts only at the direction of Maraj. This story, however, does not hold up. First of all, Delaine was not the only person with the "mastered" version. Chris Athens Masters had it, and who knows who they sent it to, besides Delaine? But more importantly, Flex did not receive a copy of the "mastered" recording. Flex received his copy of *Sorry* by text. We know from Aubry Delaine that the mastered recording was too large to transmit by text or email. The mastered recording had to be transmitted by means of a link. Flex did not receive a link. Further, the name of the file that Flex received by text, < 01 Sorry – 72518 – master.mp3 >, is the name of the mixed version, created by Serban Ghenea on July 25, 2018, not the mastered version created on August 10.

So, who sent the recording to Flex? We have lots of possibilities and no certain answers. Questions of fact abound. Summary judgment would be improper.

C. **The Transmission Of *Sorry* To Flex Does Not Implicate Chapman's Distribution Right**

In addition to her factual shortfalls, Chapman also misses the mark in her discussion of the legal aspects of her motion. The sole statute Chapman cites is 17 U.S.C. section 106(3), which grants copyright owners the exclusive right "to

distribute copies or phonorecords of the copyrighted work *to the public* by sale or other transfer of ownership, or by rental, lease, or lending. [Emphasis added.]" Chapman argues that Maraj's alleged transmission of the recording to Flex violated this right. Chapman is wrong on the law.

Even if Chapman were correct that Maraj or her representatives sent the recording to Flex, she still would not have violated this statute. Chapman's story is that Maraj or her representatives sent the track to Flex *alone* as part of an intended "world premiere." (*He* was to broadcast the recording.) The referenced statute, however, prohibits only distribution "to the public," which means to "a large group of people outside of family and friends." *Am. Broadcasting Cos., Inc. v. Aereo, Inc.*, 573 U.S. 431, 448 (2014). Distribution of a single copy to Flex is not the same as distribution "to the public." As a result, even if Chapman's narrative were indisputable—and as shown above, it is not—her motion would still warrant denial on the grounds of an inadequate legal theory.

### D.  Maraj Cannot Be Held Liable For Any Infringement By Flex

It appears, though it is frankly unclear, that Chapman may be arguing that Maraj can be held liable, under an agency theory, for *Flex's* alleged acts of infringement in broadcasting *Sorry* on the radio. One might also consider the possibility that Maraj would be liable for Flex's alleged infringement under principles of contributory copyright infringement. Neither theory works for Chapman here.

#### 1.  Flex Was Not Maraj's Agent

Chapman says a few words about agency in her motion, but it is unclear whether she is insinuating that Flex was acting as Maraj's agent (or perhaps Chapman is merely saying that members of Maraj's management team were her agents.) To the extent Chapman's contention is that Flex was Maraj's agent, in broadcasting the recording, that charge is off base for two reasons. First, the proposition is not supported by any evidence at all. As the Supreme Court noted in

*Hollingsworth v. Perry*, 570 U.S. 693. 713 (2013), "An essential element of agency is the principal's right to control the agent's actions." *Id.* (quoting 1 Restatement (Third) of Agency, § 1.01, Comment *f* (2005)).  Chapman has submitted no evidence that Maraj's relationship with Flex afforded her such "control" over his actions, and none exists.

Second, even if Flex *were* Maraj's "agent," his actions did not violate Chapman's distribution right under 17 U.S.C. section 106(3).  As noted above, that section reserves to the copyright owner the exclusive right "to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending."  Certainly, Flex's broadcast was "to the public."  However, those listeners tuning into Flex's radio show never received copies of *Sorry* by means of "sale or other transfer of ownership, or by rental, lease, or lending;" they simply heard a one-time radio broadcast.  Therefore, there was no "distribution." *See Agee v. Paramount Communications, Inc.*, 59 F.3d 317, 325 (2d Cir. 1995) ("It is clear that merely transmitting a sound recording to the public on the airwaves does not constitute a 'distribution'"); *see also* H.R.Rep. No. 487, 92nd Cong., 1st Sess. at 138 ("any form or dissemination in which a material object does not change hands—performances or displays on television, for example—is not a publication no matter how many people are exposed").  The "agency" theory thus does not work for Chapman.

### 2. Chapman Did Not Plead Or Argue Contributory Copyright Infringement

The word "contributory" does not appear in Chapman's motion, so apparently she is not arguing that Maraj can be held liable for Flex's actions under principles of contributory copyright infringement.  Nor could she have properly made such an argument.  Chapman did not plead contributory infringement in her operative complaint, which guided the parties' now-closed fact discovery.  *See Suncoast Post-Tension, Ltd. v. Scoppa*, No,. 4:13–cv–3125 2014 WL 12596471 at * 5 (S.D. Tex.

May 13, 2014) ("Contributory copyright infringement is a separate cause of action from direct copyright infringement") (citation omitted). Therefore, even if contributory infringement applied, that theory is not properly before the Court.

## V. THERE ARE TRIABLE ISSUES OF FACT REGARDING WILLFULNESS

Chapman argues that she is entitled to summary judgment on the issue of willfulness. Chapman contends, first of all, that Maraj's transmission of the recording to Flex must have been willful. However, as argued above, there are triable issues of fact as to whether Maraj or one of her agents transmitted the recording to Flex. And there is a legal issue as to whether that transmission, if it did occur, would have been a violation of one of Chapman's exclusive rights.

Chapman also contends that, merely by creating the studio recording of *Sorry*, Maraj willfully violated Chapman's rights; summary judgment is appropriate; no trial is necessary. This contention is without merit. As argued in Maraj's cross-motion for partial summary judgment, the creation of the studio recording is a protected "fair use" under 17 U.S.C. section 107. But even if it were not, there would still be a triable issue of fact regarding willfulness. Pursuant to 17 U.S.C. section 504(c)(2), infringement is "innocent" – that is, the opposite of willful – where,

> . . . such infringer was not aware and had no reason to believe that his or her acts constituted an infringement of copyright . . . .

Here, Maraj says the following in her declaration submitted in opposition to this motion:

> I have been a recording artist for over a decade. My genre is hip hop. In my experience, it is common for recording artists, particularly hip hop artists, to go into the studio and experiment with many different beats and melodies. I have never known anyone to seek a clearance for such experimentation. If and when we record something, that we would like to release, we then seek the necessary clearances. Until this lawsuit was filed, I had never heard of a recording artist being sued,

>merely for recording a song in the studio – a song that was never released. I had no idea that such a claim was possible.

(Maraj Decl., ¶ 2.) These statements are undergirded by deposition testimony from Deborah Mannis-Gardner referenced in Maraj's cross motion. In short, a triable issue of fact exists as to whether her infringement, if such it was, was innocent.

## VI. CONCLUSION

For the reasons set forth above, Maraj submits that the only proper outcome of Chapman's motion for summary judgment in denial in full. Maraj respectfully requests an order to that effect.

DATED: August 24, 2020

BROWNE GEORGE ROSS LLP
    Peter W. Ross
    Eric C. Lauritsen

By: */s/Peter W. Ross*
    Peter W. Ross
Attorney for Defendants Onika Tanya Maraj p/k/a Nicki Minaj