MANATT, PHELPS & PHILLIPS, LLP
JOHN M. GATTI (State Bar No. 138492)
E-mail: jgatti@manatt.com
LAUREN J. FRIED (State Bar No. 309005)
E-mail: lfried@manatt.com
NICHOLAS FRONTERA (State Bar No. 307479)
E-mail: nfrontera@manatt.com
2049 Century Park East, Suite 1700
Los Angeles, California 90067
Tel.: (310) 312-4000; Fax: (310) 312-4224

*Attorneys for Plaintiff*
TRACY CHAPMAN

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRACY CHAPMAN,<br><br>Plaintiff,<br><br>v.<br><br>ONIKA TANYA MARAJ p/k/a NICKI MINAJ and DOES 1-10,<br><br>Defendants. | No. 2:18-cv-09088-VAP<br><br>Honorable Virginia A. Phillips<br><br>**PLAINTIFF TRACY CHAPMAN'S RESPONSE TO DEFENDANT'S STATEMENT OF UNCONTROVERTED FACTS IN SUPPORT OF DEFENDANT ONIKA TANYA MARAJ'S MOTION FOR SUMMARY JUDGMENT**<br><br>Date Filed: October 22, 2018<br>Disc. Cutoff: July 29, 2020<br>FPC: October 5, 2020<br>Trial: October 13, 2020<br><br>[Filed concurrently with (1) Plaintiff's Opposition to Defendant's Motion for Summary Judgment; (2) Frontera Declaration ISO Plaintiff's Opposition; and (3) Plaintiff's Objections To Defendant's Evidence ISO Her Motion For Summary Judgment] |

326720657.5

Plaintiff Tracy Chapman ("Chapman") hereby submits her Response to Defendant Onika Tanya Maraj p/k/a/ Nicki Minaj's ("Maraj"), Statement of Uncontroverted Facts in Support of her Motion for Summary Judgment.

| Def.'s SUF No. | Fact | Evidentiary Support | Plaintiff's Response |
|---|---|---|---|
| 1. | Minaj is a world famous recording artist and entertainer. | Lauritsen Decl., ¶ 2, Ex. A ("Mannis-Gardner Tr.") at 212:12-18. | Disputed.<br><br>Evidence provided by Maraj does not accord with the fact at issue.<br><br>Evidence:<br>Q. And for that reason, at least A-list artists like to do everything possible, if I understand your testimony correctly, to prevent leaks of music in advance of the release of their albums, right?<br>A. Correct.<br><br>Lauritsen Decl., ¶ 2, Ex. A (Mannis-Gardner Dep. at 212:12-18).<br><br>*See also*, Standing Order p. 4 (conclusions do not constitute facts). |
| 2. | In 2017, another recording artist, Nasir bin Olu Dara Jones, professionally known as Nas ("Nas"), approached Minaj and asked her to record vocals for a new track on which he was working. | Lauritsen Decl., ¶ 2, Ex. B ("Minaj Tr.") at 35:25-36:13. | Disputed.<br><br>Nothing in the evidence cited by Maraj explains that this occurred in 2017.<br><br>*See* Lauritsen Decl., ¶ 2, Ex. B (Minaj Dep. at 35:25-36:13). |
| 3. | Nas told Minaj that the new track would incorporate lyrics and melodic elements from a pre-existing composition | Minaj Tr. at 13:17-14:18; 35:4-36:13. | Disputed in Part.<br><br>*See*, Standing Order p. 4 (facts shall not be compound).<br><br>Evidence provided does not state that they wanted to incorporate "lyrics and melodic elements" it |

326720657.5

- 2 -

| Def.'s SUF No. | Fact | Evidentiary Support | Plaintiff's Response |
|---|---|---|---|
| | entitled "Sorry," which Minaj then understood to have been created by the artist professionally known as Shelly Thunder based on her famous reggae recording of it. | | states that "I want us to re-make the "Sorry" song. <br><br> Lauritsen Decl. ¶ 2, Ex. B (Minaj Tr. at 35:4-36:13). |
| 4. | Minaj was unsure as to whether she would ultimately like the results of the collaboration, so she recognized that it might not lead to a commercial release. | Minaj Tr. at 35:25-36:13. | Disputed. <br><br> *See*, Standing Order p. 4 (facts shall not be compound). <br><br> Maraj did not mention commercial use in the cited facts: <br><br> "And I said: Okay. Well, when I go back to L.A., I'll cut it and I'll, you know, let you know if I like it and, you know, we'll take it from there. <br> And he agreed." <br><br> Lauritsen Decl. ¶ 2, Ex. B (Minaj Tr. at 36:9-13). |
| 5. | However, she agreed to work with Nas and see where the project went. | Minaj Tr. at 35:21-36:13. | Undisputed. |
| 6. | Minaj had a sense that because her recording with Nas was not to be a true "cover" of the original "Sorry" insofar as it would include new lyrics and melodies alongside the original ones, at some point, it might become necessary to obtain | Minaj Tr. at 35:4-36:13. | Disputed in Part. <br><br> *See*, Standing Order p. 4 (facts shall not be compound). <br><br> Plaintiff does not dispute that Maraj knew she needed consent from the party claiming the original rights. <br><br> The facts provided do not indicate that Maraj had a "sense" that her recording with Nas was not to be a true "cover". <br><br> Lauritsen Decl. ¶ 2, Ex. B (Minaj Tr. at 35:4-36:13). |

326720657.5

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 3 -

| Def.'s SUF No. | Fact | Evidentiary Support | Plaintiff's Response |
|---|---|---|---|
| | clearances from the parties claiming rights in the original composition—e.g. songwriters or music publishers. | | |
| 7. | However, she put off worrying about things like that until the recording was selected for commercial distribution, if that were ever to happen in the first place. | Minaj Tr. at 35:4-36:13. | Disputed.<br><br>This is not what the facts cited illustrate. The fact do not discuss commercial distribution.<br><br>Lauritsen Decl. ¶ 2, Ex. B (Minaj Tr. at 35:4-36:13). |
| 8. | Rights holders often request copies of new works during licensing discussions for this purpose, so it would make sense to have one handy. | Lauritsen Decl., ¶ 2, Ex. C ("Chapman Tr.") at 53:10-54:8; Mannis-Gardner Tr. at 260:19-24. | Disputed.<br><br>*See*, Standing Order p. 4 (conclusions do not constitute facts).<br><br>Neither of the purported citations support the so called undisputed fact:<br><br>Q. Sorry. Are there instances where you seek clearance to use a work before the new work has been made?<br>A. We have reached out to people prior, and they usually say, Can we hear it. What are you going to do?<br><br>Lauritsen Decl. ¶ 2, Ex. A (Mannis-Gardner Tr. at 260:19-24).<br><br>Q. Beyonce requested permission to use a sample of your song Baby Can I Hold You. Correct?<br>A. Yes.<br>Q. And you said no. Right?<br>A. That is correct.<br>Q. And then the song was released and it didn't have a sample of your music. That's your |

| Def.'s SUF No. | Fact | Evidentiary Support | Plaintiff's Response |
|---|---|---|---|
| | | | understanding. Right?<br>A. Yes.<br>Q. And was there anything wrong with that?<br>A. There's nothing wrong with someone releasing a song that does not include, in this case the – she didn't include the sample, so no.<br>Q. Was there anything wrong with Beyonce recording a song that did include the sample and seeking your permission to use it?<br>A. It's my understanding that that isn't legal.<br>Q. So did you consider suing Beyonce?<br>A. No.<br>Q. Why not?<br>A. It's seemed clear that she had no intention to release it without permission.<br>Q. And that satisfied you. Correct?<br>A. Yes.<br><br>Lauritsen Decl. ¶ 2, Ex. C (Chapman Tr. at 53:10-54:8). |
| 9. | Notably, plaintiff Tracy Chapman ("Chapman") herself has been known to make such requests; for just one of several examples, in an email she sent to her business manager regarding a request to reprint some of her lyrics in a Swedish textbook, she states, "To give this proper consideration, I | Chapman Tr. at 21:6-16; *Id.* at 47:23-49:23; *Id.* at 53:23-54:8; Lauritsen Decl., ¶ 3, Exs. E-F. | Disputed.<br><br>*See*, Standing Order p. 4 (facts shall not be compound).<br><br>Immediately after testifying to the portion Defendant quotes in 21:6-16, Plaintiff testified that the question posed was a hypothetical and she "take[s] requests aside from requests to sample [her] music on a case-by-case basis."<br><br>Lauritsen Decl. ¶ 2, Ex. C (Chapman Tr. at 21:20-22). |

326720657.5

- 5 -

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

| Def.'s SUF No. | Fact | Evidentiary Support | Plaintiff's Response |
|---|---|---|---|
| | would need to see the table of contents for the book and a copy of the chapter that includes the song lyrics." | | |
| 10. | Prospective licensees anticipate these needs, so they almost always include their proposed derivative works with their initial licensing requests. | Mannis-Gardner Tr. At 129:2-7; 216:13-22. | Disputed.<br><br>Ms. Mannis-Gardner also testified that it is "not typical" for artists to play a song for another artist in order to obtain clearances.<br><br>Frontera Decl. ¶ 4, Ex. 2 (Mannis-Gardner Dep. at 127:11-23).<br><br>Q. … Is it pretty typical for an artist to play a song for another artist in order to obtain clearance?<br><br>A. No, it's not typical, but it's done.<br><br>Q. So more often is the clearance obtained without playing the song?<br><br>A. I have just cleared -- Jay-Z's album, it was cleared without hearing complete songs over the phone. Lady Gaga, I just sent out requests and said, Can you give me a quote, trust her, this is what the use is, give me a quote.<br><br>*See*, Standing Order p. 4 (conclusions do not constitute facts). |
| 11. | Eventually, the "Sorry" remake was indeed selected for inclusion on Minaj's 2018 album *Queen*, so her representatives | Mannis-Gardner Tr. at 93:6-15. | Disputed.<br><br>Facts provided do not correlate to the undisputed fact at issue. Evidence provided:<br><br>Q…When you were first asked to obtain clearance for Ms. Maraj's |

326720657.5

- 6 -

| Def.'s SUF No. | Fact | Evidentiary Support | Plaintiff's Response |
|---|---|---|---|
| | began efforts to obtain approvals from the rights holders in the original composition. | | song "Sorry," was it Joshua Berkman who asked you?<br>A. Yes.<br>Q. And who is Joshua Berkman? What was his role?<br>A. I don't know what his title is. I think he's the A&R. I think he oversaw Nicki's album.<br><br>Lauritsen Decl., ¶ 2, Ex. A (Mannis-Gardner Dep. at 93:6-15.)<br><br>*See*, Standing Order p. 4 (facts shall not be compound). |
| 12. | These efforts led them to representatives of Chapman, as unbeknownst to Minaj originally, Shelly Thunder's "Sorry" recording was in fact a cover of Chapman's "Baby Can I Hold You." | Mannis-Gardner Tr. at 95:8-14; 101:3-102:3. | Undisputed.<br><br>*See*, Standing Order p. 4 (facts shall not be compound). |
| 13. | Chapman repeatedly rebuffed these requests. | Mannis-Gardner Tr. at 96:15-97:5; Lauritsen Decl., ¶ 2, Ex. D ("Roberson Tr.") at 87:8-88:4; Lauritsen Decl., ¶ 3, Ex. G. | Undisputed. |
| 14. | As a result, Minaj herself joined in the clearance efforts, attempting to communicate with Chapman via a "Tweet" stating, "Tracy Chapman, can you please hit | Minaj Tr. at 45:8-12; 46:11-47:1. | Undisputed. |

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

| Def.'s SUF No. | Fact | Evidentiary Support | Plaintiff's Response |
|---|---|---|---|
| | me. ♀ omg for the love of #Queen." | | |
| 15. | Chapman did not relent. | Minaj Tr. at 40:11-23. | Undisputed. |
| 16. | *Queen* was thus released without the track. | Minaj Tr. at 40:20-23. | Undisputed. |

**Opposing Party's Undisputed Facts in Support of Opposition to Maraj's Motion for Summary Judgment**

| Plaintiff's SUF No. | Fact | Evidentiary Support |
|---|---|---|
| 1. | In 2017, Ms. Maraj began recording a track entitled *Sorry* (the "Infringing Work"). | Frontera Decl., ¶ 14, Ex. 15 (Deposition of Onika Tanya Maraj ("Maraj Dep.") at 37:25-38:3). |
| 2. | Ms. Maraj began recording the Infringing Work, without first seeking Ms. Chapman's authorization to do so. | Frontera Decl. ¶ 15, Ex. 13 (Answer ¶ 20). |
| 3. | Ms. Maraj admits that the Infringing Work incorporates music and lyrics from the Composition. | Frontera Decl. ¶ 18, Ex. 16 (Suppl. Responses to RFA Nos. 8 and 10), ¶ 15, Ex. 13 (Answer ¶¶ 19-20). |
| 4. | Ms. Maraj admits that when she created the Infringing Work, she hoped to use it on her upcoming album *Queen*. | Frontera Decl. ¶ 15, Ex. 13 (Answer ¶ 19). |
| 5. | Ms. Maraj knew that in order to use the Composition in the Infringing Work for her Album she needed to obtain a license from the copyright holder. | Frontera Decl., ¶ 18, Ex. 16 (Suppl. Response to RFA No. 5). |
| 6. | Ms. Maraj herself and through representatives made at least two separate requests to license the Composition for use in her Infringing Work. | Frontera Decl. ¶ 18, Ex. 16 (Suppl. Resp. to RFA No. 18), ¶ 4, Ex. 2 (Deposition of Deborah Mannis-Gardner ("Mannis-Gardner Dep.") at 117:2-118:17, 122:5-15, 123:21-124:3, 140:7-145:18), ¶ 5, Ex. 3, ¶ 6, Ex. 4, ¶ 7, Ex. 5, ¶ 8, Ex. 6, ¶ 9, Ex. 7, ¶ 10, Ex. 8. |

326720657.5

| | | |
|---|---|---|
| 7. | Ms. Maraj's request to use the Composition in her Infringing Work was denied on numerous occasions. | Frontera Decl. ¶ 3, Ex. 1, ¶ 4, Ex. 2 (Mannis-Gardner Dep. at 102:10-103:14, 107:19-109:3, 115:14-116:4, 120:19-121:12, 137:22-138:22), ¶ 7, Ex. 5, ¶ 8, Ex. 6, ¶ 9, Ex. 7, ¶ 10, Ex. 8. |
| 8. | Ms. Chapman's final denial was communicated to Ms. Maraj's representatives on August 2, 2018. | Frontera Decl. ¶ 10, Ex. 8. |
| 9. | On August 3, 2018, Ms. Maraj, sent Aston George Taylor a direct message from her verified Instagram account asking him to world premiere the Infringing Work on his radio show the week her album *Queen* was released. | Frontera Decl. ¶ 12, Ex. 10 (Deposition of Aston George Taylor ("Taylor Dep.") at 100:1-102:16), ¶ 11, Ex. 9. |
| 10. | Also on August 3, 2018, Ms. Maraj confirmed to Aston George Taylor that the Infringing Work would not be on her Album. | Frontera Decl. ¶ 11, Ex. 9. |
| 11. | Mr. Taylor indicated he would play the Infringing Work on his show. | Frontera Decl. ¶ 12, Ex. 10 (Taylor Dep. at 102:17-104:7), ¶ 11, Ex. 9. |
| 12. | Ms. Maraj and Nas continued working on the Infringing Work after August 3, 2018. | Frontera Decl., ¶ 13, Ex. 11, ¶ 14, Ex. 12 (Maraj Dep. at 64:5-65:24, 68:12-69:2). |
| 13. | On August 3, 2018, Ms. Maraj texted Nas: "By the way, did you ever approve a mix [of Sorry]?" | Frontera Decl. ¶ 13, Ex. 11, ¶ 14, Ex. 12 (Maraj Dep. at 64:5-65:24, 68:12-69:2). |
| 14. | Ms. Maraj sent Nas a link to download the "latest mix" of the Infringing Work. | Frontera Decl., ¶ 13, Ex. 11, ¶ 14, Ex. 12 (Maraj Dep. at 64:5-65:24, 68:12-69:2). |
| 15. | Ms. Maraj and Nas then exchanged a number of texts discussing changes to the verses of the Infringing Work, which still included the Composition. | Frontera Decl. ¶ 13, Ex. 11, ¶ 14, Ex. 12 (Maraj Dep. at 64:5-65:24, 68:12-69:2). |
| 16. | Ms. Maraj told Nas: | Frontera Decl. ¶ 13, Ex. 11. |

326720657.5

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

| | | |
|---|---|---|
| | "Well go in & make the changes if you want then we can go from there." | |
| 17. | On August 10, 2018, Ms. Maraj released the Album without the Infringing Work. | Frontera Decl. ¶ 15, Ex. 13 (Answer ¶¶ 19, 34). |
| 18. | On August 10, 2018, Ms. Maraj messaged Mr. Taylor:<br><br>"You got me tonight? The song is me & Nas[.] Send ur number[.]" | Frontera Decl. ¶ 11, Ex. 9. |
| 19. | On August 10, 2018, Ms. Maraj's lead recording engineer, Aubry Delaine ("Mr. Delaine") requested that Ms. Maraj's mastering engineer master the Infringing Work and return a clean copy. | Frontera Decl. ¶ 15, Ex. 14; ¶ 16, Ex. 14, ¶ 17, Ex. 15, ¶ 20, Ex. 17 (Deposition of Aubry Delaine ("Delaine Dep.") at 86:16-88:4). |
| 20. | Ms. Maraj's mastering engineer did so that night. | Frontera Decl. ¶ 15, Ex. 14; ¶ 16, Ex. 14, ¶ 17, Ex. 15, ¶ 20, Ex. 17 (Delaine Dep. at 86:16-88:4). |
| 21. | Mr. Taylor received the Infringing Work via text sometime between (i) Ms. Maraj telling him "I'll text" on August 10, 2018, and (ii) his first social media post promoting the show early afternoon the next day. | Frontera Decl. ¶ 12, Ex. 10 (Taylor Dep. at 96:11-22, 132:22-133:14, 171:5-18). |
| 22. | On August 11, 2018 at 7 PM EST, Mr. Taylor broadcast his radio show on Hot 97 FM. | Frontera Decl. ¶ 12, Ex. 10 (Taylor Dep. at 155:9-13, 210:17-23). |
| 23. | Mr. Taylor played the Infringing Work during the broadcast. | Frontera Decl. ¶ 12, Ex. 10 (Taylor Dep. at 155:9-13, 210-17-23). |
| 24. | Ms. Maraj appeared for an interview on Mr. Taylor's show on August 14, 2018. | Frontera Decl. ¶ 12, Ex. 10 (Taylor Dep. at 172:23-173:1). |

1                               Respectfully submitted,

2                               MANATT, PHELPS & PHILLIPS LLP

4  Dated: August 24, 2020       By: /s/ John M. Gatti
                                                John M. Gatti
                                                Lauren J. Fried
                                                Nicholas Frontera
                                                *Attorneys for Plaintiff*
                                                **TRACY CHAPMAN**