MANATT, PHELPS & PHILLIPS, LLP
JOHN M. GATTI (State Bar No. 138492)
E-mail: jgatti@manatt.com
LAUREN J. FRIED (State Bar No. 309005)
E-mail: lfried@manatt.com
NICHOLAS FRONTERA (State Bar No. 307479)
E-mail: nfrontera@manatt.com
2049 Century Park East, Suite 1700
Los Angeles, California 90067
Tel.: (310) 312-4000; Fax: (310) 312-4224

*Attorneys for Plaintiff*
TRACY CHAPMAN

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRACY CHAPMAN,<br><br>Plaintiff,<br><br>vs.<br><br>ONIKA TANYA MARAJ p/k/a NICKI MINAJ and DOES 1-10,<br><br>Defendants. | No. 2:18-cv-09088-VAP-SS<br><br>Honorable Virginia A. Phillips<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Hearing Date: September 14, 2020<br>Hearing Time: 2:00 p.m.<br><br>Final Pretrial Conf.: October 5, 2020<br>Trial Date: October 13, 2020<br><br>[Concurrently filed with: (1) Declaration of N. Frontera ISO Plaintiff's Reply; (2) Plaintiff's Evidentiary Objections To The Declarations Of O. Maraj And A. Delaine And Motion To Strike The Same; (3) Plaintiff's Resps To Defendant's Objections To Evidence Submitted ISO Plaintiff's MSJ; (4) Plaintiff's Response To Defendant Maraj's Additional Uncontroverted Facts Proffered In Opposition To Chapman's MSJ; and (5) Plaintiff's Objections To Defendant's Additional Material Facts Submitted In Opposition To Chapman's MSA] |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................1

II. ARGUMENT ......................................................................................................2

    A. Ms. Maraj Willfully Infringed Ms. Chapman's Copyright In the Composition By Preparing The Infringing Work Without Ms. Chapman's Permission ........................................................................2

        1. It is Undisputed that Ms. Maraj Created a Derivative Work Without Consent ..........................................................2

        2. Ms. Maraj Admits the Elements of Willful Infringement, Making Summary Adjudication Appropriate on This Point ........................................................................................3

        3. Ms. Maraj's Preparation of the Infringing Work was Neither a "Fair Use" Nor "Innocent Infringement" ..................4

    B. Ms. Maraj Willfully Infringed Ms. Chapman's Copyright in the Composition By Distributing The Infringing Work ..............................6

        1. Ms. Maraj's Distribution to Even One Person Infringes Ms. Chapman's Copyright in the Composition ...........................6

        2. Ms. Maraj's Belated Self-Serving Statements Hurt, Rather Than Help, Her ........................................................................7

        3. The Remaining "Evidence" Ms. Maraj Cites In Her Motion Does Not Create A Dispute as to Any Material Facts ...........................................................................................9

III. CONCLUSION ................................................................................................12

# TABLE OF AUTHORITIES

**Page**

## CASES

*Am. Broadcasting Cos. v. Aereo, Inc.*,
  573 U.S. 431 (2014) ............................................................................................. 7

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*,
  874 F.3d 1064 (9th Cir. 2017) ............................................................................. 3

*Broad. Music, Inc. v. McDade & Sons, Inc.*,
  928 F. Supp. 2d 1120 (D. Ariz. 2013) .................................................................. 3

*Brown v. Tabb*,
  714 F.2d 1088 (11th Cir. 1983) ........................................................................... 7

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
  499 U.S. 340 (1991) ............................................................................................. 2

*Flexible Lifeline Sys., Inc. v. Precision Lift, Inc.*,
  No. CV 10-44-H-DWM, 2011 WL 13133925 (D. Mont. Sept. 13, 2011) .......... 6

*Ford Motor Co. v. Summit Motor Prod., Inc.*,
  930 F.2d 277 (3d Cir. 1991) ............................................................................ 6, 7

*Harper & Row Publishers, Inc. v. Nation Enters.*,
  471 U.S. 539 (1985) ............................................................................................. 7

*Penguin Books U.S.A., Inc. v. New Christian Church of Full Endeavor, Ltd.*,
  288 F. Supp. 2d 544 (S.D.N.Y. 2003) .................................................................. 6

*Scott v. Harris*,
  550 U.S. 372 (2007) ........................................................................................... 10

*Sloane v. Karma Enters., Inc.*,
  No. CV 08-05094 MMM, 2009 WL 10672982 (C.D. Cal. Apr. 13, 2009) ......... 6

*Walt Disney Prods. v. Filmation Assocs.*,
  628 F. Supp. 871 (C.D. Cal. 1986) ...................................................................... 4

*Washington Shoe Co. v. A-Z Sporting Goods Inc.*,
  704 F.3d 668 (9th Cir. 2012) ............................................................................... 3

*Williams & Wilkins Co. v. United States*,
  487 F.2d 1345 (Ct. Cl. 1973), *aff'd*, 420 U.S. 376 (1975) .................................. 4

*Yeager v. Bowlin*,
  693 F.3d 1076 (9th Cir. 2012) ............................................................................. 8

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

ii

REPLY IN SUPPORT OF MOTION FOR PARTIAL
SUMMARY JUDGMENT

# TABLE OF AUTHORITIES
## (Continued)

**Page**

## STATUTES

17 U.S.C. § 106(3) ............................................................................................. 4, 6

17 U.S.C. § 106(4) ................................................................................................ 7

17 U.S.C. § 107 .................................................................................................... 4

## I. INTRODUCTION

After nearly two years of feigning ignorance and withholding evidence, Ms. Maraj[1] now admits what has been evident from the beginning: this is not the case of an artist with good intentions who created a derivative work solely to seek permission and then "scrap" it if permission was denied.  This is the case of an artist who, after being denied clearance, *in her own words*, "let her passion for [the Infringing Work] get the better of [her]", and sought to publicly release the Infringing Work in blatant disregard for Ms. Chapman's copyright.

Ms. Maraj now *admits for the first time* that, in response to Ms. Chapman's denial of clearance, Ms. Maraj sent private messages to a popular New York disc jockey, asking him to premiere the Infringing Work on his hit radio show.  She further admits that she "intended to send [him] a copy of [the Infringing Work] to play on his radio program."  She makes these admissions despite failing to recall these same communications at her September 2019 deposition[2] and denying under penalty of perjury that she ever asked Mr. Taylor to play the Infringing Work on his show.[3]  Now, in the face of indisputable evidence obtained from Mr. Taylor, Ms. Maraj has been forced to finally admit the truth: Ms. Maraj prepared the Infringing Work without permission, *continued* preparing it *after* permission was denied multiple times, and sought to release the Infringing Work publicly for her personal commercial benefit.

Nevertheless, Ms. Maraj attempts to escape liability through her thinly reasoned "fair use" and "innocent infringement" arguments, which can be easily

---

[1] Defined terms have the same definition as in Plaintiff's Motion for Partial Summary Judgment ("Motion").
[2] While Ms. Maraj recalled at her deposition her self-serving comment on Mr. Taylor's Instagram post that he could "only play songs that are official album cuts" around the time he played the Infringing Work, she conveniently could not recall "hav[ing] any other communication with him around that same time in any other way." (Dkt. 54-2, ¶ 7, Ex. 6 (Maraj Dep. at 48:5-16).)
[3] In her verified responses to Ms. Chapman's Request for Admission Number 32, Ms. Maraj denied that she "asked Taylor to play the Infringing Work on HOT 97 FM." (*See* Dkt. 54-2, ¶ 9, Ex. 8 at p. 87 (Suppl. Resp. to RFA No. 32); Frontera Decl. ISO Reply, ¶ 3, Ex. 2.)

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

1

REPLY IN SUPPORT OF MOTION FOR PARTIAL
SUMMARY JUDGMENT

disregarded by the Court. The undisputed facts establish that Ms. Maraj willfully infringed on Ms. Chapman's copyright in the Composition through her preparation of the Infringing Work, despite Ms. Chapman's denials of the requisite permission.

It also is undisputed that Ms. Maraj willfully infringed Ms. Chapman's copyright in the Composition by distributing it to Mr. Taylor. Ms. Maraj's attempt to distract from the undisputed evidence by relying on the age-old empty chair defense is futile. Ms. Maraj offers no evidence supporting her "whodunit" rhetoric. Ms. Chapman, on the other hand, has laid out undisputed evidence, piece by piece, from which only one reasonable conclusion flows: Ms. Maraj or her agents willfully distributed the Infringing Work to Mr. Taylor or his agents.

For these reasons, which are discussed more fully in Ms. Chapman's Motion and below, the Motion should be granted.

## II. ARGUMENT

### A. Ms. Maraj Willfully Infringed Ms. Chapman's Copyright In the Composition By Preparing The Infringing Work Without Ms. Chapman's Permission.

Through her Motion, Ms. Chapman established that (1) Ms. Maraj infringed her copyright in the Composition by unlawfully preparing a derivative work without Ms. Chapman's permission, and (2) such infringement was willful because Ms. Maraj *continued preparing* the Infringing Work *after* she knew that Ms. Chapman had unequivocally denied the use. (Mot. at 10-15.) Ms. Maraj does not dispute either of these points in her Opposition. The Motion should be granted.

#### 1. It is Undisputed that Ms. Maraj Created a Derivative Work Without Consent

As a threshold matter, Ms. Chapman easily carries her burden of demonstrating copyright infringement. To carry her burden, Ms. Chapman need only establish that she owns a valid copyright in the Composition, and that Ms. Maraj copied original elements of the Composition *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). Ms. Maraj does not (and cannot) dispute that Ms. Chapman has demonstrated ownership (*see* SUF Nos. 1-3) and copying (*see* SUF Nos. 6-8). Thus,

Ms. Chapman satisfies both elements of copyright infringement.

### 2. Ms. Maraj Admits the Elements of Willful Infringement, Making Summary Adjudication Appropriate on This Point

As discussed above and as established through Ms. Chapman's Motion, the undisputed facts and Ms. Maraj's admissions establish that her unlawful preparation of the Infringing Work was willful. To prove willfulness, Ms. Chapman need only show that Ms. Maraj was "actually aware of the infringing activity," or that she acted with "'reckless disregard' for, or 'willful blindness' to" Ms. Chapman's rights. *Wash. Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 674 (9th Cir. 2012), *abrogated on other grounds by Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1067 (9th Cir. 2017).

Because Ms. Maraj continued to prepare the Infringing Work after Ms. Chapman's repeated denials, the willfulness standard is easily satisfied. *See Broad. Music, Inc. v. McDade & Sons, Inc.*, 928 F. Supp. 2d 1120, 1134 (D. Ariz. 2013) (finding willful infringement where defendant knew it needed a license, did not obtain one, and proceeded with the use regardless). Ms. Maraj knew she needed a license to use the Infringing Work in the Composition. (SUF No. 9.) Nevertheless, she began preparing the Infringing Work without such a license. (SUF No. 10.) Then, even *after* her requests to use the Infringing Work were twice denied, Ms. Maraj ***continued preparing*** the Infringing Work and had it mastered—which Ms. Maraj admits in her Opposition "is the final stage of producing a song for an album." (Opp'n at 2; SUF Nos. 13-22.)

Finally, ***in Ms. Maraj's own words***, during this post-denial period when she continued preparing the Infringing Work, she "let [her] passion for *Sorry* get the better of [her]", asked Mr. Taylor to premiere the Infringing Work on his hit radio show the week her Album released, and "intended to send [Mr. Taylor] a copy of [the Infringing Work] to play on his radio program." (Opp'n at 2-3; Maraj Decl. at ¶¶ 4, 6.) Ms. Maraj's admitted continued preparation of and intent to publicly distribute the

Infringing Work despite Ms. Chapman's denials establish her willful intent. This Court should grant Ms. Chapman's Motion on this issue.

### 3. Ms. Maraj's Preparation of the Infringing Work was Neither a "Fair Use" Nor "Innocent Infringement"

Faced with incontrovertible evidence of infringement, Ms. Maraj's sole defense to her willful creation of a derivative work is that her preparation of the Infringing Work constitutes a "fair use" under 17 U.S.C. § 107, and, in any event, was innocent. (Opp'n at 9.) Both of these arguments fail.

*First*, as discussed in Ms. Chapman's Opposition to Ms. Maraj's Motion for Partial Summary Judgment, Ms. Maraj has **no legal support** for her argument that preparing a "demo version" of a non-transformative work intended for commercial release is a fair use. (Dkt. 57 at 1-2.) Indeed, Ms. Maraj's argument evinces a fundamental misunderstanding of the difference between "fair use"—*i.e.*, whether a use is transformative or not—and the varying degrees of copyright infringement—*i.e.*, whether a use was innocent or willful. (*See* Dkt. 67 at 6-8.)

Notably, Ms. Maraj fails to cite a ***single*** case supporting her novel theory. In fact, none exist. To hold that preparing a non-transformative commercial work is a fair use until a copyright holder determines whether to license the work would impose a licensing scheme that does not exist under copyright law. Indeed, such a scheme would be outside the purview of the courts. *See Williams & Wilkins Co. v. United States*, 487 F.2d 1345, 1360 (Ct. Cl. 1973), *aff'd,* 420 U.S. 376 (1975) ("We think it equally outside a court's present competence to turn the determination of 'fair use' on the owner's willingness to license. . . .") The law is clear:

> Because the right of reproduction affords a copyright owner protection against an infringer even if he does not also infringe the § 106(3) right of distribution, . . . ***the fact that the articles may never be published*** or, indeed, may be prepared only for [private use], ***does not obviate the possibility of infringement.***

*Walt Disney Prods. v. Filmation Assocs.*, 628 F. Supp. 871, 876 (C.D. Cal. 1986) (citations omitted, emphasis added). The Court should reject Ms. Maraj's fair use

claim as a matter of law.

*Second*, both Ms. Maraj's fair use and innocent infringement claims fail because they are based on the demonstrably false premise that Ms. Maraj prepared the Infringing Work "solely to seek [Ms.] Chapman's permission to release the song commercially." (Dkt. 57 at 1-2; Opp'n at 9.) The undisputed evidence, including Ms. Maraj's own admissions (*see* Opp'n at 2-3), establish that this purported justification is yet another attempt by Ms. Maraj to escape liability. The relevant facts are undisputed:

- Ms. Maraj admits she knew she needed Ms. Chapman's permission to use the Composition in the Infringing Work (SUF No. 9);
- On July 10, 2018, Ms. Maraj sought such permission from Ms. Chapman (SUF Nos. 11-13);
- On July 16, 2018, Ms. Chapman unequivocally denied Ms. Maraj's request (SUF Nos. 14-15);
- On July 25, 2018, despite the denial, Ms. Maraj's mixing engineer prepared a mix of the Infringing Work (Opp'n at 4);
- On July 27, 2018, Ms. Maraj again asked for permission to use the Composition in the Infringing Work (SUF No. 16);
- On August 2, 2018, Ms. Chapman again confirmed the use was denied, and asked Ms. Maraj to move on without the sample (SUF Nos. 18-20);
- On August 3, 2018, Ms. Maraj "let [her] passion for *Sorry* get the better of [her]", contacted Mr. Taylor, confirmed the Infringing Work would not be on the Album, and asked him to world premiere the Infringing Work on his hit radio show (Opp'n at 2; SUF Nos. 21, 25-26);
- From August 3, 2018 to August 5, 2018, Ms. Maraj continued to prepare the Infringing Work with Nas (SUF No. 22);[4]
- On August 10, 2018, the day the Album was released, Ms. Maraj's sound engineer sent the Infringing Work to be mastered, and a mastered clean version was returned that same day (SUF Nos. 30-34);

---

[4] While Ms. Maraj disputes this fact in response to Ms. Chapman's Separate Statement, the testimony she cites, at best, shows that Ms. Maraj "do[es not] think" that the changes to the Infringing Work that were being discussed and prepared with Nas were actually made. (Dkt. 69 (SUF No. 22).) This does nothing to undermine the fact that Ms. Maraj and Nas were continuing to prepare the Infringing Work.

- On August 10, 2018, Ms. Maraj contacted Mr. Taylor to arrange to send him the Infringing Work and admittedly "***intended*** to send [Mr. Taylor] a copy of [the Infringing Work] to play on his radio program." (SUF Nos. 25-29; Opp'n at 3.)

It is indisputable that Ms. Maraj ***did not*** prepare the Infringing Work "solely to seek [Ms.] Chapman's permission to release the song commercially." Despite Ms. Chapman's repeated denials, Ms. Maraj continued preparing the Infringing Work and sought to publicly release it. Therefore, the Court should reject Ms. Maraj's claims to fair use and innocent infringement based on these facts, and grant Ms. Chapman's Motion on this issue.

### B. Ms. Maraj Willfully Infringed Ms. Chapman's Copyright in the Composition By Distributing The Infringing Work.

In her Motion, Ms. Chapman established that the only reasonable conclusion considering the undisputed facts is that Ms. Maraj, or one of her agents acting at her direction, willfully distributed the Infringing Work to Mr. Taylor or one of his agents. (Mot. at 16-20.) Nothing about Ms. Maraj's Opposition changes this conclusion.

#### 1. Ms. Maraj's Distribution to Even One Person Infringes Ms. Chapman's Copyright in the Composition.

As a threshold matter, Ms. Maraj gets the law wrong when she argues that distribution under 17 U.S.C. § 106(3) requires distribution to more than one person. (Opp'n at 7.) It is well-settled that "a violation of section 106(3) can [] occur when illicit copies of a copyrighted work are only distributed to one person." *Ford Motor Co. v. Summit Motor Prod., Inc.*, 930 F.2d 277, 300 (3d Cir. 1991); *Flexible Lifeline Sys., Inc. v. Precision Lift, Inc.*, No. CV 10-44-H-DWM, 2011 WL 13133925, at *4 (D. Mont. Sept. 13, 2011) ("Distribution to one person is considered to be distribution to the public."); *Sloane v. Karma Enters., Inc.*, No. CV 08-05094 MMM (VBKx), 2009 WL 10672982, at *6 (C.D. Cal. Apr. 13, 2009) (Section 106(3) is violated when a defendant "distribute[s] an unauthorized copy of the work to *a member* of the public") (emphasis added); *Penguin Books U.S.A., Inc. v. New Christian Church of Full Endeavor, Ltd.*, 288 F. Supp. 2d 544, 556 (S.D.N.Y. 2003) ("A distribution of a

1  work to one person constitutes a publication."). This is because "Clause (3) of section
2  106, establishes the exclusive right of publications." *Harper & Row Publishers, Inc.
3  v. Nation Enters.*, 471 U.S. 539, 552 (1985). And "when deciding if a common law
4  'publication' occurred, the 'number of persons receiving copies is not determinative;
5  a general publication may be found when only one copy of the work reaches a
6  member of the general public'". *Ford Motor Co.*, 930 F.2d at 299-300 (quoting
7  *Brown v. Tabb*, 714 F.2d 1088, 1091 (11th Cir. 1983)). Ms. Maraj's arguments to
8  the contrary go nowhere.

Indeed, Ms. Maraj's reliance on *Am. Broadcasting Cos. v. Aereo, Inc.*, 573 U.S. 431, 448 (2014) is misguided. (Opp'n at 7.) In *Am. Broadcasting*, the Supreme Court analyzed the separate (and very different) exclusive right granted under Section 106(4) to "perform [a] copyrighted work publicly." *Id.* at 437-38. The Supreme Court's holding that, to be publicly performed, the work must be performed in front of "a large group of people outside of family and friends" does not upset the decades of precedent regarding what is required for public distribution.

### 2. Ms. Maraj's Belated Self-Serving Statements Hurt, Rather Than Help, Her.

Ms. Maraj previously denied under penalty of perjury that she ever asked Mr. Taylor to play the Infringing Work, and failed to produce the key evidence of the same. (Frontera Decl. ISO Reply ¶ 6.) Now, for the first time in the nearly two years that this case has been pending, Ms. Maraj admits that after Ms. Chapman unequivocally denied her request to use the Composition in the Infringing Work, she "let [her] passion for *Sorry* get the better of [her]" and contacted Mr. Taylor to request that he play the Infringing Work on his hit radio show. (Opp'n at 2.) Ms. Maraj also admits that, on August 10, 2018, less than 24 hours before Mr. Taylor received the Infringing Work, she confirmed that she would text it to him, asked him for his number to do so, and that "*[a]t the time [she] sent these messages, [she] intended to send [Mr. Taylor] a copy of Sorry to play on his radio program.*" (Opp'n at 3.)

Ms. Maraj further admits that the same day, on August 10, 2018, her recording engineer arranged for the Infringing Work to be mastered—which Ms. Maraj admits "is the final stage of producing a song for an album." (Opp'n at 1-2, 4-5.) Of course, Ms. Maraj offers no explanation for why the Infringing Work would need to be mastered unless it was going to be distributed for radio, given that, at that point, the Album had already been released without the Infringing Work. Accordingly, by her own admissions, as of August 10, 2018, less than 24 hours before Mr. Taylor received the Infringing Work, Ms. Maraj was actively finalizing the Infringing Work and arranging for its public release.

Yet, Ms. Maraj asks the Court to believe that in the less than 24 hours between her confirming she would send Mr. Taylor the Infringing Work and his playing it on the radio, she "*had a change of heart*" and "*never sent the recording*." (Opp'n at 3 (emphasis in original); Maraj Decl. at ¶¶ 4, 6.) This Court need not entertain Ms. Maraj's after-the-fact self-serving statement created to deceive the Court, particularly in the face of undisputed evidence to the contrary and her prior attempts to deceive on this issue. It is well-established that "a party cannot create an issue of fact by an affidavit contradicting [her] prior deposition testimony." *Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012) (citations omitted). "This sham affidavit rule prevents a party who has been examined at length on deposition from rais[ing] an issue of fact simply by submitting an affidavit contradicting [her] own prior testimony". *Id.* (citations omitted.) Here, the Court should disregard Ms. Maraj's self-serving testimony for at least three reasons.

*First*, Mr. Taylor's multiple social media postings that he received the Infringing Work from Ms. Maraj are contemporaneous statements demonstrating Ms. Maraj in fact sent it to him. (Dkt. 54-2, ¶ 21, Ex. 20; *id.* at ¶ 22, Ex. 21; SUF No. 35.)

*Second*, the time at which Mr. Taylor received the Infringing Work evidences that Ms. Maraj or her agents sent it to him. Mr. Taylor testified that he received the Infringing Work sometime between Ms. Maraj's last text telling him she would send

it to him on August 10, 2018, and his first post to social media in the afternoon on August 11, 2018.  (SUF No. 36.)  Accordingly, despite Mr. Taylor knowing about the existence of the Infringing Work for a week and claiming "once he knows a recording exists, he can always obtain a copy" (Opp'n at 4), it was only in the 24-hour period after Ms. Maraj told him she would send him the Infringing Work and it was mastered that Mr. Taylor actually received it.

*Third*, there is no evidence confirming Ms. Maraj's self-serving statement that she "had a change of heart."  Ms. Maraj did not text Mr. Taylor and let him know that she would not be sending him the Infringing Work.  Mr. Taylor did not follow-up with Ms. Maraj asking why he was not sent the Infringing Work after he was promised it.  Ms. Maraj did not call off the mastering of the Infringing Work the night before it was played.  In fact, just three days after Mr. Taylor played the Infringing Work, Ms. Maraj appeared on his radio show to promote her Album and did not mention the Infringing Work.  (Dkt. 67-1, Ex. 10 (Taylor Dep. at 94:23-95:1).)  None of Ms. Maraj's representatives contacted Mr. Taylor to investigate how he got it.  (Dkt. 54-2, ¶ 17, Ex. 16 at 315:4-7.)  The reason is simple: Ms. Maraj wanted Mr. Taylor to play the Infringing Work, made sure he received a copy, and then was not surprised when he played it.

Based on these facts and Ms. Maraj's admissions regarding her intent to send Mr. Taylor the Infringing Work just hours before Mr. Taylor received it, the only reasonable conclusion is that Ms. Maraj or her agents sent the Infringing Work to Mr. Taylor or his agents before it was broadcast publicly.  Indeed, the only "mystery story" here is why Ms. Maraj believes that her speculation and theatrics can undercut undisputed facts.

### 3. The Remaining "Evidence" Ms. Maraj Cites In Her Motion Does Not Create A Dispute as to Any Material Facts.

Ms. Maraj's attempt to concoct factual disputes in the face of undisputed evidence that she and/or her agents sent Mr. Taylor and/or his agents the Infringing

Work to be played on the radio does little to help her case.

*First*, even if it were true that Ms. Maraj's management, Ms. Maraj's clearance team, and Ms. Maraj's engineers had access to the version of the Infringing Work that was sent to Mr. Taylor, Ms. Maraj would be liable for their distribution of the Infringing Work under the agency principles discussed in Ms. Chapman's Motion. (Mot. at 16-17.) There is no question that the day before Mr. Taylor received the Infringing Work, Ms. Maraj and her agents were preparing a final mastered version of the Infringing Work because Ms. Maraj "intended to send [Mr. Taylor] a copy of *Sorry* to play on his radio program." (Opp'n at 3, 5; SUF Nos. 30-34.) Ms. Maraj does not claim that she informed her agents of her alleged "change of heart", or that she told them to stop working on (or releasing) the Infringing Work. Thus, even if it was sent by Ms. Maraj's agents, Ms. Maraj is liable. Further, Ms. Maraj's suggestion that Nas[5] leaked the Infringing Work (Opp'n at 6) in the absence of any supporting evidence, and a wealth of conflicting evidence, is exactly the sort of bald speculation that cannot defeat a motion for summary judgment. Ms. Maraj "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (alteration in original) (internal quotation marks omitted).

Rather than responding to Ms. Chapman's argument that Ms. Maraj may be held liable for the actions of her agents, Ms. Maraj offers various reasons why *Mr. Taylor* was not Ms. Maraj's agent and therefore, in Ms. Maraj's view, she cannot be held liable for his playing the Infringing Work on his radio show. (Opp'n at 7-9.) But Ms. Chapman's argument is *not* that Mr. Taylor was acting as Ms. Maraj's agent when he publicly broadcast the Infringing Work. Instead, as discussed, Ms. Chapman asserts that either Ms. Maraj or her agents distributed the work to Mr. Taylor or his

---

[5] Ms. Maraj's suggestion that Ms. Chapman herself leaked the Infringing Work (Opp'n at 6) is as absurd as it is offensive. The ridiculous accusation is totally devoid of evidentiary support, and, worse, dignity.

agents, and Ms. Maraj may be held liable for such distribution. Ms. Maraj has failed to meaningfully respond to that argument.

*Second*, Mr. Taylor's statement that he received the Infringing Work from one of his bloggers is immaterial to Ms. Chapman's claim. Putting aside that Mr. Taylor repeatedly publicly posted that he obtained the Infringing Work from Ms. Maraj the day he received it (SUF No. 35), even if the Infringing Work was sent by Ms. Maraj or one of her agents to a "blogger" that was working for Mr. Taylor to obtain the Infringing Work, she, or her agents, still distributed it, albeit to a blogger working for Mr. Taylor instead of Mr. Taylor himself.

*Third*, Ms. Maraj's claim that the mastered version of the Infringing Work was too big for Ms. Maraj to send via text is both contradicted by the documentary evidence and immaterial given Ms. Maraj's other admissions. To begin, Ms. Maraj undoubtedly sent the Infringing Work to Nas on August 3, 2018 by texting him a password protected link to a file transfer service called WeTransfer, which is a specialized service for sending large files. (Dkt. 54-2, ¶ 18, Ex. 17 at pp. 182-83)[6] There is no reason she could send the file to Nas this way, but not to Mr. Taylor.[7] Further, by insinuating that the version Mr. Taylor played was the same version that she texted to Nas, Ms. Maraj implicitly admits that the version that was played was transmittable via text. (*See* Opp'n at 6.)

Ultimately, none of Ms. Maraj's attempts to muddy the waters belie the undisputed facts set forth in Ms. Chapman's Motion. To the contrary, it is now more apparent than ever that: (i) hours before Mr. Taylor received the Infringing Work and played it on the radio, Ms. Maraj "let [her] passion for Sorry get the better of [her]", confirmed with Mr. Taylor that she would send him the Infringing Work via

---

[6] WeTransfer's website states: "WeTransfer was founded in 2009 as the simplest way to send big files around the world." (Frontera Decl. ISO Reply, ¶ 2, Ex. 3.)
[7] Ms. Chapman admittedly does not have these text messages between Ms. Maraj and Mr. Taylor. However, it is well-documented that Ms. Maraj failed to produce multiple communications between herself and Mr. Taylor, notwithstanding multiple requests that she do so, and resulting motion practice.

text, and "intended to send [Mr. Taylor] a copy of Sorry to play on his radio program" (Opp'n at 2-3; Maraj Declaration at ¶¶ 4, 6; SUF Nos. 25-29); and (ii) in the next 24 hours, Mr. Taylor received the Infringing Work, posted publicly that he received it from Ms. Maraj, and played it on his radio show just as Ms. Maraj requested. (SUFs Nos. 35-39.) ***Only one reasonable conclusion can be drawn from these facts: Ms. Maraj and/or her agents willfully distributed the Infringing Work to Mr. Taylor and/or his agents to be publicly broadcast on the radio.***

Given these facts, it is undisputed that the distribution was willful in light of Ms. Maraj's admission that she "intended to send [Mr. Taylor] a copy of *Sorry* to play on his radio program" after "let[ting her] passion for *Sorry* get the better of [her]". (Opp'n at 2-3.) Nothing Ms. Maraj states in her Opposition varies her willful intent at the time the Infringing Work was distributed, including any after-the-fact attempt to cover herself by commenting on Mr. Taylor's Instagram post (which had over 1,400 other comments) that Mr. Taylor should only play official album music.

## III. CONCLUSION

For all of the foregoing reasons, Ms. Chapman respectfully requests that the Court grant her motion in its entirety and enter judgment in her favor as to the issue of liability for Copyright Infringement, holding that: (1) Ms. Maraj committed copyright infringement by creating the Infringing Work, (2) the creation of the Infringing Work was willful, (3) Ms. Maraj committed copyright infringement by distributing the Infringing Work, and (4) the distribution was willful.

Dated: August 31, 2020

Respectfully submitted,

MANATT, PHELPS & PHILLIPS, LLP

By: /s/ John M. Gatti
John M. Gatti
*Attorney for Plaintiff*
TRACY CHAPMAN