**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

Tracy Chapman,

         Plaintiff,

    v.

Onika Tanya Maraj et al.,

         Defendant.

2:18-cv-09088-VAP-SSx

**Order DENYING Plaintiff's Motion for Partial Summary Judgment (Dkt. 54) and GRANTING Defendant's Motion for Partial Summary Judgment (Dkt. 57)**

Before the Court are Plaintiff Tracy Chapman's ("Chapman") Motion for Partial Summary Judgment ("Chapman MSJ," Dkts. 54 (redacted), 56, Ex. A) and Defendant Onika Tanya Maraj's ("Maraj") Motion for Partial Summary Judgment ("Maraj MSJ," Dkt. 57).  The parties each opposed the other's Motion.  ("Maraj Opposition," ("Opp."), Dkt. 66; "Chapman Opp.," Dkt. 67).

After considering all the papers filed in support of, and in opposition to, the Motions, the Court deems this matter appropriate for resolution without a hearing.  *See* Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.  The Court GRANTS Maraj's Motion for Partial Summary Judgment and DENIES Chapman's Motion for Partial Summary Judgment.

United States District Court
Central District of California

**I.    BACKGROUND**

This action arises out of a copyright dispute between Chapman and Maraj regarding the use and distribution of Chapman's musical composition.

On October 22, 2018, Chapman brought this action alleging copyright infringement of her musical composition, *Baby Can I Hold You* (the "Composition").  (Dkt. 1).  According to Chapman, Maraj violated Chapman's exclusive rights to "reproduce, distribute, and prepare derivative works from and otherwise exploit the Composition."  (*Id.* ¶ 50).  Maraj denies these allegations.  (Dkt. 14).

Each party now moves for partial summary judgment.  (Chapman MSJ; Maraj MSJ).  Chapman seeks partial summary judgment only on the issue of copyright infringement (not damages).  (Chapman MSJ, at 2).  Specifically, Chapman alleges that Maraj is liable for copyright infringement in two ways: (1) for creating a song (hereinafter, the "new work" or "song") that incorporates lyrics and melodies of the Composition; and (2) for distributing the song to a DJ and radio host.  (*Id.*).  Chapman also requests that the Court summarily adjudicate that the infringement was willful.  (*Id.*).

Maraj, in her Motion, seeks summary judgment only on the issue of her alleged infringement for creating the song.  (Maraj MSJ).  According to Maraj, the creation of the song constitutes fair use.  (*Id.*).

On August 24, 2020, both parties opposed the other's Motion.  (Chapman Opp.; Maraj Opp.).  On August 31, 2020, both parties filed replies

United States District Court
Central District of California

in support of their Motions.  ("Chapman Reply," Dkt. 72; "Maraj Reply," Dkt. 73).  For the reasons stated below, the Court DENIES Chapman's Motion in its entirety and GRANTS Maraj's Motion.

## II.    LEGAL STANDARD

A motion for summary judgment or partial summary judgment shall be granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

"[W]hen parties submit cross-motions for summary judgment, each motion must be considered on its own merits."  *Fair Hous. Council of Riverside Cty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (internal quotations and citations omitted).  Thus, "[t]he court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard."  (*Id.* (quoting Wright, et al., Federal Practice and Procedure § 2720, at 335–36 (3d ed. 1998))).  If, however, the cross-motions are before the court at the same time, the court must consider the evidence proffered by both sets of motions before ruling on either one.  *Riverside Two*, 249 F.3d at 1135–36.

Generally, the burden is on the moving party to demonstrate that it is entitled to summary judgment.  *Margolis v. Ryan*, 140 F.3d 850, 852 (9th Cir. 1998).  "The moving party may produce evidence negating an essential element of the nonmoving party's case, or . . . show that the nonmoving party

does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1106 (9th Cir. 2000) (reconciling *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970) and *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).  The nonmoving party must then "do more than simply show that there is some metaphysical doubt as to the material facts" but must show specific facts which raise a genuine issue for trial.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  A genuine issue of material fact will exist "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248.

In ruling on a motion for summary judgment, a court construes the evidence in the light most favorable to the non-moving party. *Barlow v. Ground*, 943 F.2d 1132, 1135 (9th Cir. 1991).  "[T]he judge's function is not [] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

## III.  FACTS

Both Chapman and Maraj filed statements of undisputed facts, ("Chapman SUF," Dkts. 54-1, 56, Ex. B; "Maraj SUF," Dkt. 59), to which the other party has filed statements of genuine dispute and additional facts, ("Chapman RSUF," Dkt. 67-2, "Maraj RSUF," Dkt. 69).  Chapman also filed a response to Maraj's additional facts proffered in opposition to Chapman's Motion.  ("Chapman RAMF," Dkt. 72-4).  Each party has also filed various evidentiary objections to facts cited in the other's papers.  ("Chapman

United States District Court
Central District of California

Objections to Maraj's MSJ Evidence," Dkt. 67-3; "Maraj Objections to Chapman's MSJ Evidence," Dkt. 68; "Chapman Objections to Maraj's Opp. Evidence," Dkt. 72-2).  Chapman also filed a response to Maraj's objections to Chapman's evidence.  ("Chapman Response to Maraj Objections," Dkt. 72-3).

To the extent certain facts or contentions are not mentioned in this Order, the Court has not found it necessary to consider them in reaching its decision.  In addition to considering the evidentiary objections raised by the parties, the Court has reviewed independently the admissibility of the evidence that both parties submitted and has not considered evidence that is irrelevant or inadmissible.  At the summary judgment stage, a district court should "focus on the admissibility of the [evidence's] contents" and not the form in which the evidence is presented—it is sufficient that a party will be able to produce evidence in its admissible form at trial.  *See Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003); *Block v. City of Los Angeles*, 253 F.3d 410, 418–19 (9th Cir. 2001).

Moreover, "objections to evidence on the ground that it is irrelevant, speculative, and/or argumentative, or that it constitutes an improper legal conclusion are all duplicative of the summary judgment standard itself" and thus need not be considered on a motion for summary judgment.  *Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1120 (E.D. Cal. 2006).

**A.     Evidentiary Objections**

**Chapman's Objections**

The Court sustains Chapman's objections to Maraj's SUF No. 1 as unsupported by the evidence and SUF Nos. 3, 4, 6, and 11 as compound. The Court also sustains Chapman's objection to SUF No. 7 as unsupported by the evidence.  The Court overrules Chapman's objections to Maraj's SUF Nos. 9 and 12 but finds only the following statement supported by Maraj's proffered evidence for SUF No. 9: "Tracy Chapman has requested samples of proposed works when considering a license request."  The Court overrules Chapman's objections to Maraj's SUF Nos. 8 and 10, but finds only the following statements supported by Maraj's proffered evidence: "rights holders often request copies of new works during licensing discussions," and "prospective licensees usually include their proposed derivative works with their initial licensing requests."  Chapman also objects to certain statements within the declarations of Maraj and Aubry Delaine filed in support of Maraj's Opposition to Chapman's Motion.

1. Maraj Declaration

According to Chapman, the following statements contradict Maraj's former sworn testimony and must be stricken from the record:

- "I thought that maybe, if Ms. Chapman heard my song on the radio, and learned of a positive reaction among listeners, she would allow me to release the song."
- "[]that day, however, I had a change of heart.  I never sent the recording."

6

- "I was surprised to learn that Flex played Sorry on the radio that evening. I have no idea how he obtained the recording. He did not obtain it from me or, to my knowledge, from anyone I know."

(Dkt. 72-2).  The Court agrees with Chapman as to the first statement and most of the second statement but disagrees as to the third statement.

"[]The Ninth Circuit has held that 'a party cannot create an issue of fact by [submission of] an affidavit contradicting his prior deposition testimony' where the court determines that the later affidavit is merely "sham' testimony that flatly contradicts earlier testimony.'"  *Ana Mora et al. v. City of Garden Grove et al.*, 2020 WL 4760184, at *7 (C.D. Cal. 2020) (citing to *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1999)).  "The rationale underlying the sham affidavit rule is that a party ought not be allowed to manufacture a bogus dispute with himself to defeat summary judgment." *Nelson v. City of Davis*, 571 F.3d 924, 928 (9th Cir. 2009).

The Ninth Circuit in *Yeager* reiterated two important limitations on the sham affidavit rule: (1)  the district court must make a "factual determination that the contradiction was actually a sham"; and (2)   the "inconsistency between a party's deposition testimony and subsequent affidavit must be clear and unambiguous."  *Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012).  For example, "[]an affidavit might not be a sham if the affiant's actions were the result of honest discrepancy, a mistake, or the result of newly discovered evidence … [or] if the affiant gives a plausible excuse for the contradiction …."  *Jack v. Trans World Airlines*, 854 F. Supp. 654, 660 (N.D.

United States District Court
Central District of California

Cal. 1994); *see Yeager*, 693 F.3d at 1080 ("[T]he nonmoving party is not precluded from elaborating on, explaining or clarifying prior testimony elicited by opposing counsel on deposition . . . ") (quoting *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 999 (9th Cir. 2009)).

Maraj's statements explaining why she asked DJ Flex to play the new work on his radio show and her statement about her "change of heart" contradict her earlier deposition testimony, rendering her affidavit a sham one. In her September 3, 2019 supplemental responses to Chapman's Requests for Admission, Maraj denied that she asked DJ Flex to play the new work. (Dkt. 54-2, Ex. 8, p. 87).  In her September 23, 2019 deposition, Maraj stated that she could not locate any communications between her and DJ Flex.  (Dkt. 54-2, Ex. 6 at 22:4-8).  Maraj further testified that the only discussion she recalled having with DJ Flex over social media was when she responded to his Instagram post saying that he can only play official album music.  (*Id.*, at 24:5-22).  According to Chapman, DJ Flex, not Maraj, submitted the direct messages where Maraj asked him to play the song on his show.  (Dkt. 54-2, Declaration of Nicholas Frontera ¶ 16).

In the face of that evidence, Maraj now seeks to claw back her prior testimony to create additional issues of fact on summary judgment.  Rather than providing an explanation for her former testimony, Maraj offers a new version of contradictory events.  This is exactly what the sham affidavit doctrine aims to prevent.  The Court thus strikes Paragraphs 4 and 5 from Maraj's declaration.  The Court also strikes Paragraph 6, except for Maraj's statement that she "never sent the recording" because that statement does

not contradict prior testimony.  (*See* Dkt. 66-1, Deposition of Tanya Maraj at 78:24-79:18).  For similar reasons, the Court declines to strike the third statement at issue.  Maraj stated in her deposition that she was not sure how DJ Flex received the new work.  Her statement that she was surprised to hear him play the song is thus consistent with that testimony.

2. <u>Delaine Declaration</u>

Chapman also argues that statements in Delaine's declaration contradicts his deposition testimony in this case.  (Dkt. 72-2, at 4-7).  The Court disagrees.

None of the statements in Delaine's declaration directly contradict his deposition testimony.  To the extent that there are any inconsistencies, the Court finds that they do not rise to the level of sham statements but rather are offered to explain certain aspects of his testimony.  *See Ana Mora et al.*, 2020 WL 4760184, at *7.  Further, Chapman improperly attempts to use the "sham affidavit" rule as both a shield and a sword.  *In re GGW Brands, LLC*, 504 B.R. 577, 629 (Bankr. C.D. Cal. 2013).  For example, Chapman relies on the fact that Delaine reached out to Chris Athens for a mastered copy of Sorry (Dkt. 69, Chapman's SUF No. 30) while simultaneously seeking to strike the same information from Delaine's declaration.  In the absence of "clear and unambiguous" inconsistencies in Delaine's testimony, the Court declines to strike the contested statements from the record.  *Yeager*, 693 F.3d at 1080.

**Maraj's Objections**

Maraj contests the admissibility of Exhibits 20 and 21 to the declaration

United States District Court
Central District of California

United States District Court
Central District of California

of Nicholas Frontera, which consists of copies of Instagram and Twitter posts made by DJ Flex on August 11, 2018.  (Dkt. 68; Dkt. 54-2, p. 212-214).  The posts state:

> "Shhhhhhh!!!!   TONIGHT   7   PM!!!   NICKI   GAVE   ME
> SOMETHING!!!  @nickiminaj  ft  @nas  !!!  (NOT ON HER
> ALBUM!) GONNA STOP THE CITY TONIGHT!!!!!!!!!!!!!"

(Dkt. 54-2, at 212-214).  Maraj claims that the posts are inadmissible hearsay because Chapman cites to them for the truth of the matter asserted – that Maraj supplied the recording of the song to DJ Flex.  (Dkt. 68, at 1; Dkt. 72, at 8) ("Mr. Taylor's multiple social media postings that he received the Infringing Work from Ms. Maraj are contemporaneous statements demonstrating Ms. Maraj in fact sent it to him.").  Chapman claims the posts are admissible either as exclusions from or exceptions to the hearsay rule.  (Dkt. 72-3).  The Court disagrees.

Chapman first argues that these documents are admissible as admissions of a person authorized to make the statement and/or a co-conspirator.  (*Id.*, at 1-2).  Nevertheless, Chapman cites no evidence of Maraj authorizing DJ Flex to make the social media posts, nor are they statements of a co-conspirator; Chapman provides no facts showing that DJ Flex and Maraj entered into a "conspiracy."  *See Bourjaily v. United States*, 483 U.S. 171, 175 (1987) (requiring a court to make a preliminary finding of the existence of a conspiracy by a preponderance of the evidence before admitting statements under Rule 801(d)(2)(E)).

Chapman also argues that the social media posts are admissible under

one or more of the exceptions to the hearsay rule, i.e., present sense impression, excited utterance, existing mental condition, recorded recollection, or business record.  (Dkt. 72-3, at 3).  All of these arguments fail.

The facts do not support a finding that the social media posts are present sense impressions, excited utterances, or evidence of existing mental conditions.  The Ninth Circuit has held that to qualify as an exception as a present sense impression or an excited utterance, the "out-of-court statement must be nearly contemporaneous with the incident described and made with little chance for reflection."  *Bemis v. Edwards*, 45 F.3d 1369, 1372 (9th Cir. 1995).  "Under all three rules, the court must evaluate three factors: contemporaneousness, chance for reflection, and relevance."  *United States v. Ponticelli*, 622 F.2d 985, 991 (9th Cir. 1980).

Chapman's argument that DJ Flex "described an event … right after it happened" is conclusory and unsupported.  Chapman provides no evidence showing when DJ Flex allegedly received the text message.  Chapman simply argues that DJ Flex must have received the text message sometime between August 10, 2018 when Maraj said "I'll text" and 2:34 p.m. on the next day when DJ Flex made his first social media post.  Maraj disputes whether the text message was received within this time frame.  Thus, these facts do not establish that the social media posts were made without time for reflection.

The social media posts are also not recorded reflections or business records.  "A recorded recollection is '[a] record that: (A) is on a matter the witness once knew about but now cannot recall well enough to testify fully

and accurately; (B) was made or adopted by the witness when the matter was fresh in the witness's memory; and (C) accurately reflects the witness's knowledge.'" *United States v. Orm Hieng*, 679 F.3d 1131, 1143 (9th Cir. 2011). Chapman provides no facts to demonstrate DJ Flex cannot recall his posts on social media well enough to testify about them.  In fact, DJ Flex testified about the posts in his deposition.  When asked why he tweeted that "Nicki gave me something" DJ Flex responded:  "Well, if you are asking me why I said Nicki gave me something because I want the kids to believe that I got it from the artist so they tune in. It's called smoke and mirrors."  (Dkt. 66-1, at 31, 162:7-12).  This testimony also contradicts Chapman's assertions that the social media posts demonstrate that "Ms. Maraj in fact sent it to him."  Thus, even assuming the social media posts were admissible non-hearsay, the meaning of the posts is a material disputed fact that must be resolved by the trier of fact.

Finally, the social media posts do not qualify as business records. Chapman provides no evidence from DJ Flex showing that the social media posts are regularly conducted business activities.  FRE 801(3) ("all these conditions [must be] shown by the testimony of the custodian or another qualified witness.").  The social media posts do not describe an "act, event, condition, opinion, or diagnosis" that was made.  FRE 801(3).  To the extent Chapman argues that the event is "Nicki [giving] something" to DJ Flex, as explained above, that fact is disputed by the parties.

The Court thus SUSTAINS Maraj's objection to the social media posts as inadmissible hearsay.  The Court will consider the posts only for the fact

that they exist, but not for the truth of the matters asserted therein.  (Dkt. 69, SUF 35 (parties agreeing that the posts exist)).

### B.  Undisputed Facts

Local Rule 56 allows the Court to find that "the material facts as claimed and adequately supported by the moving party are admitted to exist without controversy except to the extent that such material facts are (a) included in the "Statement of Genuine Issues" *and* (b) controverted by declaration or other written evidence filed in opposition to the motion."  Local Rule 56–3 (emphasis added).  The Court finds that the following relevant facts are undisputed:

### The Copyrighted Work

Chapman wrote her song *Baby Can I Hold You* (the "Composition") in 1982 and obtained copyright registration for the Composition on October 20, 1983.  (Maraj RSUF Nos. 1-2).  Chapman is the sole owner of the copyright in the Composition.  (Maraj RSUF No. 3).

### The New Work

In 2017, Maraj agreed to work with a recording artist named Nasir Bin Olu ("Nas") on a re-make of a song entitled *Sorry.*    (Maraj RSUF No. 4; Chapman RSUF No. 2).  At the time, Maraj believed that *Sorry* was created by an artist named Shelly Thunder.  (Chapman RAMF No. 40).  Maraj told Nas that she would experiment with *Sorry* to see where the project could go. (Maraj RSUF No. 41).  Maraj began to experiment with *Sorry* before seeking a license (Chapman SUF No. 10), but she knew she would need a license to

produce a song on an album eventually.  (Chapman SUF No. 9).  Maraj did not intend to release a new work without securing an appropriate license first. (Maraj RSUF No. 42).  This was customary practice because rights holders often request copies of new works during licensing discussions and prospective licensees usually include their proposed derivative works with their initial licensing requests.  (Maraj SUF Nos. 8-10).  Chapman has requested copies of new works from prospective licensees herself.  (Maraj SUF No. 9).

### License Requests

Maraj's representatives later found out that *Sorry* was a cover to Tracy Chapman's song, *Baby Can I Hold You.*  (Maraj SUF No. 12).  The new work created by Maraj incorporated a large number of lyrics and vocal melodies from *Baby Can I Hold You.*  (Chapman SUF Nos. 7-8).  Thus, on May 23, 2018, Maraj, through her representatives, began seeking Chapman's clearance to publish the new work in Maraj's then-upcoming album, *Queen.* (Maraj SUF No. 12).  Between May 23, 2018 and August 2, 2018, Maraj and her representatives made multiple requests to Chapman for a license to publish the new work.  (*Id.*, at Nos. 13-15; Chapman SUF Nos. 11-20). Chapman repeatedly denied the requests.  (*Id.*).  On at least one occasion, Maraj attempted to reach out to Chapman directly via Twitter to change Chapman's mind.  (*Id.*).  Despite these efforts, Chapman continued to deny Maraj's requests.  (*Id.*).

Maraj told Nas that the song "was not gonna get cleared" by Chapman. (Chapman SUF No. 23).  She further stated that, "they saying [Ms. Chapman]

don't clear stuff.  She was forced to with [another song] but took all the money cuz they put it out w/no approval."  (*Id.*, SUF No. 24).  Nas expressed his frustrations with Chapman's refusal to issue a license.  (Maraj RSUF No. 51).

### Maraj Reaches Out to DJ Flex

On August 3, 2018, Maraj direct messaged DJ Aston George Taylor ("DJ Flex") the following message:

> "Hey. I got a record I want u to world premier.  The week album drops.
> U will be the only one with it.  I'll have Jean hit u to explain.  Keep it on
> the low.  Wait til u see who's on it.  Not going on album either.  No one
> will get it."

(Chapman SUF No. 25).  DJ Flex indicated that he would play the record on his show (*Id.*, SUF No. 26).  On that same day, Maraj sent Nas a copy of the latest mix of the new work via WeTransfer.  (Maraj RSUF No. 50).  There is no record of Maraj sending DJ Flex a copy of the latest mix on that day.

One week later, on August 10, 2018, Maraj followed up with DJ Flex about the show asking, "You got me tonight?  The song is me and Nas.  Send your number."  (Chapman SUF No. 27).  DJ Flex responded with his number and confirmed that he would play the song the next day.  (*Id.*, SUF No. 28).  Maraj responded, "Ok I'll text."  (*Id.*, SUF No. 29).

### The New Work is "Mastered"

On the same day, Maraj's lead recording engineer, Aubry Delaine, asked Chris Athens Masters, Inc. to "master" the song and return clean and

15

explicit versions of the mastered copy.  (Chapman SUF No. 30).  Chris Athens mastered the work and his intern, David Castro, sent Delaine links to download the mastered versions via email at 9:12 p.m. that night. (*Id.*, SUF Nos. 31-32).  The links only allowed for one download each.  (*Id.*, SUF No. 33).  Delaine never sends unreleased recordings of Maraj's work to third parties without receiving instructions from Maraj to do so.  (*Id.*, SUF No. 34).  Maraj's album, *Queen*, was released on August 10, 2018 without the new work.  (Maraj SUF No. 16).

### DJ Flex Plays the New Work on His Show

On August 11, 2018, the day after Maraj's album released, DJ Flex promoted the debut of the new work on his Twitter and Instagram accounts:

> "Shhhhhh!!!! TONIGHT 7 PM!!! NICKY GAVE ME SOMETHING!!! @nickiminaj ft @nas !!! (NOT ON HER ALBUM!) GONNA STOP THE CITY TONIGHT!!!!!!!!!!!!!"

(Chapman SUF No. 35).  Maraj commented on DJ Flex's post stating that he was not to play any material that was not included on her album.  (Maraj RSUF No. 45).  Later that night, DJ Flex played a version of the new work that was titled, "01 Sorry – 72518 – master.mp3."  (Chapman SUF No. 37).  DJ Flex received that version of the song via text message.  (*Id.*, SUF No. 37).

### C.   Disputed Facts

The parties dispute the following facts in connection with their Motions:

United States District Court
Central District of California

United States District Court
Central District of California

**When DJ Flex Received the New Work**

- Chapman argues that DJ Flex must have received the new work after Maraj said "she'll text" it to him on August 10, 2018 and before he played it on the air the next evening.  (Chapman SUF No. 36).

- Maraj maintains that DJ Flex's testimony only establishes that he received the new work *before* he sent the Tweet broadcasting the show but does not establish that DJ Flex received it after Maraj said "she'll text."  (Maraj RSUF No. 36).

**Who texted DJ Flex the New Work**

- Chapman states that Maraj or one of her representatives sent DJ Flex the song based on the following disputed facts.

- Maraj maintains that neither she, nor anyone acting with her authority, sent DJ Flex the song.  (Maraj RSUF No. 46).  DJ Flex denies that Maraj sent him the song.  (*Id.*).  DJ Flex claims he received the new work from one of his bloggers, and not from anyone associated with Maraj.  (*Id.*).  Delaine states that neither he, nor anyone else to his knowledge, was asked to send a recording of the new work to DJ Flex.  (*Id.*).  Delaine states that he does not know how DJ Flex received the new work.  (*Id.*).  Roberson also denies sending DJ Flex the new work.  (*Id.*).

**Whether "01 Sorry – 72518 – master.mp3" is the mastered version**

- Maraj maintains that the "01 Sorry – 72518 – master.mp3" file is a *mixed* version generated by Serban Ghenea and not the mastered

17

copy created by Chris Masters on August 10, 2018.  (Maraj RSUF No. 47).

- Chapman disputes this and maintains that because of the file name, the file is the mastered version.  (Chapman SUF No. 37).

**Whether the Mastered Version Can Be Sent Via Text Message**

- Maraj maintains that the mastered copy cannot be sent via text message because the file is too large.  (Maraj RSUF No. 49).
- Chapman argues that the mastered copy can be sent via text message using WeTransfer the same way Maraj sent Nas a copy of the file via text message through WeTransfer on August 3, 2018. (Chapman RAMF No. 49).

**When the Mixed Version Was Created**

- Maraj maintains that the mixed version of the song was completed on July 25, 2018 as indicated by the "72518" in the file name.  (Maraj RSUF No. 48).
- Chapman maintains that the mixing services were completed later than that.  (Maraj RSUF No. 48).

## IV.   DISCUSSION

### A.   Copyright Infringement

To establish a claim for direct copyright infringement, a plaintiff must demonstrate: (1) it owns a valid copyright in a work, and (2) defendant's violation of plaintiff's exclusive rights under the Copyright Act. 17 U.S.C. §§ 106, 501; *see also Funky Films, Inc. v. Time Warner Entertainment Co., L.P.*,

United States District Court
Central District of California

462 F.3d 1072, 1076 (9th Cir. 2006). "In addition, direct infringement requires the plaintiff to show causation (also referred to as 'volitional conduct') by the defendant." *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 666 (9th Cir. 2017).

### 1.   Ownership

A certificate of registration bearing the plaintiff's name "creates a presumption of ownership of a valid copyright," which the defendant must offer "some evidence" to rebut. *Ent. Research Group, Inc. v. Genesis Creative Group, Inc.*, 122 F.3d 1211, 1217 (9th Cir. 1997). Here, Chapman provides adequate documentation of her copyright registration in the song entitled, *Baby Can I Hold You*. (Dkt. 1 ¶¶ 13-19, Ex. B). Maraj also does not dispute that Chapman is the sole copyright holder. (Maraj RSUF No. 3).

### 2.   Violation of Exclusive Right

The Copyright Act bestows on the owner of a copyright certain exclusive rights, including the rights to reproduction, preparation, distribution, public performance, and importation. (17 U.S.C. §§ 106(1)-(3), 17 U.S.C. § 602(a)).

Chapman claims that Maraj violated her exclusive rights in two ways: (1) when Maraj created the new work without Chapman's permission; and (2) when Maraj distributed the new work to DJ Flex without Chapman's permission. Maraj counters that summary judgment should be granted in her favor as to the first issue because her creation of the song was fair use. The Court turns to the distribution issue first.

(a) <u>Distribution Right</u>

In support of her argument that Maraj violated her distribution rights, Chapman relies on several disputed or inadmissible facts. First, Chapman's argument that Maraj, or one of her agents, distributed the new work largely depends on the timeframe that DJ Flex received the text message containing the new work. According to Chapman, DJ Flex received the song after Maraj said "I'll text" and before he played the song on his show the following night. Yet, Maraj offers facts to contradict that timeframe. Specifically, DJ Flex testifies that he was not sure about the timeframe he received the text message, but that he knows he received the song before he sent his Tweet. (Dkt. 66-1, at 32, 171:19-172:5). At best, DJ Flex's testimony is inconsistent – the transcript shows that there is some confusion with the line of questioning. Given the inconclusive testimony, a trier of fact could differ as to the timeframe DJ Flex received the text message in this case.

In addition to the timeframe, Chapman relies on inadmissible hearsay in her analysis. As explained above, the Tweet on DJ Flex's social media accounts is not admissible for the truth of the matter on which Chapman relies. (*See* Chapman Reply, at 8) ("Mr. Taylor's multiple social media postings that he received the Infringing Work from Ms. Maraj are contemporaneous statements demonstrating Ms. Maraj in fact sent it to him."). Moreover, even if the Court were to consider these statements for the truth of the matter asserted, triable issues of fact would persist. In DJ Flex's deposition testimony, he squarely rejects the idea that his Tweets meant that he received the song from Maraj. (Dkt. 66-1, at 31, 162:7-12). To the contrary, he explains that he only said "Nicki gave me something" to lure in fans on his

show.  (*Id.*).

Moreover, the denials by Maraj, DJ Flex, Delaine, and Roberson regarding the transmission of the song creates disputed material facts. Critically, DJ Flex denies that Maraj sent him the text message and states that one of his bloggers provided it to him.  Further, both Maraj and Delaine testify that the new work could have gotten into a number of persons' hands (including those who do not take direction from Maraj, such as Nas or individuals on Chris Masters' team).  (Maraj RSUF No. 46).

Finally, the dispute about the mastered and mixed versions is also key circumstantial evidence for determining who sent DJ Flex the new work.  The parties dispute several facts related to whether DJ Flex received a mastered copy of the file, including whether a mastered file can be sent via text message, when the "mixed" version of the song was created in this case, and whether the file name, including the word "master," is dispositive.  Chapman relies on the fact that DJ Flex received a "mastered" copy of the file to support her argument that Maraj or someone acting on Maraj's behalf sent DJ Flex the song.  This is a disputed issue of material fact.  (Chapman SUF No. 37).

These factual disputes raise triable issues of material fact that must be resolved by a jury.  The Court thus DENIES Chapman's Motion for Summary Judgment on the distribution issue.

(b) Right to Create Derivative Works

Chapman next argues that Maraj violated her exclusive right to create derivative works.  (Chapman MSJ, at 12).  Maraj counters that her creation of the new work constitutes fair use.  (Maraj MSJ, at 7).

Fair use is a mixed question of law and fact.  *Los Angeles Times v. Free Republic*, No. CV 98-7840 MMM(AJWx), 2000 WL 565200, at *4 (C.D. Cal. 2000).  A court may appropriately decide a fair use issue on a summary judgment motion only when the material facts are not in dispute.  *Mattel, Inc. v. Walking Mountain Productions*, 353 F.3d 792, 800 (9th Cir. 2003).  The defendant bears the burden of proving fair use because fair use is an affirmative defense to infringement.  *Henley v. DeVore*, 733 F. Supp. 2d 1144, 1151 (C.D. Cal. 2010).

The Copyright Act provides that the fair use of a copyrighted work, "for purposes such as criticism, comment, news reporting, teaching, scholarship, or research, is not an infringement of copyright."  17 U.S.C. § 107.  The fair use determination is "an open-ended and context-sensitive inquiry," and the examples and factors in the statute are "illustrative and not limitative . . . [and] provide only general guidance about the sorts of copying that courts and Congress most commonly had found to be fair uses."  *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 577 (1994).  In determining whether a use is fair use, courts consider four factors:

(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;

(2) the nature of the copyrighted work;

22

(3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

(4) the effect of the use upon the potential market for or value of the copyrighted work.

(*Id.*).  These factors should not be treated in isolation, and instead must be explored and weighed in light of copyright's purpose.  *Campbell*, 510 U.S. at 578. The Supreme Court has found that transformative uses "lie at the heart of the fair use doctrine's guarantee of breathing space within the confines of copyright" because such works generally further "the goal of copyright, to promote science and the arts[.]"  (*Id.* at 579).

i.   Purpose and Character of the Use

The first factor, 17 U.S.C. § 107(1), requires a court to consider "the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes."  The central purpose of this inquiry is to determine whether and to what extent the new work is "transformative."  *Campbell*, 510 U.S. at 579.  The Ninth Circuit has adopted a two-step analysis of this first prong.  *Furie v. Infowars, LLC*, 401 F. Supp. 3d 952, 972 (C.D. Cal. 2019) (citing to *Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 818 (9th Cir. 2003)).  First, courts ask whether the use of the work is commercial in nature.  (*Id.*).  Second, they ask whether such use is transformative[1].  (*Id.*).

A use is considered transformative only where a defendant changes a

---

[1] The parties do not provide any analysis as to whether the new work is trans-formative.

United States District Court
Central District of California

plaintiff's copyrighted work or uses the plaintiff's copyrighted work in a different context such that the plaintiff's work is transformed into a new creation.  (*Id.* citing *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1164 (9th Cir. 2007)).  The more transformative the new work, the less important the other factors, including commercialism, become.  *Kelly*, 336 F.3d at 818.

Commercial use is a "factor that tends to weigh against a finding of fair use."  *Monge v. Maya Magazines, Inc.*, 688 F.3d 1164, 1176 (9th Cir. 2012).  Yet the crux of the distinction is not whether the sole motive of the use is monetary gain, but whether the user stands to profit from exploitation of the copyrighted material without paying the customary price.  *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 562 (1985).

Here, Maraj claims that the purpose of creating the new work was to: (1) experiment with the artist's vision, and (2) create a form that can be submitted to the rights holder for approval.  (Maraj MSJ, at 6).  Chapman argues that the purpose of creating the work was commercial and non-transformative.  (Chapman Opp., at 16).

Chapman argues that the new work was created for a commercial purpose because Maraj knew she needed clearance to include the work on her album.  (Chapman Opp., at 12-13).  Chapman also uses facts related to Maraj's clearance efforts after the work already had been created.  (*Id.*).  Maraj maintains that the use was not commercial even though there was some incidental commercial aspect of the work.  (Maraj MSJ).  The Court agrees with Maraj.

United States District Court
Central District of California

The parties do not dispute that in 2017, Maraj agreed to work with Nas on a re-make of *Sorry*.  (Maraj RSUF No. 4; Chapman RSUF No. 2).  At that time, Maraj believed that *Sorry* was created by an artist named Shelly Thunder.  (Chapman RAMF No. 40).   Maraj told Nas that she would experiment with *Sorry* to see where the project could go.  (Maraj RSUF No. 41).  This was the initial purpose of Maraj's use of Chapman's Composition – to experiment with it.  At that time, the parties do not dispute, that Maraj did not know whether she would produce a song based on *Sorry*.  Further, the parties do not dispute that Maraj knew she would need to seek a license to eventually publish a new work based on *Sorry*.  (Chapman SUF No. 9).

The parties also do not dispute that Maraj never intended to exploit the work without a license (and she did not do so).  (Maraj RSUF No. 42).  The "degree to which the new user exploits the copyright for commercial gain—as opposed to incidental use as part of a commercial enterprise—affects the weight" afforded to commercial nature as a factor.  *Harper & Row Publishers, Inc.*, 471 U.S. at 562.  To the contrary, Maraj excluded the new work from her album.  Thus, although there is some incidental commercial nature related to recording a song that may be used for an album, the low degree of exploitation here counterbalances that.  *See Sundeman v. Seajay Soc'y, Inc.*, 142 F.3d 194, 203 (4th Cir. 1998) ("…there was a potential commercial motivation in that Dr. Blythe may have received royalties if her paper were published, however, there was no attempt to exploit the Foundation. The paper was only to be published if the necessary permission were obtained from the copyright holder. Since such permission was not obtained, the paper

was not published, and no royalties were ever received.").  All these facts show that Maraj's use was not purely commercial.

Courts should also "consider the public benefit resulting from a particular use notwithstanding the fact that the alleged infringer may gain commercially."  *Sega Enters. Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1523 (9th Cir. 1992).  The public benefit need not be direct or tangible, but may arise because the challenged use serves a public interest.  (*Id.* at 1523).  As explained above, artists usually experiment with works before seeking licenses from rights holders and rights holders typically ask to see a proposed work before approving a license.  (Maraj SUF Nos. 8, 10).  Chapman has requested samples of proposed works before approving licensing requests herself because she wanted "to see how [her work] will be used" before approving the license (Maraj SUF No. 9), yet Chapman argues against the very practice she maintains.  A ruling uprooting these common practices would limit creativity and stifle innovation within the music industry.  This is contrary to Copyright Law's primary goal of promoting the arts for the public good.  This factor thus favors a finding of fair use.

ii.   Nature of the Copyrighted Work

The second factor that § 107 instructs courts to consider is "the nature of the copyrighted work" which recognizes the fact that "some works are closer to the core of intended copyright protection than others."  *Campbell*, 510 U.S. at 586.  Lyrics and music created by various musicians are creative in nature and at the core of copyright's protective purpose.  (*See, e.g., id.*).  Chapman's work is a musical composition, which is the type of work that is at

the core of Copyright's protective purpose.  This factor thus weighs against a finding of fair use.

### iii.   Amount and Substantiality of the Portion Used in Relation to   the Copyrighted Work as a Whole

"[T]his factor calls for thought not only about the quantity of the materials used, but about their quality and importance, too."  *Campbell*, 510 U.S. at 587.  When the extent of the copying is considered with the purpose and character of the uses, the amount and substance of the copies are justified.  (*Id.* at 586–87).  Indeed, this factor will not weigh against an alleged infringer, even when he copies the whole work, if he takes no more than is necessary for his intended use.  *Kelly*, 336 F.3d at 820–21.

As the Supreme Court has recognized, this factor necessarily overlaps somewhat with the first factor — the "extent of permissible copying varies with the purpose and character of the use."  *Campbell*, 510 U.S. at 586–87.

Here, it is undisputed that the new work incorporates most of the Composition's lyrics and incorporates parts of the vocal melodies from the Composition.  (*Chapman* SUF Nos. 7-8).  Nevertheless, the portion of the Composition that Maraj used was no more than that necessary to show Chapman how Maraj intended to use the Composition in the new work.  This factor thus favors a finding of fair use.

### iv.   Effect of the Use Upon the Potential Market for or Value of the

Copyrighted Work

The final statutory inquiry considers the effect the allegedly infringing use has upon the market for, or value of, the copyrighted work. 17 U.S.C.A. § 107(4). As the ability to reap financial rewards from creative endeavors is a critical component of the copyright regime, the Supreme Court has noted that this factor is "undoubtedly the single most important element of fair use*." Harper & Row Publishers, Inc.*, 471 U.S. at 566. Courts in this Circuit have reasoned the same. *Lewis Galoob Toys, Inc. v. Nintendo of Am., Inc.*, 964 F.2d 965, 971 (9th Cir. 1992). At this stage, courts ask whether the copy brings to the marketplace a competing substitute for the original, or its derivative, so as to deprive the rights holder of significant revenues because of the likelihood that potential purchasers may opt to acquire the copy in preference to the original. *Estate of Smith v. Cash Money Records*, 253 F. Supp. 3d 737, 752 (S.D.N.Y. 2017).

Here, there is no evidence that the new work usurps any potential market for Chapman. Chapman's only argument as to this factor is that market harm may be presumed because the work was created for commercial gain. (Chapman Opp., at 19). As explained above, there was only incidental commercial purpose behind the new work of which Maraj did not attempt to exploit. The presumption of market harm is thus unwarranted. Chapman offers no other support for market harm, and the Court declines to manufacture any. Maraj argues, and the Court agrees, that the creation of the work for private experimentation and to secure a license from the license holder has no impact on the commercial market for the original work.

On balance, the Court finds that Maraj has met her burden of showing

there are no genuine issues of material fact and that she is entitled to a finding of fair use as a matter of law.  Maraj's creation of the new work for the purpose of artistic experimentation and to seek license approval from the copyright holder thus did not infringe Chapman's right to create derivative works. Chapman has thus failed to meet her burden in proving Maraj's infringement.

## V.    CONCLUSION[2]

As a genuine dispute of material fact exists as to the distribution of the song, Chapman is not entitled to summary judgment on that portion of the infringement claim.  For the reasons discussed above, however, this Court finds that any liability for Maraj's creation of the song is barred by the fair use doctrine.   The Court therefore DENIES Chapman's Motion for Partial Summary Judgment and GRANTS Maraj's Motion for Partial Summary Judgment.

**IT IS SO ORDERED.**

Dated:    9/16/20

Virginia A. Phillips
United States District Judge

---

[2] The parties also briefed the issue of "willfulness" with respect to the infringement claims.  The Court need not address this point because there are disputed issues of material fact as to the threshold issue of infringement on the distribution claim and the fair use doctrine absolves Maraj of any liability for her creation of the new work for the reasons discussed above.  For similar reasons, the Court need not reach whether the parties' conduct was volitional.